# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

Jack Brooks and Ellen Brooks,              )
                                           )   CIVIL ACTION NO:  8:07-cv-03988-HMH
            Plaintiffs,                    )
                                           )
vs.                                        )
                                           )   **DEFENDANT GAF MATERIALS**
GAFMC Materials Corporation,               )   **CORPORATION'S RETURN TO**
                                           )   **JANUARY 4 ORDER AND PLAINTIFFS'**
            Defendant.                     )   **SECOND MOTION TO REMAND**
_____)

The Defendant, GAF Materials Corporation (GAFMC) submits the following response to
the Court's Order of January 4, 2008, as to whether the amount in controversy is sufficient to
support diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(6) (2007), and
Plaintiffs' second Motion to Remand filed on January 10, 2008.  For the foregoing reasons,
GAFMC submits this action satisfies the jurisdictional requirements of the Class Action Fairness
Act (CAFA) and remand is not appropriate.

## STATEMENT OF CASE

On November 19, 2007, Plaintiffs filed their First Amended Complaint seeking to
represent a putative class of owners and/or purchasers of GAFMC Timberline shingles in South
Carolina.  GAFMC removed this case on December 12, 2007, pursuant to CAFA, 28 U.S.C. §§
1441, 1446, 1453.  Six days later, the Court sua sponte remanded the case based on its belief that
the one-year prohibition on removal applied to cases removed under CAFA.  Within the seven-
day time limit set forth by 28 U.S.C. § 1453(c), GAFMC filed a timely Petition for Appeal to the
Fourth Circuit on December 20, 2007.  That petition was granted by Order dated January 17,
2008, which vacated the District Court's Remand Order and returned the case to the District

Court for reconsideration. Prior to that ruling on January 4, 2008, however, this Court issued an Order rescinding its December 18, 2007, Remand Order and directed the parties to respond as to whether the amount in controversy exceeds $5,000,000.00, as required by 28 U.S.C. § 1332(d)(6). Additionally, Plaintiffs filed on January 10, 2008, a Motion to Remand based upon the amount in controversy and that "the conditions espoused by the statute which necessitate a remand are present." GAFMC offers this memorandum in response.

## STATEMENT OF FACTS

Plaintiffs' alleged class action involves claims associated with Timberline shingles manufactured by GAFMC at its Mobile, Alabama plant. The only Defendant is GAFMC, a foreign Corporation. (First Am. Compl. ¶3). In the class allegations, Plaintiffs assert "that there are hundreds of homes in South Carolina, including the Brooks' home, which have or will experience premature cracking in their roof." (First Am. Compl. ¶15.) The First Amended Complaint alleges causes of action for negligence, negligent misrepresentation, breach of warranty, breach of implied warranties, fraud, violation of the South Carolina Unfair Trade Practices Act, and unjust enrichment. Plaintiffs' prayer for relief on behalf of the putative class seeks not only general and special compensatory damages but also punitive damages, treble damages, and attorneys' fees. It is unclear from the First Amended Complaint whether or not the damages limitations of the Complaint apply to the claims for treble damages, attorneys' fees, and punitive damages.

Plaintiffs' First Amended Complaint attempts to limit the class's recovery to avoid the jurisdiction of this Court. First, paragraph 29 claims the amount in controversy for the entire proposed class does not exceed five million dollars. The First Amended Complaint's prayer for

2

relief also seeks to limit the individual recovery of Plaintiffs and any putative class member's individual recovery, exclusive of interest and costs, to less than $74,999.00 respectively. Plaintiffs offer these limits despite their allegations that "hundreds of homes" in South Carolina have cracking Timberline shingles.

## ARGUMENT

### I.   INTRODUCTION.

Congress drastically and intentionally broadened the scope and nature of federal diversity jurisdiction when it enacted CAFA, Pub. L. No.109-2, 119 Stat. 4 (2005). See Chavis v. Fid. Warranty Servs., Inc., 415 F. Supp. 2d 620, 626 (D.S.C. 2006). CAFA amends 28 U.S.C. § 1332 (2000, L. Supp. 2006), the federal diversity statute, and now vests original jurisdiction for class actions in Federal Court where there is minimal diversity and the amount in controversy exceeds $5,000,000.00. See id. § 1332(d). CAFA provides that putative class actions may be removed when three requirements are met: the matter in controversy exceeds the sum or value of $5,000,000.00; there is minimal diversity (any member of the plaintiff class is a citizen of a different state from any defendant); and the putative class numbers 100 or more. 28 U.S.C. §§ 1332(d), 1453(b). Under CAFA, the claims of the individual class members are aggregated to determine whether the matter in controversy exceeds the requisite amount. 28 U.S.C. § 1332(d)(6). Where the parties disagree over whether the amount in controversy exceeds the five million dollar jurisdictional amount, federal courts are to err in favor of exercising jurisdiction under Section 1332(d)(2). Chavis, 415 F. Supp. 2d at 627 n.6; see Kearns v. Ford Motor Co., No. CV 05-5644 GAF (JTLX), 2005 WL 3967998, at *6 (C.D. Cal. Nov. 21, 2005) (unpublished). Thus, this Court should exercise jurisdiction over Plaintiffs' class action if it is unclear whether the actual amount in controversy exceeds five million dollars.

3

## II.    PLAINTIFFS' AMENDED COMPLAINT SATISFIES THE AMOUNT IN CONTROVERSY REQUIREMENT UNDER CAFA.

A.    **Because Congress Intended the Party Opposing Federal Jurisdiction to Bear the Burden of Establishing Federal Jurisdiction over a Removed Class Action is Improper, this Court Should Deny Plaintiffs' Motion to Remand since Plaintiffs have not Shown the Actual Amount in Controversy is Less than Five Million Dollars.**

Congress enacted CAFA with the clear intent of expanding federal subject matter jurisdiction over certain class actions. Chavis, 415 F. Supp. 2d at 626. "The courts are split with respect to whether CAFA shifted the burden so that, rather than the removing defendant having the burden of establishing the propriety of the removal when it is challenged by a motion to remand, the party opposing [removal] has the burden to demonstrate that the action should be remanded." 14C Wright, Miller, & Cooper, Federal Practice and Procedure § 3729 (2007); cf. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) (addressing whether CAFA altered the view that the removing party has the burden of proving federal jurisdiction exists). The Fourth Circuit Court of Appeals and the United States Supreme Court have yet to address whether CAFA imposes on the party opposing the federal forum the burden of disproving federal jurisdiction in class actions removed to federal court under CAFA.

The legislative history clearly and unequivocally indicates Congress intended the non-removing party to bear the burden of disproving federal jurisdiction, but it did not change the statutory language. See e.g., Morgan v. Gay, 471 F.3d 469, 472-73 (3d Cir. 2006) (discussing how some courts have found the legislative history shows CAFA alters traditional removal analysis but other courts have rejected this view because of the lack of statutory change). Past decisions of the Fourth Circuit support finding CAFA did change the burden in qualifying class actions because of Congress's direct statement of its intent to enact this change.

4

The Fourth Circuit recognizes an exception to the plain meaning rule, which "is premised

on legislative intent, and it exists only 'when literal application of the statutory language at issue

produces an outcome that is demonstrably at odds with clearly expressed congressional

intent....'" In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004) (quoting Hillman v. I.R.S.,

263 F.3d 338, 342 (4th 2001)). This exception applies to determining whether CAFA altered

traditional removal analysis because Congress unequivocally expressed its intent to alter the

common law rule regarding removal and such a reading does not contravene the statutory

language.

When discussing the intent of CAFA, Congress directed that the party seeking remand of

a qualifying class action has the burden of disproving federal jurisdiction:

> Pursuant to new subsection 1332(d)(6), the claims of the individual class
> members in any class action shall be aggregated to determine whether the amount
> in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and
> costs). The Committee intends this subsection to be interpreted expansively. If a
> purported class action is removed pursuant to these jurisdictional provisions, the
> named plaintiff(s) should bear the burden of demonstrating that the removal was
> improvident (i.e., that the applicable jurisdictional requirements were not
> satisfied) and if a federal court is uncertain about whether [the amount in
> controversy requirement is met], the court should err in favor of exercising
> jurisdiction over the case.

S. Rep. No. 109-14, at 42 (2005) (emphasis added). Thus, while CAFA's statutory language did

not speak directly to which party has the burden of proving or disproving the propriety of

removal jurisdiction, the legislative history clearly demonstrates Congress intended CAFA to

alter traditional removal analysis.

Although the text of CAFA is silent regarding the burden of proof on removal, several

courts have reassigned the burden to plaintiffs to demonstrate that federal jurisdiction does not

exist. See e.g., Harvey v. Blockbuster, Inc., 384 F. Supp. 2d 749, 752 (D.N.J. 2005) (finding

CAFA's legislative history demonstrates the party opposing removal jurisdiction has the burden

5

of disproving removal jurisdiction); Berry v. Am. Express Pub. Corp., 381 F. Supp. 2d 1118,

1122-23 (C.D. Cal. 2005), abrogated by Abrego Abrego v. Dow Chem. Co., 443 F.3d 676 (9th

Cir. 2006) (same); Natale v. Pfizer, Inc., 379 F. Supp. 2d 1161, 168-69 (D. Mass. 2005) (same);

Dinkel v. Gen. Motors Corp., 400 F. Supp. 2d 289, 294-95 (D. Me. 2005) (same). Accordingly,

this Court should interpret CAFA in light of its clearly expressed purpose, rather than in a

vacuum, and hold Plaintiffs have the burden of showing removal jurisdiction over their class

action is improper.

**B.    Plaintiffs' Self-Imposed Limit on the Putative Class's Total Recovery does not Defeat this Court's Jurisdiction Under CAFA Because the Actual Amount in Controversy Exceeds Five Million Dollars.**

"[O]rdinarily, the sum claimed by a plaintiff in her complaint determines the

jurisdictional amount, and a plaintiff may plead less than the jurisdictional amount to avoid

federal jurisdiction." Phillips v. Whirlpool Corp., 351 F. Supp. 2d 458, 461 (D.S.C. 2005)

(emphasis added and citations omitted). However, this rule does not apply where plaintiffs may

purport to limit their total recovery in the complaint to defeat federal jurisdiction but can actually

recover much more than the self-imposed limits at trial. See Strawn v. AT&T Mobility, Inc.,

513 F. Supp. 2d 599, 603 (S.D.W. Va. 2007); see also Aikens v. Microsoft Corp., 159 Fed.

App'x 471, 475 (4th Cir. 2005) ("However, as courts have recognized, this dicta in St. Paul

Mercury [Indemnity Co. v. Red Cab Co., 303 U.S. 283, 194 (1938),] was premised on the notion

that plaintiffs would be bound by the amount alleged in the ad damnum clause of the complaint,

a premise that is no longer uniformly true…." (citations omitted)); Vanyo v. CitiFinancial, Inc.,

No. 1:06CV2943, 2007 WL 1795959, at *1-3   (N.D. Ohio June 20, 2007) (unpublished)

(evaluating whether the actual amount in controversy exceeded five million dollars where the

plaintiffs "attempt[ed] to cap damages at $1 less than the threshold for the apparent purpose of

6

avoiding federal jurisdiction"). As a result, because South Carolina law – which will control Plaintiffs' class action if remanded – does not limit Plaintiffs' ultimate recovery to their self-imposed limitation in their First Amended Complaint, Plaintiffs' pleading is not determinative of the actual amount in controversy.

Rule 54, SCRCP, governs judgments. Rule 54(c) specifically authorizes Plaintiffs to recover more than the amount sought in their pleading: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." (emphasis added). Thus, Plaintiffs' self-imposed limitation here is illusory because they can recover an amount in excess of the limitations stated in the Amended Complaint at trial. Consequently, Plaintiffs' self-imposed limitation is neither controlling nor determinative of the actual amount in controversy.

The existence of Rule 8(a), SCRCP, does not prevent this Court from examining whether the actual amount in controversy exceeds five million dollars. See Cook v. Meditronic Sofamor Danek, USA, Inc., No. 9:06-cv-01995-RBH, 2006 WL 2171130, at *2-4 (D.S.C. July 31, 2006) (unpublished) ; see also Gilmer v. Walt Disney Co., 915 F. Supp. 1001, 1006 n.3 (W.D. Ark. 1996) (rejecting the plaintiff's argument that a state rule of civil procedure could prevent federal jurisdiction by precluding a review of the amount in controversy). While Rule 8(a) permits plaintiffs to limit the amount of relief claimed, the Chavis court indicated Rule 8(a) might allow a plaintiff to prevent federal jurisdiction by limiting the amount of relief they demand. Chavis, 415 F. Supp. 2d at 627. However, another court indicated a contrary construction is just as likely. Cook, 2006 WL 2171130, at *2 & n.2, (concluding inquiry into the actual amount in controversy is appropriate despite the existence of Rule 8(a), SCRCP, because Rule 54(c), SCRCP, might allow the plaintiff to recover beyond a self-imposed cap on damages in the

complaint). Because South Carolina law could allow Plaintiffs to use a self-imposed illusory limitation on damages to manipulate federal jurisdiction, this Court must and can evaluate whether the amount in controversy actually exceeds five million dollars. Brooks v. GAFMC Materials Corp., No. 8:06-1613-HMH, 2006 WL 2077001, at *2 (D.S.C. July 24, 2006) (unpublished) (quoting Phillips, 351 F. Supp. at 462).

The need to evaluate the actual amount in controversy here is heightened because neither Plaintiffs nor their Attorneys have submitted a pre-removal sworn affidavit disclaiming any monetary recovery on behalf of the class in excess of five million dollars or individual recovery in excess of seventy-five thousand dollars. Brooks, 2006 WL 207704, at *2 n.1 ("'To further prevent the potential for manipulation after remand, this court strongly suggests that any plaintiff wishing to limit a claim for monetary damages file a pre-removal sworn affidavit of both the plaintiff[s] and counsel disclaiming any monetary recovery in excess of [the jurisdictional amount].'" (quoting Jones v. Allstate Ins Co., 258 F. Supp. 2d 424, 427 n.2 (D.S.C. 2003)).

C.    **If GAFMC has the Burden of Establishing Removal Jurisdiction Under CAFA, this Court Should Still Find it has Jurisdiction over this Case Because GAFMC has Established the Actual Amount in Controversy Exceeds Five Million Dollars by a Reasonable Probability or a Preponderance of the Evidence.**

1.    **This Court should apply a reasonable probability standard when determining whether GAFMC has established the actual amount in controversy exceeds five million dollars.**

Assuming, arguendo, that GAFMC must establish removal jurisdiction under CAFA, then this Court must determine the standard that GAFMC must meet. While Plaintiffs attempt in their Motion to Remand to claim that the legal certainty standard applies, the Fourth Circuit has not established the proper burden, standard, or test for determining whether a removing party established the actual amount in controversy exceeds five million dollars. Cook, 2006 WL

8

2171130, at *3; see also Rota v. Consolidation Coal Co., 175 F.3d 1016, 1016 n.1 (4th Cir. 1999)
(unpublished table decision) (noting the Fourth Circuit had not adopted a standard for evaluating
whether the defendant established proper removal jurisdiction). However, a recent decision of
the Northern District of West Virginia held that in the Fourth Circuit the preponderance of the
evidence standard has been consistently applied, and did so in a CAFA decision. McMahon v.
Advance Stores Co., No. 5:07cv123, 2008 WL 183715 at *3 (N.D.W. Va. Jan. 18, 2008) (slip
copy). In light of CAFA's clear purpose of expanding removal jurisdiction over class actions,
discussed above, this Court should hold the appropriate standard is reasonable probability.

The United States Supreme Court has mandated the party asserting federal jurisdiction
must support his jurisdictional allegations with "competent proof." McNutt v. Gen. Motors
Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). The Seventh Circuit has interpreted this to
require a defendant to show removal jurisdiction is appropriate by a reasonable probability and
applied this standard to class actions removed under CAFA. Brill v. Countrywide Home Loans,
Inc., 427 F.3d 446, 448 (7th Cir. 2005); see also Pfizer, Inc. v. Lott, 417 F.3d 725, 725-26 (7th
Cir 2005) (indicating a reasonable probability standard may have applied if CAFA had governed
the plaintiffs' class action).

Although the Fourth Circuit has yet to expressly adopt this standard, it appropriately
furthers Congress's express goal of expanding removal jurisdiction over class actions. The
reasonable probability standard would also allow courts to more readily exercise removal
jurisdiction over class actions where the actual amount in controversy meets the jurisdictional
threshold and it should be applied here.

> 2.    **If this Court rejects the reasonable probability standard, then it should apply a preponderance of the evidence standard to determine if GAFMC has established the actual amount in controversy exceeds five million dollars.**

If this Court finds the reasonable probability standard inappropriate, then, although not binding, this Court should follow the decisions of other courts and apply a preponderance of the evidence standard here. E.g., De Aguilar v. Boeing Co., 47 F.3d 1404, 1411-12 (5th Cir. 1995) (holding the preponderance of the evidence standard was appropriate because it struck the appropriate balance between the defendants' need for protection from plaintiffs trying to avoid federal court then recovering more in state court and the plaintiffs' interest as the master of their complaint).

In Crosby v. CVS Pharmacy, Inc., the plaintiff tried to use a self-imposed limit ("not to exceed $75,000") to prevent removal jurisdiction. 409 F. Supp. 2d 665, 667 (D.S.C. 2005). The Crosby court held a preponderance of the evidence standard applied when determining whether the defendant established the actual amount in controversy exceeded the jurisdictional threshold. Id. The court reasoned that this standard would allow it to use common sense when determining the actual amount in controversy, and it also "strike[s] an appropriate balance between a defendant's right of removal and a plaintiff's right to be master of his own claim." Id. at 668 (citing Dash v. Firstplus Home Loan Trust, 248 F. Supp. 2d 489 (M.D.N.C. 2003)).

Other courts have applied a preponderance of the evidence standard to determine whether the actual amount in controversy is satisfied in a class action removed under CAFA. E.g., Hall v. Triad Fin. Servs., Inc., No. 07-cv-0184-MJR, 2007 WL 2948405, at *1 (S.D. Ill. Oct. 10, 2007) (slip opinion) (applying a preponderance of the evidence standard to determine whether the amount in controversy exceeded CAFA's five million dollar jurisdictional threshold); Vanyo, 2007 WL 1795959, at *2 ("The removing defendant has the burden to prove diversity

10

jurisdiction by a preponderance of the evidence."). Thus, the Crosby court's reasoning can and should apply to the case at bar, even though Crosby did not directly address removal jurisdiction under CAFA.

As in Crosby, here Plaintiffs have used indeterminate self-imposed limits on the amount of damages in their complaint, claiming class recovery "does not exceed five million dollars" and individual recovery "is not to exceed $74,999.00," in an attempt to avoid removal jurisdiction. (First Am. Compl. ¶¶29, E.) As a result, Crosby is instructive here, and this Court should also apply a preponderance of the evidence standard to determine whether GAFMC has established the actual amount in controversy exceeds five million dollars.

> 3.    **Removal jurisdiction is appropriate because GAFMC has established this class action actually places more than five million dollars in controversy under a reasonable probability or a preponderance of the evidence.**

Under the reasonable probability standard, the removing party must show "what the stakes of litigation could be ... [and] what they are given the plaintiff's actual demands." Brill, 427 F.3d at 449 (emphasis omitted). "The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." Id. at 449. To determine whether the actual amount in controversy exceeds five million dollars under either standard, this Court looks to the "plaintiff's cause of action alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the records" as they exist "at the moment the petition for removal was filed." Id. at 667; see also Hall, 2007 WL 2948405, at *2 ("The amount in controversy is determined by evaluating the plaintiff's complaint and the record as a whole." (citing Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 404 (7th Cir. 2004) (internal quotation

11

marks omitted)). GAFMC can carry its burden under either standard and establish Plaintiffs' class action places more than five million dollars in controversy.

Plaintiffs' class action centers on their allegation that all Timberline Shingles manufactured at GAFMC's Mobile, Alabama plant and shipped into South Carolina since 1997 are defective. (First Am. Compl. ¶¶9-22.) In their class claims for negligence, Plaintiffs assert "damages in that they paid full price for a roofing product which is defective" and "the faulty roof has caused actual and consequential damages and requires replacement." (First Am. Compl. ¶43.) Plaintiffs claim these damages on behalf of "all consumers in South Carolina who have purchased and/or used GAFMC shingles manufactured at [GAFMC's] Mobile, Alabama plant." Thus, at a minimum, Plaintiffs' class action places in controversy the basic cost of replacing the Timberline Shingles manufactured at GAFMC's Mobile, Alabama plant and shipped into South Carolina. See Vaught v. A.O. Hardee & Sons, Inc., 366 S.C. 475, 480-81, 623 S.E.2d 373, 376 (2005).

GAFMC sells its products, including Timberline Shingles, to distributors in "squares." "Timberline" is actually the name for a group of shingles that vary in weight, appearance and warranty term (now 30 years to lifetime). Plaintiffs' Complaint alleges that hundreds of homes comprise the class, and while Plaintiffs attempt to further cap their damages in their brief, they do not address their assertion of punitive damages and attorneys' fees. The potential recovery far exceeds the amount Plaintiffs now seem to limit their recovery per class member to $20,000.00.

Plaintiffs also seek the cost of replacing the Timberline Shingles as damages. (First Am. Compl. ¶¶43). The total replacement costs could necessarily entail the costs of contractors removing the allegedly defective shingles and installing the new shingles, and therefore, must be combined with the actual cost of replacing the individual shingles. Kincaid v. Landing Dev.

12

Corp., 289 S.C. 89, 94, 344 S.E.2d 869, 873 (Ct. App. 1986) (indicating the court properly included estimated repair costs in calculating measure of damages to real property in negligence and breach of warranty actions). The individual arrangements with contractors and installers, which each class member's recovery would necessitate, make this number much more difficult to estimate. However, this "[C]ourt is not required to leave its common sense behind when ascertaining the proper amount in controversy." Crosby, 409 F. Supp. 2d at 668 (internal quotation omitted).

Common sense dictates finding the costs of removing and installing this massive amount of Timberline Shingles, which Plaintiffs have placed in controversy, would add additional significant damages. Further, in determining the amount in controversy, both punitive damages and attorneys' fees are considered. Bell v. Preferred Life Assur. Society, 320 U.S. 238, 240 (1943). Plaintiffs have sought both in this action with no limitation imposed on either.

**D.      Alternatively, this Court has Jurisdiction Over this Action Because the Allegations on the Face of Plaintiffs' Complaint Establish that the Actual Amount in Controversy Exceeds Five Million Dollars.**

South Carolina District Courts have used the following formula to determine whether the actual amount in controversy satisfied the five million dollar jurisdictional amount in section 1332(d)(2):

**Proposed Class Members x Proposed Individual Recoveries = Amount in Controversy**

See Chavis, 415 F. Supp. 2d at 627; Lanier v. Norfolk S. Corp., No. 1:05-3476-MBS, 2006 WL 1878984, at *2 (D.S.C. July 6, 2006) (slip opinion). Applying the formula accepted by this Court to the allegations in the Amended Complaint show what Plaintiffs are claiming far exceeds five million dollars and is properly before this Court.

13

In Chavis, the plaintiffs claimed to represent "a class greater than one hundred members" and to have suffered "damages the sum and value of which is not to exceed Fifty Thousand Dollars ($50,000) per class member, exclusive of interests and costs." 415 F. Supp. 2d at 627. Based on these numbers the court concluded the amount in controversy satisfied the five million dollar jurisdictional amount, stating, "The mathematical equation (100 x $50,000) reaches the jurisdictional threshold." Id. In the case at bar, if the owners of only 67 houses can recover $74,999, the jurisdictional threshold is reached.

In Lanier, the plaintiffs purported to represent a "proposed class consist[ing] of at least 350 persons who are seeking damages for loss of income, job benefits, seniority benefits, future earning capacity, loss of enjoyment of life, and mental and emotional injuries." 2006 WL 1878984, at *2. The court then implicitly recognized the mathematical formula articulated above, finding "that it would take only $15,000 per plaintiff to meet the $5 million requirement, less than one year's pay." Id. As a result, the court concluded it could properly assert jurisdiction over these claims, pursuant to section 1332(d)(2). See id.

In the case at bar, even conservatively applying this formula demonstrates the actual amount in controversy exceeds five million dollars. Plaintiffs allege "that there are hundreds of homes in South Carolina" with the shingles at issue in this litigation, and they purport to represent a "class consist[ing] of all consumers in South Carolina who have purchased and/or used GAFMC shingles manufactured at the Defendant's Mobile, Alabama plant." (First Am. Compl. ¶¶15, 21.) At a minimum, these allegations clearly establish the class will reach at least one hundred members. Thus, even based on a conservative estimate, each class member's individual recovery will only need to amount to $50,000, exclusive of interests and costs, to "reach the jurisdictional threshold." Chavis, 415 F. Supp. 2d at 627.

14

In regard to individual recoveries, Plaintiffs' allegations clearly rise above this minimal amount because they claim individual recoveries up to $74,999, exclusive of interests and costs. (First Am. Compl. ¶E.) The fact Plaintiffs claim the ability to recover this amount is sufficient to use it in the equation for determining the actual amount in controversy. E.g., Brill, 427 F.3d at 448 ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy between the parties.' That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal.")); Home Depot, Inc. v. Rickher, No. 06-8006, 2006 WL 1727749, at *2 (7th Cir. May 22, 2006) (unpublished) (finding the defendant established removal jurisdiction under CAFA where it established the plaintiffs' alleged damages and recovery, if received in full, would cost the defendant more than five million dollars because potential, rather than actual recovery, determines the amount in controversy). Consequently, the five million dollar jurisdictional amount is established based on Plaintiffs' own allegations regarding the number of members in the putative class and their claim of individual recovery up to $74,999 (100 x 74,999 = $7,499,900). Therefore, this Honorable Court should properly exercise its jurisdiction over the case at bar and refuse to remand this action.

## III.    PLAINTIFF CANNOT INVOKE THE EXCEPTIONS OF CAFA TO DEFEAT FEDERAL JURISDICTION.

The pleadings filed by Plaintiffs suggest that Plaintiffs rely on the CAFA exceptions found at 28 U.S.C. § 1332(d)(3), (4). As a starting point, neither of these exceptions applies in this case because in order to invoke these exceptions, commonly referred to as the local controversy exception and the home state exception, there must be a primary defendant which is a citizen of the state in which the action was originally filed. Paragraph 3 of Plaintiffs' Complaint makes clear that GAFMC is a corporation organized and existing under the laws of a

15

state other than South Carolina. (First Am. Compl. ¶3.) The absence of a primary defendant from the state of South Carolina defeats Plaintiffs' claim that either exception applies.

The courts which have interpreted the CAFA exceptions asserted by Plaintiff have held that the party asserting the exception bears the burden of proving the exception. "When a party seeks to avail itself of an express statutory exception to federal jurisdiction under CAFA, . . . the party seeking remand bears the burden of proof with regard to that exception." Evans v. Walters Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006); see also Frazier v. Pioneer AMS., LLC, 455 F.3d 542, 546 (5th Cir. 2006) (same); Hart v. FedEx Ground Package Sys., Inc., 457 F.3d 675, 680-81 (7th Cir. 2006) (same); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007) (same). Thus, because applying either of the exceptions here would contradict the statutorily required elements and Plaintiffs have not established either exception is proper, this court should find the exceptions inapplicable and remand improper.

**A.    The Local Controversy Exception.**

In support of their Motion to Remand, Plaintiffs assert the local controversy exception found at 28 U.S.C. § 1332(d)(4)(A) (2000 & Supp. 2006). However, in order for this exception to apply, four circumstances must be met. Among the four circumstances is that at least one defendant is a defendant from whom members of the proposed class seek significant relief, whose alleged conduct forms a basis of the asserted claims, and who is a citizen of the original filing state. Here, Plaintiffs' attempt to invoke the local controversy exception fails because there is no South Carolina defendant in this case. Plaintiffs' illusory claims to link a Chester, South Carolina manufacturing facility to this incident is without merit. The local controversy exception does not provide an avenue for Plaintiffs to escape federal jurisdiction by simply claiming that an out-of-state Defendant, such as GAFMC, has a facility or other location

16

in South Carolina. Plaintiffs have previously conceded that GAFMC is not a resident of South Carolina in their Return to the Fourth Circuit.

In proving the local controversy exception, other courts have held that the burden remains on the plaintiff to prove the exception. In Evans, the court held that the plaintiffs "bear the burden of establishing that they fall within CAFA's local controversy exception." 449 F.3d at 1164. Similarly, the Fifth Circuit, in Frazier, held "that the plaintiffs have the burden to show the applicability of the §§ 1332(d)(3) – (5) exceptions when jurisdiction turns on their application." 455 F.3d at 546. Here, the primary and sole Defendant is a foreign company and the exception fails.

## B.    Plaintiffs have Failed to Satisfy the Home State Exception.

Plaintiffs' attempt to invoke the home state exception suffers from the same defects as their assertion of the local controversy exception. The home state exception, found at 28 U.S.C. § 1332(d)(4)(B), provides that a district court shall decline to exercise jurisdiction if:

> [t]wo-thirds or more of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state in which the action was originally filed.

Id. The home state exception requires all primary defendants to be citizens of the state in which the action is filed. The home state exception is a very narrow exception which applies only in cases in which all defendants are citizens of the forum state. Here, no such defendants exist and the exception is inapplicable.

## C.    The Exception in 28 U.S.C. § 1332(d)(3) does not Apply.

Under 28 U.S.C. § 1332(d)(3), a court may decline to exercise jurisdiction "in the interest of justice and looking at the totality of the circumstances" if greater than one-third, but less than two-thirds, of the members of the plaintiff classes are citizens of the forum state and the primary

17

defendants are citizens of that state. Once again, the assertion of this exception fails because Plaintiffs have not sued a citizen and resident of South Carolina. The claims regarding the Chester plant do not support Plaintiffs' claims. "The movants must satisfy the citizenship requirement as a prerequisite to the district court weighing the additional statutory factors enumerated to guide the court's remand determination." Preston v. Tenet Healthsystem Mem. Med. Ctr., Inc., 485 F.3d 804, 812 (5th Cir. 2007). As a result, the discretionary exception cannot apply here because Plaintiffs' action does not satisfy an express requirement in Section 1332(d)(3).

Simply put, the effort of Plaintiffs to invoke the exceptions fails because of a fundamental flaw in their case, the absence of a primary defendant in the state of South Carolina. Even if Plaintiffs were to amend to add a defendant from South Carolina, that defendant would have to be a real defendant and not a sham.

## IV.    PLAINTIFFS ARE NOT ENTITLED TO RECOVER COSTS AND FEES.

In their most recent pleadings in this Court, Plaintiffs request an award of sanctions against GAFMC and counsel. Most recently in Martin v. Franklin Capital Corp., the United States Supreme Court held that cost and fees may only be awarded when "just." 546 U.S. 132, 137-38 (2005). "Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 141. Here, based on the legal issues presented as to the interpretation of CAFA and the lack of clear precedent in this Circuit, an objectively reasonable basis exists for this removal, so costs and fees are not appropriate.

18

## CONCLUSION

For the foregoing reasons, this case satisfies the jurisdictional requirements of the Class

Action Fairness Act. Accordingly, Plaintiffs' second Motion to Remand should be denied.

Respectfully submitted,

COLLINS & LACY, P.C.

By:   s/Gray T. Culbreath
       GRAY T. CULBREATH (FED ID #5647)
       gculbreath@collinsandlacy.com
       1330 Lady Street, Sixth Floor (29201)
       Post Office Box 12487
       Columbia, South Carolina 29211
       (803) 256-2660 (voice)
       (803) 771-4484 (facsimile)

       ATTORNEY FOR DEFENDANT
       GAF MATERIALS CORPORATION

Columbia, South Carolina
January 28, 2008

19

## CERTIFICATE OF MAILING

This is to certify that on the 28th day of January, 2008, a true and correct copy of **Defendant GAF Materials Corporation's Return to January 4 Order and Plaintiffs' Second Motion to Remand** is being electronically transmitted to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:


_____s/Gray T. Culbreath_____.
Gray T. Culbreath

COUNSEL SERVED:


Daniel Speights, Esquire
Gibson Solomons, Esquire
Marion C. Fairey, Jr., Esquire
SPEIGHTS & RUNYAN
200 Jackson Avenue East
Post Office Box 685
Hampton, SC 29924

Thomas H. Pope, III, Esquire
Pope Hudgens, Attorneys, P.A.
1508 College Street
Post Office Box 190
Newberry, SC 29108

## INDEX

### Cases

Brooks v. GAFMC Materials Corp., No. 8:06-1613-HMH, 2006 WL 2077001, at *2 (D.S.C. July 24, 2006) ............................................................................................................................................... 8

Cook v. Meditronic Sofamor Danek, USA, Inc., No. 9:06-cv-01995-RBH, 2006 WL 2171130, at *2-4 (D.S.C. July 31, 2006) .............................................................................................................. 7, 9

Hall v. Triad Fin. Servs., Inc., No. 07-cv-0184-MJR, 2007 WL 2948405, at *1 (S.D. Ill. Oct. 10, 2007) ........................................................................................................................................... 11, 12

Home Depot, Inc. v. Rickher, No. 06-8006, 2006 WL 1727749, at *2 (7th Cir. May 22, 2006). 15

Kearns v. Ford Motor Co., No. CV 05-5644 GAF (JTLX), 2005 WL 3967998, at *6 (C.D. Cal. Nov. 21, 2005) ................................................................................................................................... 3

Lanier v. Norfolk S. Corp., No. 1:05-3476-MBS, 2006 WL 1878984, at *2 (D.S.C. July 6, 2006) ............................................................................................................................................................ 14

McMahon v. Advance Stores Co., No. 5:07cv123, 2008 WL 183715 at *3 (N.D.W. Va. Jan. 18, 2008) ................................................................................................................................................... 9

Rota v. Consolidation Coal Co., 175 F.3d 1016, 1016 n.1 (4th Cir. 1999) ..................................... 9

Vanyo v. CitiFinancial, Inc., No. 1:06CV2943, 2007 WL 1795959, at *1-3 (N.D. Ohio June 20, 2007) ........................................................................................................................................... 6, 11