# EXHIBIT F

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FOR THE EIGHTH JUDICIAL CIRCUIT |
| COUNTY OF NEWBERRY ) | CIVIL ACTION NO.: 2006-CP-36-129 |
| ) | |
| Jack Brooks and Ellen Brooks, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs ) | ORDER CERTIFYING CLASS |
| ) | |
| GAF Materials Corporation, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter came before the Court by way of Plaintiffs' Motion for Class Certification. Following extensive briefing on the matter, the Court heard oral argument on October 7, 2009. Each party was allowed full opportunity to highlight and expand upon their arguments about the facts and the law to the Court resulting in argument covering the entire spectrum of issues raised in certification analysis even including discussion of class management. After carefully and painstakingly considering all written submissions, as well as oral argument, the Court grants Plaintiffs' motion for class certification.

Under the law of South Carolina, an analysis of the facts and law, both as to the claims and defenses asserted, must focus upon the appropriateness of class treatment, not the merits of the case. *King v. American General Finance, Inc.*, ____ S.C. ____, 687 S.E.2d 321(S.C.,2009). Notwithstanding this limitation, the factual background must be considered to determine whether class treatment is appropriate for this case.

> "At the class certification stage, a district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn v. Jefferson-Pilot Life Insurance Co.*, 445 F.3d 311, 319 (4th Cir.2006) (quoting *Gariety v.*

1



*Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir.2004)). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case." Id. (citing *Falcon*, 457 U.S. at 160)

*Brown v. Charles Schwab & Co., Inc.*, 2009 WL 4809426 (D.S.C.,2009).

This Court does not reach a decision upon the merits of Plaintiffs' claims or Defendants' defenses other than that the claims and defenses do not present an obstacle to class certification.[1] The Court is aware that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 (quoting Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523). This court has been mindful to engage in the "rigorous analysis" of the Plaintiffs' factual allegations which are material to Rule 23 but also mindful that the task of the Court at this stage is not to determine the merits of the claims or defenses in this case. *See Amchem Products, Inc. v. Windsor* 521 U.S. 591, 117 S.Ct. 2231(U.S.Pa.,1997). After this analysis, the Court concludes that class treatment is the most just and efficient method to proceed.

The plaintiffs, Jack and Ellen Brooks, began this suit after discovering the shingles on the roof of their home had cracked. The subject shingles were manufactured by Defendant GAF at its Mobile, Alabama plant. Through discovery, the plaintiffs determined that complaints of cracking shingles were not isolated but throughout the GAF distribution network in South Carolina and beyond. With the Amended Complaint

---

[1] Prior to the issuance of this Order, the Plaintiffs have voluntarily withdrawn from class consideration the causes of action for Fraud, Negligent Misrepresentation, and violation of the South Carolina Unfair Trade Practices Act. Therefore, class certification does not include the certification of these causes of action.

2

dated November 19, 2007, the plaintiffs began prosecution of this class action on behalf of themselves and others similarly situated who also had these shingles.

The product involved is the GAF Timberline laminate shingle, which GAF marketed with 25, 30 or 40 year warranties, as well as a Timberline Ultra with a lifetime warranty. The Brooks purchased their shingles in 2000 with a 30-year warranty. The shingles began to crack after three years. The GAF territory manager in South Carolina reported in March 2007 that he was experiencing cracking complaints on GAF shingles made in the Mobile plant. The director of the Quality Assurance Department of GAF in New Jersey acknowledged that there was a Mobile cracking problem with Timberline shingles, and he and other members of the GAF Mobile Cracking Team studied the problem with premature cracking of Timberline shingles from 2002 through 2005. GAF described the problem as: "Mobile laminates have a high failure rate for short term cracking (4 to 6 years)."

The plaintiffs are seeking to be representatives of the class of persons who own property in South Carolina which have or had GAF Timberline shingles manufactured in the GAF Mobile, Alabama plant for the years 1999 through 2007.

The Plaintiffs have established that all of the requirements for certification are met. *See Waller v. Seabrook Island Property Owners Ass'n*, 300 S.C. 465, 388 S.E.2d 799 (1990); Rule 23(a), SCRCP. The prerequisites are:

    1) the class must be "so numerous that joinder of all members is impracticable;"

    2) there must be "questions of law or fact common to the class;"

    3) the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class;"

    4) "the representative parties [must] fairly and adequately protect the interests of

3

the class;" and

5) "the amount in controversy [must] exceed one hundred dollars for each member of the class." Rule 23(a), SCRCP.

Affording the pleadings their plain meaning and interpreting the facts surrounding class treatment in a neutral and common sense fashion in light of the controlling law ends in understanding that class treatment is not merely justifiable but the superior treatment for the Court.

A.   Numerosity

The Court finds the number of class members to be so numerous that joinder would be impracticable. In response to discovery GAF stated that 213,511 squares of Timberline shingles had been distributed in South Carolina during the pertinent period.[2] Documents produced by GAF, which takes the smallest of conflicting numbers, provide a thumbnail sketch evidencing class members across the State of South Carolina (See Plaintiffs' Reply Memorandum p. 17). Deposition testimony was provided that in the Newberry area alone between 1500 and 2000 potentially affected roofs were installed during the pertinent period. (Exhibit 5 to Plaintiffs' Memorandum in Support). Under any test this number evidences that joinder of all class members would be impracticable. *Stemmermann v. Lilienthal*, 54 S.C. 440, 32 S.E. 535 (1899); *Grant v. Sullivan*, 131 F.R.D. 436 (M.D.Pa. 1990) (14 class members ) see also, *Arkansas Education Asso. v. Board of Education*, 446 F.2d 763 (8th Cir.1971) (17 class members); *Cypress v. Newport News General and Nonsectarian Hospital Assn*, 375 F.2d 648 (4th Cir.1967) (18 class members); *MacNeal v. Columbine Exploration Corp.*, 123 F.R.D. 181 (E.D.Pa.1988) (36 class members); *Dameron v. Sinai Hospital*, 595 F.Supp. 1404

---

[2] The average roof requires approximately 35 to 40 squares of shingles.

4

(D.Md.1984) (25-30 class members); *Pabon v. McIntosh*, 546 F.Supp. 1328 (30-40 class members); *National Gypsum v. Kirbyville Independent School District*, 770 S.W.2d 621 (Tex.Civ.App.--Beaumont 1989) (67 class members); *Republic National Bank of Dallas v. Denton & Anderson Co.*, 68 F.R.D. 208 (N.D.Tex.1975) (class in excess of 40 members met numerosity as a matter of law); *Sharon Steel Corp. v. Chase Manhattan Bank*, 88 F.R.D. 38 (S.D.N.Y.1980) (87 class members); *Polich v. Burlington N, Inc.*, 116 F.R.D. 258 (D.Mont.1987) (60 class members).

B.   Commonality

The Court finds that there are questions of law and fact common to the class. This product liability action seeks redress for deficiencies in GAF Timberline shingles manufactured in GAF's facility in Mobile, Alabama between 1999 and 2007 and distributed in South Carolina. Common issues for all class members predominate over any individual variations. Inquiry will turn to common manufacturing processes which has made common products which allegedly result in common manifestations of a common problem. Each of the causes of action now certified[3] require review of the same constellation of facts, law, regulations, and industry standards for all of the class members. These issues of law and fact common to all are "of sufficient importance in proportion with the rest of the action to render it desirable that the whole of the matter should be disposed of at the same time." *McGann v. Mungo* 287 S.C. 561, 340 S.E.2d 154, (S.C.App.,1986). *See Also Tilley v. Pacesetter Corp.* 333 S.C. 33, 508 S.E.2d 16,(S.C.,1998); *Salmonsen v. CGD, Inc.* 377 S.C. 442, 446-447, 661 S.E.2d 81, 84 (S.C.,2008); *King v. American General Finance, Inc.* 687 S.E.2d 321(S.C.,2009). While

---

[3] Negligence, Breach of Warranty, Statutory Breach of Implied Warranty, Common Law Breach of Implied Warranty, and Unjust Enrichment

5

it is certain there will be individual variations, including variations in damages[4] and the application of certain defenses[5], these discordant variations do not mute the common strings found in each of the remaining causes. In *Tatum v. R.J. Reynolds Tobacco Co.* 254 F.R.D. 59, 64 (M.D.N.C.,2008) the Court stated that the rule requires that there be questions of law or fact common to the class but that the rule "does not require that all, or even most issues be common." *citing Cent. Wesleyan*, 143 F.R.D. at 636, aff'd 6 F.3d 177 (4th Cir.1993); *Bussian v. DaimlerChrysler Corp.*, No. 1:04CV00387, 2007 WL 1752059, at 5 (M.D.N.C. June 18, 2007) (explaining that the test for commonality "is not demanding, and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members"). Variations may exist but the

---

[4] *Safran v. United Steelworkers of America, AFL-CIO*, 132 F.R.D 397 (W.D. Pa 1989); *Coley v Clinton*, 635 F.2d 1364 (8th Cir. 1980); *In re Asbestos School Litigation*, 104 F.R.D. 422, 429 (E.D.Pa.1984), *aff'd in part and vac'd in part*, 789 F.2d 996 (3rd Cir.), *cert. den'd*, 479 U.S. 852 (1986); *In re Activision Securities Litigation*, 621 F.Supp. 415 (N.D. Cal. 1985); *DeBoer v Mello Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995).

[5] In *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir.2000), the Court stated:

> the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones. As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).

*In re WorldCom, Inc. Securities Litigation* 219 F.R.D. 267, 303-304 (S.D.N.Y.,2003) reinforces the holding and cites to *Waste Management*

> The First Circuit affirmed the certification of the class, finding that common issues predominated despite the possibility of statute of limitations defenses. As in *Waste Management*, despite the possible presence of statute of limitations defenses, class members in the Securities Litigation are bound by a "constellation of common issues" that predominate over any individual questions.

predominance issues surrounding this product liability action remains common. Accordingly, the commonality requirement for certification is satisfied.

C.     Typicality

The Court finds that the class representatives claims are typical of the claims of the class. The idea of typicality runs closely with the idea of commonality. As the Eastern District Court in Virginia has stated recently, "[t]he Rule 23(a) requirements of commonality and typicality tend to merge analytically. In general, commonality requires that there be "questions of law or fact common to the class," and typicality requires that "the claims or defenses of representative parties are typical of the claims or defenses of the class." *In re Mills Corp. Securities Litigation* c (E.D.Va.,2009) (citing *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 524, 538 (E.D.Va.2006) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

Jack and Ellen Brooks are property owners in Newberry, South Carolina. The Brooks sit in the same or similar position to the other class members as owners of property which has been allegedly damaged as a result of Defendant's actions. They have no special relationship with or knowledge of the Defendant. Their home is well within the normal and foreseeable market for Defendant's shingles. The claims certified as class claims will rise or fall on operative fact and law typical of the class. A claim is typical if it arises from the same course of conduct that give rise to the claims of the class members and if the claims are based on the same legal theories. *Central Wesleyan College v. W. R. Grace & Co.*, 143 F.R.D. at 637. This test does not require that the representatives have identical claims which other class members might present. The question of typicality [instead] focuses on the similarity of the legal and remedial theories

7 

of claims of the named and unnamed plaintiffs. *Bates v. Tenco Services, Inc.*, 132 F.R.D. 160, 163 (D.S.C.1990). See also, Flanagan, *South Carolina Civil Procedure* (2d Ed. 1996) at p. 180 (the use of the word typical suggests that the claims or defenses do not need to be co-extensive, but rather similar to, or shared by most members of the class). Moreover, [t]ypicality is generally presumed when common questions exist. @ Newberg, *Newberg on Class Actions* at 165 (2d Ed. 1985).

This Court finds that the Brooks' claims and GAF's defenses to the certified causes of action are typical of a class South Carolina property owners who have purchased GAF shingles manufactured in Mobile between the years 1999 and 2007.

D.     Adequacy

South Carolina law requires that a class representative not be antagonistic toward the interests of the class and be adequately represented by counsel. In *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 366 (1966), the United States Supreme Court rejected attacks on a named plaintiff even though she did not understand her complaint, could not explain statements in it, had little knowledge of what the lawsuit was about, did not know defendants by name, nor the nature of the misconduct alleged. The extent of the named class representative's knowledge of the substantive law and the legal particulars of his or her claims is not relevant to determining whether a plaintiff can adequately represent the class. *South Carolina National Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991).

The Brooks are college graduates who have already displayed loyalty to the cause and the putative members of the class.[6] The Brooks' interests are complimentary to the interests of the class, not antagonistic to the class members. Additionally, the Brooks

---

[6] Prior to the initiation of the suit and after filing, the Brooks have rejected overtures of individual settlement.

8

have hired qualified and experienced counsel to handle the class claims and have testified that they will follow the instructions of counsel.

The standard for determining the adequacy of class counsel is whether counsel is "qualified, experienced and generally able to conduct the proposed litigation." *South Carolina National Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991). It is undisputed that the Brooks have hired respected and able counsel who have enormous experience in conducting complex litigation of this type. As such, this court finds that the Plaintiff and their counsel adequately represent the interests of the class. See *Runion v. U.S. Shelter* 98 F.R.D. 313, 317 (D.C.S.C.,1983).

E.   $100.00 Requirement

The Court finds that the Plaintiffs' claims and the class members claims meet South Carolina's requirement that the claims have a value in excess of $100.00. Thadd Mays, the roofing contractor who installed the Brooks' roof, estimated a cost of $12,000.00 for the installation of roofing materials on the Brooks' home, excluding any necessary repair. The Brooks home is average sized and these costs would be typical to all class members if the defects alleged were determined to be true. Therefore, this Court finds the final requirement of class certification met.

THEREFORE, IT IS ORDERED that the Plaintiffs' motion to certify the case as a class is granted. The class is defined as all South Carolina property owners whose property have GAF Timberline shingles manufactured in GAF's Mobile, Alabama plant during the years 1999-2007.

9

IT IS ORDERED that Plaintiffs are appointed as representatives of the class.

AND IT IS ALSO ORDERED that Daniel A. Speights and A.G. Solomons, III of Speights & Runyan, and Thomas H. Pope, III of Pope & Hudgens, P.A. be appointed as class counsel.

AND IT IS SO ORDERED.

_____
The Honorable J. Mark Hayes, II
Circuit Judge

Spartanburg, SC
February ~~18~~, 2010
March