# EXHIBIT H

THE STATE OF SOUTH CAROLINA
IN THE COURT OF APPEALS
No. 2010-174207

RECEIVED

NOV 0 3 2010

SC Court of Appeals

Appeal From Newberry County
Court of Common Pleas

J. Mark Hayes, II, Circuit Court Judge
Civil Action No. 2006-CP-36-00129

Jack Brooks and Ellen Brooks,
on behalf of themselves and
others similarly situated,……………………...………………….. Respondents,

v.

GAF Materials Corporation……………………..………….....……… Appellant.

## INITIAL BRIEF OF APPELLANT

ROBINS, KAPLAN, MILLER &
CIRESI L.L.P.
Joel A. Mintzer
(*pro hac vice* pending)
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

COLLINS & LACY, PC
Gray T. Culbreath
Post Office Box 12487
Columbia, SC 29211
Telephone: (803) 256-2660
Facsimile: (803) 771-4484

*Attorneys for Appellant GAF Materials Corporation*

**Table of Contents**

Page

Statement of Issues on Appeal ................................................................................ 1

Statement of Case .................................................................................................... 4

Statement of Facts.................................................................................................... 7

Standard of Review................................................................................................ 11

Argument ............................................................................................................... 13

I.       The Circuit Court erred in granting summary judgment to a class of
         property owners on an implied warranty claim ...................................... 13

         A.       The Brookses cannot establish that all class members have
                  defective shingles.......................................................................... 13

         B.       The Brookses cannot establish that each class member provided
                  notice and an opportunity to cure to GAF ................................... 16

         C.       The Brookses failed to establish that each class member did not
                  disclaim their cause of action....................................................... 20

II.      The Circuit Court erred in granting summary judgment to the Brookses on
         their individual implied warranty claim................................................. 21

         A.       After giving notice of defect, the Brookses did not provide GAF a
                  reasonable opportunity to cure..................................................... 21

         B.       GAF properly disclaimed all implied warranties........................ 25

         C.       The Brookses failed to show a representation by GAF that the
                  product will last for a stated period............................................. 27

III.     The Circuit Court erred in granting class certification .......................... 29

         A.       The Brookses failed to establish the utility of a class action .................... 31

         B.       The Circuit Court erred in granting class certification on the
                  express and implied warranty claim ............................................ 34

         C.       The Circuit Court erred in granting class certification on the
                  negligence claim ........................................................................... 36

                  1.       The statute of limitations precludes class certification and
                           summary judgment in favor of the class........................... 36

2.    The economic loss doctrine precludes class certification,
and summary judgment in favor of the class ................................. 38

D.    The unjust enrichment claim could not be certified due to the lack
of commonality ........................................................................................ 39

Conclusion ......................................................................................................................... 40

## Table of Authorities

**Page**

**Cases**

Abraham v. Volkswagen of Am., Inc.,
  795 F.2d 238 (2d Cir. 1986)..............................................................................14

Adams v. S. Farm Bureau Life Ins. Co.,
  493 F.3d 1276 (11th Cir. 2007) .........................................................................33

Am. Mfg. Co. v. U.S. Shipping Board E.F. Corp.,
  7 F.2d 565 (2d Cir. 1925)...................................................................................19

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997)............................................................................................29

Andrews v. Chevy Chase Bank,
  545 F.3d 570 (7th Cir. 2008)...............................................................................12

Aqualon Co. v. MAC Equip., Inc.,
  149 F.3d 262 (4th Cir. 1998) .............................................................................22

Arcor, Inc. v. Textron, Inc.,
  960 F.2d 710 (7th Cir. 1992) .............................................................................19

Baughman v. Am. Tel. & Tel. Co.,
  306 S.C. 101, 410 S.E.2d 537 (1991) ................................................................29

BB&T v. Taylor,
  369 S.C. 548, 663 S.E.2d 501 (2006) ................................................................11

Briehl v. Gen. Motors Corp.,
  172 F.3d 623 (8th Cir. 1999) .............................................................................14

Brooks v. GAF Materials Corp.,
  532 F. Supp. 2d 779 (D.S.C. 2008)................................................................4, 32

Broussard v. Meineke Discount Muffler Shops, Inc.,
  155 F.3d 331 (4th Cir. 1998) .............................................................................37

Brunson v. Louisiana-Pacific Corp.,
  266 F.R.D. 112 (D.S.C. 2010) ...........................................................................35

Buettner v. R.W. Martin & Sons, Inc.,
  47 F.3d 116 (4th Cir. 1995) ..........................................................................26, 27

Campus Sweater & Sportswear Co. v. M. B. Kahn Constr. Co.,
    515 F. Supp. 64 (D.S.C. 1979)............................................................................ 36

Canal Elec. Co. v. Westinghouse Elec. Co.,
    973 F.2d 988 (1st Cir. 1992)............................................................................... 15

Charlotte-Mecklenburg Hosp. Auth. v. S.C. Dep't of Health & Envtl. Control,
    387 S.C. 265, 692 S.E.2d 894 (2010) ................................................................. 11

Cole v. Gen. Motors Corp.,
    484 F.3d 717 (5th Cir. 2007) ............................................................................. 36

Cowburn v. Leventis,
    366 S.C. 20, 619 S.E.2d 437 (Ct. App. 2005)..................................................... 29

Deiter v. Microsoft Corp.,
    436 F.3d 461 (4th Cir. 2006) ........................................................................ 35, 37

Drobnak v. Andersen Corp.,
    561 F.3d 778 (8th Cir. 2009) ............................................................................. 19

Edward's of Byrnes Downs v. Charleston Sheet Metal Co.,
    172 S.E.2d 120 (S.C. 1970) .......................................................................... 38, 39

Faber v. Faber,
    76 S.C. 156, 56 S.E. 677 (1907) ........................................................................ 33

Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.,
    254 F.R.D. 68 (E.D.N.C. 2008) ......................................................................... 39

Ferguson v. Charleston Lincoln Mercury, Inc.,
    349 S.C. 558, 564 S.E.2d 94 (2002) ............................................................. 11, 28

Flagstar Bank, FSB v. First Citizens Bank & Trust Co.,
    No. 3:09-876-CMC, 2009 WL 1707941 (D.S.C. June 17, 2009) .................. 39, 40

Gardner v. S.C. Dep't of Revenue,
    353 S.C. 1, 577 S.E.2d 190 (2003) ........................................................ 21, 30, 31

Gen. Motors Corp. v. Halco Instruments, Inc.,
    185 S.E.2d 619 (Ga. Ct. App. 1971)................................................................... 27

Gen. Tel. Co. v. Falcon,
    457 U.S. 147 (1982).............................................................................. 29, 30, 31

Gold Kist, Inc. v. Citizens & S. Nat'l Bank,
    286 S.C. 272, 333 S.E.2d 67 (1985) ............................................................. 20, 26

Graves v. Serbin Farms, Inc.,
    306 S.C. 60, 409 S.E.2d 769 (1991) ..................................................... 29

Greenwood Cotton Mill v. Tolbert,
    105 S.C. 273, 89 S.E. 653 (1916) ........................................................ 16

Grinnell Corp. v. Wood,
    __ S.C. __, 698 S.E.2d 796, 798 (2010) ......................................... 11, 23

Hitachi Elec. Devices (USA), Inc. v. Platinum Techs., Inc.,
    366 S.C. 163, 621 S.E.2d 38 (2005) .................................... 16, 17, 22, 24

Hosp. Mgmt. Assocs., Inc. v. Shell Oil Co.,
    356 S.C. 644, 591 S.E.2d 611 (2004) ................................................. 29

Hutson v. Cummins Carolinas, Inc.,
    280 S.C. 552, 560, 314 S.E.2d 19, 24 (Ct. App. 1984)......................... 39

In re Theisen,
    382 S.C. 213, 676 S.E. 2d 133 (2009) ................................................ 33

Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC,
    No. 1:03CV949, 2005 WL 1610653 (M.D.N.C. July 8, 2005) ............................ 39

Jarman v. United Indus. Corp.,
    98 F. Supp. 2d 757 (S.D. Miss. 2000).................................................. 15

Johnston v. HBO Film Mgmt., Inc.,
    265 F.3d 178 (3d Cir. 2001)............................................................... 35

Jones v. Allstate Ins. Co.,
    258 F. Supp. 2d 424 (D.S.C. 2003)..................................................... 32

Kennedy v. Columbia Lumber & Mfg. Co.,
    299 S.C. 335, 384 S.E.2d 730 (1989) ................................................. 38

King v. Am. Gen. Fin., Inc.,
    386 S.C. 82, 687 S.E.2d 321 (2009) ................................................... 11

KMC Leasing, Inc. v. Rockwell-Standard Corp.,
    9 P.3d 683 (Okla. 2000)..................................................................... 21

Laney v. Am. Standard Cos.,
    No. 07-3991, 2010 WL 3810637 (D.N.J. Sept. 23, 2010).............................. 14, 17

Lecates v. Hertrich Pontiac Buick Co.,
    515 A.2d 163 (Del. Super. Ct. 1986) .................................................. 27

Lennon v. S.C. Coastal Council,
    330 S.C. 414, 498 S.E.2d 906 (1998) ................................................... 29

Liimatta v. V&H Truck, Inc.,
    No. 03-5112, 2005 WL 2105497 (D. Minn. Aug. 30, 2005) ................................ 27

Lindsey v. Normet,
    405 U.S. 56 (1972) ..................................................................................... 30

Link v. Sch. Dist. of Pickens Cnty.,
    302 S.C. 1, 393 S.E.2d 176 (1990) ..................................................... 11

Lloyd v. Gen. Motors Corp.,
    575 F. Supp. 2d 714 (D. Md. 2008) ....................................................... 19

Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.,
    843 F. Supp. 1027 (D.S.C. 1993) .......................................................... 38

Palmetto Linent Serv. Inc. v. U.N.X., Inc.,
    205 F.3d 126 (4th Cir. 2000) .............................................................. 38

Patterson v. Orangeburg Fertilizer Co.,
    117 S.C. 140, 108 S.E. 401 (1921) ...................................................... 16

Pfizer v. Farsian,
    682 So. 2d 405 (Ala. 1996) ................................................................. 15

Philip Morris USA Inc. v. Scott,
    __ U.S. __, No. 10A273, 2010 WL 3724564 (Sept. 24, 2010) ............................. 30

Plum Creek Devo. Co. v. City of Conway,
    334 S.C. 30, 512 S.E.2d 106 (1999) ..................................................... 33

Prutch v. Ford Motor Co.,
    618 P.2d 657 (Colo. 1980) ................................................................. 17

RIM Assocs. v. Blackwell,
    359 S.C. 170, 597 S.E.2d 152 (Ct. App. 2004) ...................................... 33

S.E. Toyota Distrib., LLC v. Jim Hudson Superstore, Inc.,
    387 S.C. 508, 693 S.E.2d 33 (Ct. App. 2010) ........................................ 11

Sanchez v. Wal-Mart Stores, Inc.,
    No. 2:06-CV-02573, 2009 WL 1514435 (E.D. Cal. May 28, 2009) .................... 30

Sapp v. Ford Motor Co.,
    386 S.C. 143, 687 S.E.2d 47 (2009) ..................................................... 38

Seaside Resorts, Inc. v. Club Car, Inc.,
    308 S.C. 47, 416 S.E.2d 655 (Ct. App. 1992)........................................................ 18

Smith v. Swormstedt,
    57 U.S. 288 (1854)................................................................................................... 33

Southeastern Steel Co. v. W.A. Hunt Constr. Co.,
    301 S.C. 140, 390 S.E.2d 475 (Ct. App. 1990)..................................................... 19

Stearns v. Select Comfort Retail Corp.,
    No. 08-2764, 2009 WL 4723366 (N.D. Cal. Dec. 4, 2009)................................... 17

Szabo v. Bridgeport Mach., Inc.,
    249 F.3d 672 (7th Cir. 2001) ................................................................................. 17

T.J. Stevenson & Co. v. 81,193 Bags of Flour,
    629 F.2d 388 (5th Cir. 1980) ................................................................................. 19

Thomas v. Louisiana-Pacific Corp.,
    246 F.R.D. 505 (D.S.C. 2007) ............................................................................... 18

Thorn v. Jefferson-Pilot Life Ins. Co.,
    445 F.3d 311 (4th Cir. 2006) ........................................................................... 29, 37

Tilley v. Pacesetter Corp.,
    333 S.C. 33, 508 S.E.2d 16 (1998) ....................................................................... 11

Transport Corp. of Am. v. Int'l Bus. Mach. Corp.,
    30 F.3d 953 (8th Cir. 1994) ................................................................................... 27

Turner v. Rams Head Co.,
    No. 3:05-2893-CMC, 2007 WL 2579386 (D.S.C. Sept. 4, 2007) ......................... 40

United States v. S. Contracting of Charleston, Inc.,
    862 F. Supp. 107 (D.S.C. 1994)............................................................................ 19

Wade v. Tiffin Motorhomes, Inc.,
    686 F. Supp. 2d 174 (N.D.N.Y. 2009)................................................................... 39

Walker v. Sunrise Pontiac-GMC Truck, Inc.,
    249 S.W.3d 301 (Tenn. 2008)................................................................................ 35

Waller v. Seabrook Island Prop. Owners Ass'n,
    300 S.C. 465, 388 S.E.2d 799 (1990) ....................................................... 30, 31, 35

Weaver v. Chrysler Corp.,
    172 F.R.D. 96 (S.D.N.Y. 1997) ............................................................................ 15

Wilson v. Style Crest Prods.,
    367 S.C. 653, 627 S.E.2d 733 (2006) ........................................ 13, 14, 16

Yokoyama v. Midland Nat. Life Ins. Co.,
    594 F.3d 1087 (9th Cir. 2010) ............................................................. 12

Yost v. Gen. Motors Corp.,
    651 F. Supp. 656 (D.N.J. 1986) ........................................................... 15

**Statutes**

S.C. Code § 14-3-330................................................................................ 11

S.C. Code § 15-3-530........................................................................... 36, 39

S.C. Code § 36-2-313................................................................................ 36

S.C. Code § 36-2-314................................................................................ 28

S.C. Code § 36-2-315................................................................................ 28

S.C. Code § 36-2-316................................................................................ 20

S.C. Code § 36-2-318................................................................................ 26

S.C. Code § 36-2-607....................................................................... 16, 19, 22

S.C. Code § 36-2-714................................................................................ 25

Rule 23, SCRCP.......................................................................... 29, 30, 31, 35

Rule 11, SCRCP...................................................................................... 11

N. C. Comm. Code § 2-607(3).................................................................... 18

28 U.S.C. § 1332(d)(2) .............................................................................. 4

28 U.S.C. § 1332(d)(6) ............................................................................. 32

Fed. R. Civ. P. 23(b)(3)............................................................................ 31

**Other Authorities**

Black's Law Dictionary (9th ed. 2009)......................................................... 15

Jane Massey Draper,
    Annotation, Sufficiency and Timeliness of Buyer's Notice Under UCC §

2-607(3)(a) of Seller's Breach of Warranty,
89 A.L.R. 5th 319 (2001)..................................................................................... 17

James F. Flanagan, South Carolina Civil Procedure (2d ed. 1996) ......................... 30, 31

1 James J. White & Robert S. Summers,
Uniform Commercial Code (5th ed. 2006) ........................................................... 18

## Statement of Issues on Appeal

I.      Defendant GAF Materials Corporation ("GAF") makes roofing shingles. The Circuit Court granted summary judgment in favor of a class of South Carolina property owners, who have certain GAF Timberline shingles, on a theory of breach of implied warranties.

A.      South Carolina law provides that only persons who own products that have manifested defects may sue. Did the Circuit Court err by granting summary judgment in favor of a class of property owners whose shingles have not manifested a defect?

B.      The Commercial Code states that product sellers are entitled to pre-lawsuit notice of warranty claims so that they have an opportunity to cure. Did the Circuit Court err by granting summary judgment in favor of a class of property owners who did not provide notice, particularly where GAF honors its warranties without litigation?

C.      The Commercial Code permits product sellers to disclaim all implied warranties. GAF's written warranty contains a disclaimer of all implied warranties. Did the Circuit Court err by granting summary judgment in favor of a class of property owners when GAF has disclaimed all implied warranties?

II.      The Circuit Court granted summary judgment against GAF and in favor of named plaintiffs Jack and Ellen Brooks (the "Brookses"), who have GAF shingles on their home, on a theory of breach of implied warranty.

A.      The Commercial Code requires buyers to provide sellers an opportunity to cure any alleged breach of warranty. In this case, GAF provided a timely

offer to replace the Brookses' roof, at no cost to them. Did the Circuit Court err in holding that GAF nonetheless breached its implied warranties?

B.    The Commercial Code permits manufacturers to disclaim all implied warranties, and a disclaimer to an immediate purchaser is binding on all subsequent purchasers. In this case, GAF disclaimed all implied warranties to the immediate purchaser, the roofer. Did the Circuit Court err by holding that the disclaimer did not apply to the Brookses?

C.    The Circuit Court determined that an implied warranty was created by a statement made by an independent roofer. Did the Circuit Court err by imputing the roofer's statement to GAF and did it err in holding that this express statement was an implied warranty?

III.    The Circuit Court certified a class of South Carolina property owners.

A.    Before certifying a class, the Circuit Court was required to determine the utility of a class action as compared to individual actions. In this case, South Carolina property owners with defective shingles would obtain greater relief by submitting warranty claims to GAF rather than participating in the class action. Did the Circuit Court err in certifying a class?

B.    The Brookses base both their express and implied warranty claims on an oral representation, but provided no proof that similar representations were made to other members of the class. Did the Circuit Court err in granting class certification on the breach of warranty claims?

C.    GAF has defenses to the Brookses' tort claims based on the statute of limitations and the economic loss rule, and those defenses will apply differently to the

members of the class. Did the Circuit Court err in nonetheless granting class certification on the tort claims?

        D.     In South Carolina, there is no claim for unjust enrichment where the relationship between the parties is governed by a contract. In this case, putative class members may have a warranty contract claim. Did the Circuit Court err in granting class certification on the unjust enrichment claim?

### Statement of Case

The Brookses originally filed this lawsuit on April 17, 2006, in the Newberry County Court of Common Pleas. The essence of their claim was that their GAF shingles cracked a few years after installation. The Complaint asserted claims for negligence, negligent misrepresentation, fraud, breach of express and implied warranties, and unfair trade practices. (Compl. ¶¶ 18-48.)

The Brookses did not mail their Complaint to GAF's registered agent until April 26, 2006. (Notice of Filing Notice of Removal, Ex. A.) The agent received the Complaint on April 27, and GAF's legal department received it from the agent on May 1, 2006. (Id.)

During the course of discovery, the Brookses came to believe that shingles that GAF had manufactured in Mobile, Alabama, were particularly at risk of cracking. On November 19, 2007, nineteen months after filing suit, the Brookses amended their Complaint to assert a class action. (First Am. Compl. ¶ 21.) The Amended Complaint asserts the same causes of action as the original filing, but also adds a claim for unjust enrichment.

Following that amendment, GAF removed the case to federal court, based on provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). By promising to limit their claims to less than the jurisdictional minimum of $5 million, the Brookses obtained a remand of the action to the Circuit Court for Newberry County. (First Am. Compl. ¶ 29; Pls.' Mem. re: Amount in Controversy at 3, Brooks v. GAF Materials Corp., 532 F. Supp. 2d 779 (D.S.C. 2008) ("Plaintiff is the master of his pleadings and a Plaintiff may tailor these pleadings to avoid the exercise of Federal jurisdiction.").)

In the Circuit Court, the Brookses filed a motion for class certification on July 15, 2009. The Brookses argued that class certification was appropriate on the basis of a latent defect in all GAF Timberline shingles manufactured in Mobile, Alabama, such that the shingles would not last as long as represented.

On September 9, 2009, GAF filed a motion for summary judgment on all claims. GAF asserted that the warranty claims failed because GAF had in fact approved the Brookses' warranty claim and offered to provide all materials and pay for all labor to install a new roof. GAF also argued that the statute of limitations bars all claims asserted by the Brookses except breach of warranty, and that the economic loss rule bars all tort claims.

Shortly therefore, on September 16, 2009, the Brookses filed a motion for summary judgment on their implied warranty claim. The Brookses argued that GAF shingles are defective because they fail prematurely and because they do not comply with an industry standard known as ASTM D 3462-05.

On March 18, 2010, the Circuit Court granted the class certification motion on four of the seven causes of action: express and implied warranties, negligence, and unjust enrichment.[1] The Circuit Court determined that common issues predominate, and that GAF's defenses "do not mute the common strings found in each of the remaining causes." (Order [Mar. 2010] at 5-6.) This order was filed on March 30, 2010.

On September 20, 2010, the Circuit Court granted the Brookses' summary judgment motion, holding that, on behalf of the class, GAF was liable for breach of its

---

[1] The Brookses had originally also sought class certification on their fraud, negligent misrepresentation, and unfair trade practices claims. They voluntarily withdrew those claims from consideration before Judge Hayes issued his decision.

implied warranties. The Court rejected GAF's defense that it had offered to comply with the warranty, stating that GAF had "failed to show that it took any action to make Plaintiffs whole prior to the institution of this lawsuit," that GAF "failed to demonstrate that Plaintiffs rejected any effort on its part to comply with the applicable implied warranties," that GAF "did not offer to make Plaintiffs whole," and that GAF "may not unilaterally determine the value of a plaintiff's claim and then raise this valuation as a legal defense." (Order [Sept. 2010] at 2, 9-11.)

On October 4, 2010, GAF timely filed and served its Notice of Appeal.

### Statement of Facts

The Circuit Court's order granting summary judgment in favor of a class was based primarily on facts specific to the named plaintiffs, Jack and Ellen Brooks. The Brookses presented no evidence regarding how other class members purchased shingles, how other class members had their shingles installed, whether other class members have shingles with manifest cracking, whether other class members provided notice of a claim to GAF and, if they did, whether GAF refused to remedy any defect. For the Brookses, their story centers around a roofer, Thadd Mays.

Thadd Mays is an independent roofer based in Newberry. His company, called Mays Contracting, is recognized by GAF as a "master elite" roofer, a status that includes requirements that he has been in business for a specified time and that he maintains insurance. (Mays Dep. at 18.)

Following a severe hailstorm in 2000, Mays replaced a number of roofs in the Newberry area, including the one on the home of Jack and Ellen Brooks. (J. Brooks '07 Dep. at 7.) For the Brookses, Mays used Timberline 30 shingles. Jack Brooks testified that Mays told him that these were "thirty-year shingles." (J. Brooks '07 Dep. at 7.) The Brookses did not see any written materials from GAF regarding the shingles. (E. Brooks '07 Dep. at 8; J. Brooks '07 Dep. at 8-9.) The Brookses did not speak with any GAF employees. (E. Brooks '07 Dep. at 10.) Rather, they relied on Mays's status as a master elite roofer and his statement that "this is a 30-year roof." (J. Brooks '09 Dep. at 58.) But the Brookses did not know what "master elite roofer" meant, J. Brooks '09 Dep. at 59, and the reference to 30 years meant, to them, that the shingles would last 30 years.

Because the Brookses did not see any written materials from GAF, they did not

see the actual terms of GAF's warranty. Contrary to the Brookses' assumption, the "30" in "Timberline 30" refers to the length of the warranty period, not to a minimum lifetime of the shingles. Thus, if the shingles fail due to a manufacturing defect within the first five years, then GAF promises to pay "the full reasonable cost of labor to repair or recover the defective shingles ..., and will provide replacement shingles," but GAF "will not pay costs to tear off your shingles or dispose of them." (GAF0089.)  If the shingles fail due to a manufacturing defect after five years, but before thirty years, then GAF's contribution is reduced pro rata "to reflect the amount of use you have received from your shingles." (Id.)

The Brookses were also unaware that the warranty was "limited." This means that product users are limited to the remedies specified in the warranty, with no other remedies. The warranty was explicit.

> THIS WARRANTY IS EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. This written warranty is your exclusive warranty from GAF Materials Corporation and represents the SOLE REMEDY available to any owner of GAFMC's shingles. GAFMC makes NO OTHER REPRESENTATIONS OR WARRANTY of any kind other than that stated herein. GAFMC WILL NOT BE LIABLE IN ANY EVENT FOR CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES OF ANY KIND, including DAMAGES TO THE INTERIOR OR EXTERIOR OF ANY BUILDING, whether for breach of this warranty, negligence, strict liability in tort, or for any other cause.

(GAF0089.)  Had they seen the written warranty, the Brookses also would have known that the limited warranty could not be modified by Thadd Mays or anyone else.

> This Limited Warranty may not be changed or modified.  No one, including any representative or employee of GAFMC, has authority to assume any additional liability or responsibility for GAFMC in connection with your shingles except as described in this Warranty.

(GAF0089.)

In early 2003, Mays noticed that a number of homes that he had re-roofed in 2000 had developed cracked shingles. (Mays Dep. at 17.) Mays brought this to the attention of GAF who, in March 2003, sent three representatives to examine the roofs. (Id. at 46-47; GAF Mot. for Summ. J., Ex. 4.) The second home that they examined belonged to the Brookses. (Mays Dep. at 46-47.) Mays testified that he told Jack Brooks about the cracking "probably the same day" that he went onto the roof with the GAF employees, and perhaps even "before we ever went out [to the house]." (Id. at 78-79.) Mays testified that he told Jack Brooks about the cracking at the time of the GAF visit because he and Jack Brooks "were pretty tight" and they "used to play golf [together] three days a week." (Id. at 79.) Mays told Jack Brooks with respect to the roof, "don't worry," "we'll take care of it." (Id. at 78.) Mays then caulked the cracks as "it was a minor thing." (Id. at 78-79.)

Thadd Mays took it upon himself to submit warranty claims on behalf of his customers. He submitted them in order of severity: "whoever was screaming at the time." (Id. at 79.) GAF resolved all of these claims except for the Brookses' claim. (Id. at 84-85.)

In 2006, Mays submitted a warranty claim on behalf of the Brookses. (Id.) GAF received the warranty claim, including a copy of Mays's cost estimate, on Friday, March 17, 2006. (GAF0010.) GAF then opened a file on the matter on Tuesday, March 21. (Id.) On Thursday, March 23, GAF's Central Lab received samples from the Brookses' roof and completed its analysis. It concluded that the shingles were defective. (Id.)

In an undated "settlement worksheet," GAF calculated the warranty payment and decided to pay for a full re-roof of the Brookses' home. "The settlement for this claim

81779743.1

9

was not prorated and was negotiated with Thadd Mays, Mays Contracting as a measure of goodwill and includes all GAFMC materials and applicable labor rate." (GAF0007.)

On May 1, GAF's warranty services department sent a letter to Jack Brooks notifying him that the warranty claim had been approved, and that there was no reduction in the amount for use of the roof. (GAF0005.) The letter included a voucher for materials that can be obtained from any GAF distributor, plus a check for $6,630 to pay for labor and any other expenses. (Mays Dep. at 88.) According to Thadd Mays, this settlement "would have constituted a complete re-roof." (Mays Dep. at 89.)

In the meantime, on April 17, 2006, the Brookses filed suit. On April 27, GAF's agent for service of process received a copy of the Complaint. (Notice of Filing Notice of Removal, Ex. A.) And on May 1, GAF's law department received the Complaint. (Id.)

Jack Brooks recalls receiving the letter from GAF offering to replace the roof. (J. Brooks '07 Dep. at 15.) Brooks handed the letter to Mays (id.), telling Mays that he rejected the settlement because "it's been too long [and] I've put up with too much." (Mays Dep. at 92.) Brooks apparently believed, mistakenly, that the settlement was only "a percentage of a new roof." (J. Brooks '07 Dep. at 16.) Mays returned the check to GAF. (Mays Dep. at 93.)

**Standard of Review**

The Circuit Court's decision to grant partial summary judgment in favor of the class and the Brookses is immediately appealable as a matter of right. S.C. Code Ann. § 14-3-330(1); Charlotte-Mecklenburg Hosp. Auth. v. S.C. Dep't of Health & Envtl. Control, 387 S.C. 265, 266, 692 S.E.2d 894, 894 (2010). Summary judgment may be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Rule 56(c), SCRCP. All facts and inferences must be construed in the light most favorable to the non-movant. Grinnell Corp. v. Wood, __ S.C. __, 698 S.E.2d 796, 798 (2010). Because summary judgment is a legal determination, appellate review is *de novo*. Id.; S.E. Toyota Distrib., LLC v. Jim Hudson Superstore, Inc., 387 S.C. 508, 512, 693 S.E.2d 33, 35 (Ct. App. 2010).

In reviewing the order granting summary judgment, this Court may also review all other orders that "necessarily affect" the trial court's decision. S.C. Code Ann. § 14-3-330(1); Link v. Sch. Dist. of Pickens Cnty., 302 S.C. 1, 6, 393 S.E.2d 176, 179 (1990). In this case, because the Circuit Court granted summary judgment in favor of the class, the class certification decision is itself reviewable. See Ferguson v. Charleston Lincoln Mercury, Inc., 349 S.C. 558, 565-66, 564 S.E.2d 94, 98 (2002) (reviewing class certification decision together with appeal of summary judgment order); Tilley v. Pacesetter Corp., 333 S.C. 33, 42-43, 508 S.E.2d 16, 21 (1998) (same). Because the trial court has discretion in determining whether to certify a class, King v. Am. Gen. Fin., Inc., 386 S.C. 82, 88, 687 S.E.2d 321, 324 (2009), this Court generally reviews that decision for an abuse of discretion. BB&T v. Taylor, 369 S.C. 548, 551, 663 S.E.2d 501, 502-03 (2006). Nonetheless, if the Circuit Court erred on an issue of law while addressing class

81779743.1

11

certification, that legal issue is reviewed *de novo*. Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1090-93 (9th Cir. 2008); Andrews v. Chevy Chase Bank, 545 F.3d 570, 573 (7th Cir. 2008).

## Argument

### I.    The Circuit Court erred in granting summary judgment to a class of property owners on an implied warranty claim.

Relying on facts peculiar to the Brookses, the Circuit Court granted summary judgment in favor of a class of South Carolina property owners. But, as further described below, the Brookses did not—and could not—prove class-wide entitlement to summary judgment based on their own facts. First, in South Carolina only persons who own products that have actually demonstrated a defect have an injury cognizable in court. In this case, the class is defined as anyone with GAF Timberline shingles, not just those persons whose shingles have a manifest defect. Second, South Carolina requires product purchasers to provide a pre-lawsuit notice of their warranty claims, so that the seller has an opportunity to remedy the claim. In this case, the class consists entirely of property owners who did not provide that opportunity to GAF. And third, the Commercial Code permits GAF to disclaim implied warranties entirely. In this case, GAF disclaimed those warranties as to the class members. Therefore the class members cannot assert a claim for breach of implied warranties.

### A.    The Brookses cannot establish that all class members have defective shingles.

A core element of a breach of warranty claim is the presence of an actual injury. Wilson v. Style Crest Prods., 367 S.C. 653, 658, 627 S.E.2d 733, 736 (2006). Proof that a product has a manufacturing defect, but that the defect has not yet manifested, does not suffice. Id. This is because all manufacturing defects must, by definition, exist when the product leaves the manufacturer's hands, and thus before actual failure. If a latent defect could trigger a breach of warranty, then every product would be defective within the warranty period and any attempt by a manufacturer to impose a time limitation on its

81779743.1

repair obligations would be in vain. The Second Circuit cogently explained this point:

> [V]irtually all product failures discovered in [products] after expiration of a warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrable by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. **A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time … limitations in warranty coverage.**

Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986) (emphasis added). See also Laney v. Am. Standard Cos., No. 07-3991, 2010 WL 3810637, at *11 (D.N.J. Sept. 23, 2010) ("Generally, the implied warranty of merchantability does not guarantee that a product will never fail.").

The South Carolina Supreme Court recently reached this result in Wilson, 367 S.C. 653, 627 S.E.2d 733. That lawsuit was brought by mobile home owners who had purchased soil anchor systems to secure their homes in high winds. Plaintiffs alleged that the anchor system failed to meet applicable standards, and asserted express and implied warranty causes of action. Id. at 655-56, 627 S.E.2d at 735. The owners conceded that their homes had not suffered any damage, but claimed that they suffered a loss merely by having a product with a latent defective. Id. at 657, 627 S.E.2d at 735-36. The Supreme Court rejected this "no-injury approach to product litigation." It reasoned that, absent an actual manifestation of defect in the product itself, the products are merchantable and therefore there has been no breach of warranty. Id. at 658, 627 S.E.2d at 736.[2]

---

[2] The Court approvingly cited the following cases: Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999) (affirming dismissal of class action for failure to plead adequate manifestation of alleged defect, including a claim that risk of defect affected resale

In this case, the Circuit Court found that GAF shingles manifest damages in two ways: "The first is that the shingles visibly crack or split. The second type of manifestation or type of failure is that the shingles fail to perform to industry standards." (Order [Sept. 2010] at 3.) Although the Circuit Court is correct that cracking can be a manifestation of defect, it wrongly held that a failure to manufacture to standards is also a "manifest" defect. Rather, a failure to manufacture to standards is not discoverable by inspection and thus is the very definition of a latent, or hidden defect; not a manifest defect. Black's Law Dictionary 481 (9th ed. 2009). Thus, even the Brookses acknowledge that the alleged propensity of the shingles to crack "is a latent problem that is not obvious to a lay person on visual inspection," and not a manifest defect. (First Am. Compl. ¶ 13.)[3] Considering the precise same facts, the South Carolina Supreme Court in

---

value); Weaver v. Chrysler Corp., 172 F.R.D. 96, 99 (S.D.N.Y. 1997) ("[i]t is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own"); Yost v. General Motors Corp., 651 F. Supp. 656, 657-58 (D.N.J. 1986) (holding that complaint alleging design defect "likely to cause damage" failed to state a claim); and Jarman v. United Industries Corp., 98 F. Supp. 2d 757, 767-68 (S.D. Miss. 2000) (where product had not actually failed, court dismissed complaint because apparent plaintiff was not damaged). See also Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988, 993 (1st Cir. 1992) ("Case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects—defects that may exist before, but typically are not discovered until after the expiration of the warranty period."); Pfizer v. Farsian, 682 So. 2d 405, 407 (Ala. 1996) (holding that a plaintiff's belief that a product could fail in the future is not, without more, a legal injury sufficient to support plaintiff's claim).

[3] See also Pls.' Mem. in Supp. of Mot. for Class Cert. at 1 ("Discovery has established that the latent defect in Timberline shingles becomes apparent usually between 2 and 6 years after installation"); Id. at 17 ("All questions of law and fact revolve around the singular issue that GAF's Timberline shingles manufactured at the GAF plant in Mobile, Alabama contain a known latent defect"); Pls.' Reply Mem. in Supp. of Mot. for Class Cert. at 15 (describing common issue of "Defendant's continued sale of the product despite knowledge of latent defect"); Pls.' Mem. in Supp. of Mot. for Summ. J. at 2 ("The GAF documents produced in discovery reveal that there is a latent defect in GAF Timberline shingles which becomes apparent usually between two and six years after

Wilson upheld the dismissal of warranty claims as to products that had not been manufactured to standards, but had not actually failed. 367 S.C. at 658, 627 S.E.2d at 736.[4]

In a footnote, the Circuit Court attempted to distinguish Wilson, quoting its statement that "[t]here is no evidence that the anchor systems have not, to date, been exactly what the Homeowners bargained for." (Order [Sept. 2010] at 3 n.4.) But that is exactly the situation here. For those homeowners whose shingles have not cracked, they have received exactly what they bargained for. The fact that the Brookses' shingles have cracked cannot be used to bootstrap summary judgment in favor of a class of persons who have not suffered injury.

In this case, the certified class that received a grant of summary judgment is not limited to persons with cracking roof shingles. Instead, the class is defined to include *any* property owner who has Timberline shingles manufactured in Mobile, regardless of whether the shingles have cracked or not. (Order [Mar. 2010] at 9.) Because there is no evidence that any of these class members have valid claims, summary judgment could not be entered on their behalf.

**B.    The Brookses cannot establish that each class member provided notice and an opportunity to cure to GAF.**

South Carolina's Commercial Code requires buyers to provide notice of a breach of warranty claim. S.C. Code Ann. § 36-2-607(3)(a); Hitachi Elec. Devices (USA), Inc.

---

installation"); Id. at 12 ("The nature of the defect is admittedly latent and then progressive.").
[4] The Brookses did not cite to Wilson in their class certification or summary judgment briefing. Rather, relying on decisions from 1921 and 1916, the Brookses argued that they could maintain a claim based on latent defects. See Pls.' Reply Mem. in Supp. of Mot. for Class Cert. at 14 (quoting Patterson v. Orangeburg Fertilizer Co., 117 S.C. 140, 152, 108 S.E. 401, 405 (1921)); Pls.' Mem. in Supp. of Mot. for Summ. J. at 7 (quoting Greenwood Cotton Mill v. Tolbert, 105 S.C. 273, 89 S.E. 653 (1916)).

v. Platinum Techs., Inc., 366 S.C. 163, 168, 621 S.E.2d 38, 40-41 (2005). This is particularly important in cases like this one, where GAF honors warranty claims. Because the Brookses do not and cannot demonstrate that each class member provided notice to GAF, the Circuit Court erred in certifying the class. See Stearns v. Select Comfort Retail Corp., No. 08-2764, 2009 WL 4723366, at *15 (N.D. Cal. Dec. 4, 2009) (individual issues regarding the provision of notice predominate over common issues for breach of warranty claim); Szabo v. Bridgeport Mach., Inc., 249 F.3d 672, 674 (7th Cir. 2001) (noting that "few warranty cases ever have been certified as class actions").

In its class certification order, the Circuit Court did not address this hurdle. But in granting summary judgment, the Circuit Court explained its view as to why notice is not required. Its reasons, however, are either unsupported in the record or are errors of law.

Initially, the trial court referred to a secondary authority as "stating that many courts interpret [UCC § 2-607(3)(a)] to mean that a remote manufacturer is not entitled to notice." (Order [Sept. 2010] at 9 n.7.) In fact, citing only one decision, that article states "there seems to be some question as to the necessity of notice to a remote manufacturer if the injury is one to property." Jane Massey Draper, Annotation, Sufficiency and Timeliness of Buyer's Notice Under UCC § 2-607(3)(a) of Seller's Breach of Warranty, 89 A.L.R. 5th 319, § 2[b] (2001). Further, the sole decision cited by that article did not absolve the purchaser from providing any notice, but instead held that the purchaser fulfilled its obligation by providing notice to the immediate seller. Prutch v. Ford Motor Co., 618 P.2d 657, 661 (Colo. 1980). Thus, even if class members did not need to

directly notify GAF,[5] they were required to notify their immediate sellers who would then notify GAF. Seaside Resorts, Inc. v. Club Car, Inc., 308 S.C. 47, 59-60, 416 S.E.2d 655, 663-64 (Ct. App. 1992) (interpreting North Carolina's Commercial Code § 2-607(3)).[6]

The Circuit Court next referred to "an abundance of law to support the proposition that the law does not require a futile act." (Order [Sept. 2010] at 9 n.7.) But there was no evidence that providing notice to GAF would have been futile. Rather, GAF honors its warranties as evidenced by GAF's timely offer to the Brookses after receiving notice of their claim.

Finally, the Circuit Court stated that "many courts have held that when a manufacturer is already aware of defect, a buyer is not required to notify." (Id.) But the implication of this statement—that mere knowledge of a defect suffices without any affirmative notice by the specific buyer—is contrary to South Carolina law and is not supported by the cases that the Circuit Court relied upon.

The language of the Commercial Code unambiguously requires some action on

---

[5] "In more recent decisions, however, the courts indicate that a non-privity consumer buyer must timely notify a remote manufacturer of alleged defects, at least when the buyer seeks recovery under the Code for economic loss. We concur in this view. If the manufacturer is to be held responsible for the buyer's losses, it needs the protection of timely notice at least as much as the buyer's immediate seller." 1 James J. White & Robert S. Summers, Uniform Commercial Code § 11-10 (5th ed. 2006) (footnote citing cases omitted).

[6] In Thomas v. Louisiana-Pacific Corp., the court granted a motion for class certification over defendants' objection that the Commercial Code required each property owner to provide notice of defect. 246 F.R.D. 505, 512 (D.S.C. 2007). The court rejected this argument because the defendants had not sold the product directly to class members. Id. at 513. But the court failed to consider the argument advanced by GAF here, that even if class members are not required to notify GAF directly, they must still notify their direct seller who would notify GAF. This Court has accepted the position taken by GAF, while interpreting North Carolina law, in Seaside Resorts, 308 S.C. at 59-60, 416 S.E.2d at 663-64. Because the Thomas court recognized that North Carolina law "is almost identical" to South Carolina's with respect to notice, 246 F.R.D. at 511, it should have applied that principle as well.

the part of the particular buyer. It states that "the buyer must ... notify the seller of breach or be barred from any remedy." S.C. Code Ann. § 36-2-607(3)(a). Further, this Court has specifically rejected the proposition relied upon by the Circuit Court. In Southeastern Steel Co. v. W.A. Hunt Construction Co., 301 S.C. 140, 390 S.E.2d 475 (Ct. App. 1990), a customer argued that it was not required to give notice because the manufacturer already knew that its product was defective. Quoting a 1925 Judge Learned Hand opinion, this Court rejected the argument because the purpose of notice is to advise the seller regarding a potential claim, not to advise the seller of a defect.

> The plaintiff replies that the buyer is not required to give notice of what the seller already knows, but this confuses two quite different things. The notice "of the breach" required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning.

Id. at 147, 390 S.E.2d at 480 (quoting Am. Mfg. Co. v. U.S. Shipping Bd. E.F. Corp., 7 F.2d 565, 566 (2d Cir. 1925)). This distinction is "well established." T.J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 388, 360 n.47 (5th Cir. 1980). See also Drobnak v. Andersen Corp., 561 F.3d 778, 785 (8th Cir. 2009); Lloyd v. Gen. Motors Corp., 575 F. Supp. 2d 714, 723 (D. Md. 2008). The cases relied upon by the Circuit Court are not to the contrary, as in each case the manufacturer had an opportunity to fulfill its warranty obligations to the specific purchaser. See United States v. S. Contracting of Charleston, Inc., 862 F. Supp. 107, 111 (D.S.C. 1994) (buyer had notified seller that the product was not functioning properly); Arcor, Inc. v. Textron, Inc., 960 F.2d 710, 715 (7th Cir. 1992) (seller aware that buyer's machine did not conform to the requirements in buyer's purchase order).

Because GAF is statutorily entitled to an opportunity to resolve each purchaser's warranty claims short of a lawsuit, the Circuit Court should not have granted summary judgment to the class.

### C.    The Brookses failed to establish that each class member did not disclaim their cause of action.

As described above, GAF's warranty explicitly disclaims the implied warranties of merchantability and fitness for a particular purpose. This disclaimer says:

> THIS WARRANTY IS EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

(GAF0089.) This disclaimer is permitted by the Commercial Code. S.C. Code Ann. § 36-2-316(2).

As to the Brookses, the Circuit Court held that the disclaimers did not apply because they had not seen them before entering into the contract. (Order [Sept. 2010] at 8-9 [citing Gold Kist, Inc. v. Citizens & S. Nat'l Bank of S.C., 286 S.C. 272, 333 S.E.2d 67 (1985]). Even if this was a correct statement of law, which it is not, the Brookses did not and cannot establish this fact as to every other member of the certified class. For instance, some property owners may have purchased their own shingles and therefore saw disclaimers on the packaging; some property owners may have received a GAF brochure from the roofer noting the limitations on warranties; and some property owners may have investigated GAF shingles on the internet, and there learned of the warranty terms.

GAF possesses a defense as to each class member and it is entitled to discover and present evidence regarding each class member's awareness of the limitation of warranties before purchasing GAF shingles. A defense that requires individualized

evidence on a predominant issue defeats commonality. Gardner v. S.C. Dep't of Revenue, 353 S.C. 1, 22-23, 577 S.E.2d 190, 201 (2003) (holding that class certification was error where "a defense necessitates forming legal arguments around the individual facts of each case"); KMC Leasing, Inc. v. Rockwell-Standard Corp., 9 P.3d 683, 690 (Okla. 2000) (affirming denial of class certification where some class members may be subject to warranty disclaimers and some not). Therefore, the Court erred in granting summary judgment to the class.

## II.    The Circuit Court erred in granting summary judgment to the Brookses on their individual implied warranty claim.

For three independent reasons, the Circuit Court erred in granting summary judgment in favor of the Brookses. First, GAF did not breach the implied warranties because the Brookses failed to provide a reasonable opportunity to cure. Second, GAF properly disclaimed all implied warranties, therefore the Brookses could not proceed on that theory. And third, because the Circuit Court based its decision on an express statement rather than an implied warranty, the Circuit Court further erred by imputing to GAF the statement of an independent roofer, where the statement had not been made or authorized by GAF and where the roofer was not GAF's agent.

### A.    After giving notice of defect, the Brookses did not provide GAF a reasonable opportunity to cure.

Under the Commercial Code, the Brookses' claims are barred unless two requirement are first met: they (1) notified GAF of the defect, and (2) provided GAF a reasonable opportunity to remedy their claims. The Commercial Code defines the rights and remedies available for breach of warranty relating to the sale of goods, and entirely

displaces the common law.[7] <u>Hitachi</u>, 366 S.C. at 169-70, 621 S.E.2d at 41. The Code states:

> Where a tender has been accepted
>
> (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy ....

S.C. Code Ann. § 36-2-607(3). The purpose of this provision is to provide the seller an opportunity "to fulfill its remedial promise to repair, replace, or refund." <u>Hitachi</u>, 366 S.C. at 169, 621 S.E.2d at 40-41. <u>See also</u> <u>Aqualon Co. v. MAC Equip., Inc.</u>, 149 F.3d 262, 269-70 (4th Cir. 1998) (noting that the UCC's notice requirement has four purposes: to let the seller cure non-conformance, to give the seller a fair chance to investigate and prepare for litigation, to open a negotiation process, and to protect the seller from stale claims).

In this case, Thadd Mays submitted the Brookses' warranty claim in mid-March 2006. Within weeks, GAF approved the claim in full and sent a check and product voucher that, together, would have paid for "a complete re-roof." (Mays Dep. at 89.) Because GAF fully complied with the warranty, there can be no breach of warranty. The Circuit Court, however, rejected GAF's argument.[8]

Respectfully, each reason provided by the Circuit Court is mistaken as a matter of

---

[7] GAF requested summary judgment on the Brookses' common-law warranty claims. The Circuit Court denied this request, stating that it "need not address the common law implied warranty claims at this time as this opinion only concerns the statutory implied warranty claims." (Order [Sept. 2010] at 8 n.6.)

[8] As an initial matter, the Circuit Court wrongly characterizes GAF's argument. The Court stated that it "considered [GAF's] assertion that the Plaintiffs failed to provide notice of defect as contemplated by section 2-607," and then rejected the argument because the Brookses in fact submitted a claim to GAF. (Order [Sept. 2010] at 9.) But GAF did *not* argue that the Brookses failed to give notice. Instead, GAF argued that the Brookses failed to give GAF a reasonable opportunity to cure, as required by the Commercial Code, and that the Brookses refused GAF's attempt to cure.

fact or law. At a minimum, GAF should have been afforded the benefit of the disputed facts at this, the summary judgment stage, where the facts and all inferences are construed in the light most favorable to the non-movant, GAF. Grinnell Corp., __ S.C. __, 698 S.E.2d at 798 ("all reasonable inferences must be viewed in the light most favorable to the non-moving party").

First, the Circuit Court incorrectly concluded, as a matter of law, that "Defendant did not offer to make Plaintiffs whole." (Order [Sept. 2010] at 2.) The record contradicts this finding. According to GAF's approval form: "The settlement for this claim was not prorated ... and includes all GAFMC materials and applicable labor rate." (GAF0007.) And likewise, Thadd Mays testified that GAF's offer provided a complete re-roof:

> Q:    Between the roofing – between the cash check for $6,630 and the voucher there, would that have constituted a complete re-roof?
>
> A:    Yes.

(Mays Dep. at 89.) While Mays went on to testify that he was not sure, but that GAF may have reduced the payment because "the customers had enjoyed some use of this material," Mays Dep. at 89, in fact GAF did not apply any proration in its offer to the Brookses. (GAF0007.) GAF should be given the opportunity to demonstrate to the trier of fact that it complied with the terms of the warranty.

Second, the Circuit Court's opinion challenges the timeliness of GAF's offer, stating that GAF failed to take "any action to make Plaintiffs whole prior to the institution of this lawsuit." (Order [Sept. 2010] at 11.) That finding also is contradicted by the record. While the Brookses filed their Complaint on April 17, they did not mail it until April 26, and GAF's legal department did not receive it until May 1. (Notice of Filing Notice of Removal, Ex. A.) Before learning of the lawsuit, GAF had received the

warranty claim, analyzed the samples from the Brookses' roof, and approved the claim. (GAF0010.) Coincidentally, GAF's warranty department mailed its full approval to the Brookses on the same day that GAF's legal department received a copy of the Brookses' Complaint. (GAF0005.) Again, any dispute of fact should have been resolved in the non-movant GAF's favor.

The Circuit Court also rejected GAF's argument by "find[ing] that Plaintiffs did not reject Defendant's attempt to comply with the applicable warranty." (Order [Sept. 2010] at 2, 11.) This too is directly contradicted by the record. Thadd Mays testified to a conversation he had with Jack Brooks regarding GAF's check and voucher:

> Q:    And Mr. Brooks obviously did not accept the offer?
>
> A:    He did not accept the offer.

(Mays Dep. at 92.) This testimony was undisputed. And even if it was disputed, the dispute itself would preclude entry of summary judgment.

Next, in finding that GAF failed to honor its warranty, the Circuit Court ruled that "[a] defendant may not unilaterally determine the value of a plaintiff's claim and then raise this valuation as a legal defense." (Order [Sept. 2010] at 9-10.) This reasoning rejects GAF's valuation merely because GAF did the calculation. The Circuit Court erred because whether GAF offered to comply fully with the warranty is an objective comparison between the offer and the customer's rights; that GAF did the calculation makes no difference. In this case, because GAF's warranty obligation concerned a "remedial promise to repair, replace or refund," see Hitachi, 366 S.C. at 169, 621 S.E.2d at 41, GAF's offer to replace the roof is measured by whether it complied with its promise. Here, GAF offered to fully comply with its promise. The Circuit Court therefore erred by not permitting the trier of fact to determine that GAF offered to pay for

a complete re-roof.[9]

Finally, the Circuit Court erred in holding that the Brookses had no obligation to give notice, implying that they need not wait for GAF to respond to the notice they actually provided. (Order [Sept. 2010] at 9 n.7.) As described above, South Carolina imposes an obligation upon buyers to give notice to their immediate sellers. In this case, the seller, Thadd Mays, learned of the cracking, went onto the Brookses' roof, and repaired the damage. (Mays Dep. at 78-79.) When the Brookses reinstituted their complaint, Mays submitted a warranty claim to GAF. (Id. at 79, 84-85.) Contrary to the Circuit Court's conclusion, this act was not futile. In fact, GAF offered a complete re-roof to the Brookses.

### B.    GAF properly disclaimed all implied warranties.

GAF does not guarantee that its shingles will never fail. Instead, in the event that a manufacturing defect occurs, GAF promises to pay "the cost of repairing or recovering your shingles," subject to a specified reduction to reflect the buyer's prior use of the shingles. (GAF 0089.) GAF makes clear that this promise is the full extent of its obligation, and that the implied warranties of merchantability and fitness for a particular purpose do not apply.

> THIS WARRANTY IS EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. This written warranty is your exclusive warranty from GAF Materials Corporation and represents the SOLE REMEDY available to any owner of GAFMC's shingles. GAFMC makes NO OTHER REPRESENTATIONS OR WARRANTY of any kind other than that stated herein. GAFMC WILL NOT BE LIABLE

---

[9] The Commercial Code also permits recovery for incidental and consequential damages in a proper case. S.C. Code Ann. § 36-2-714(3). When GAF made its offer in 2006, the Brookses had not suffered any interior water damage resulting from cracked shingles. (E. Brooks '09 Dep. at 1; J. Brooks '09 Dep. at 7.)

81779743.1

25

> IN ANY EVENT FOR CONSEQUENTIAL, INDIRECT OR
> INCIDENTAL DAMAGES OF ANY KIND, including DAMAGES TO
> THE INTERIOR OR EXTERIOR OF ANY BUILDING, whether for
> breach of this warranty, negligence, strict liability in tort, or for any other
> cause.

(GAF0089.)

As to the Brookses, the Circuit Court held that the disclaimer did not apply because the Brookses had not seen it before entering into the contract. (Order [Sept. 2010] at 8-9 [citing Gold Kist, 286 S.C. 272, 333 S.E.2d 67].) This was error. As the Circuit Court noted, GAF was not in privity with the Brookses. (Order [Sept. 2010] at 9 n.7 [describing GAF as a "remote" manufacturer].) While the Commercial Code permits persons who are not in privity to bring warranty actions, S.C. Code Ann. § 36-2-318, such persons are nonetheless bound by warranty disclaimers between the parties who are in privity. A third party beneficiary to a warranty is thus subject to a disclaimer even though the third party did not see the disclaimer: "To the extent that the contract of sale contains provisions under which warranties are excluded or modified, or remedies for breach are limited, such provisions are equally operative against beneficiaries of warranties under this section." S.C. Code Ann. § 36-2-318, cmt. 1. Disclaimers apply to persons who are not part of the original contract of sale because "otherwise, a seller would be virtually incapable of disclaiming any implied warranties as to all foreseeable users." Buettner v. R.W. Martin & Sons, Inc., 47 F.3d 116, 119 (4th Cir. 1995).

The Fourth Circuit's decision in Buettner exemplifies this point. In that case, a seller disclaimed all warranties when it sold a machine "as is." When the buyer's employee was later injured by the machine, she sued the seller asserting a breach of implied warranties, urging that the disclaimer did not apply to her because she had not seen the disclaimer or agreed to it. Id. The Fourth Circuit rejected this argument because

81779743.1

26

the UCC does not provide remote users with greater rights than direct purchasers: if direct purchasers have no claim, neither do remote purchasers. Id.; see also Transp. Corp. of Am. v. Int'l Bus. Mach. Corp., 30 F.3d 953, 958-59 (8th Cir. 1994) (holding that "disclaimers of implied warranties are extended to third party purchasers by operation of" UCC § 2-318); Liimatta v. V&H Truck, Inc., No. 03-5112, 2005 WL 2105497, at *6-7 (D. Minn. Aug. 30, 2005) (same); Lecates v. Hertrich Pontiac Buick Co., 515 A.2d 163, 166-67 (Del. Super. Ct. 1986) (holding that "a secondary purchaser who claims the protection of a warranty is subject to the same disclaimers, modifications or remedy limitation clauses that were the basis of the underlying sales agreement between the original purchaser and seller"); Gen. Motors Corp. v. Halco Instruments, Inc., 185 S.E.2d 619, 622 (Ga. Ct. App. 1971) (stating that transferee "could receive no higher or greater rights than were held by the party to whom it was originally issued"). In sum, the Circuit Court erred as matter of law by granting summary judgment on an implied warranty claim where GAF had, as permitted by the Commercial Code, disclaimed all implied warranties.

### C.    The Brookses failed to show a representation by GAF that the product will last for a stated period.

The Circuit Court premised its grant of summary judgment on the opinion that "a product purchased to be placed on a roof for a stated period, which is manufactured in a manner that it will not last for that period, breaches the implied warranties of merchantability and fitness for a particular purpose." (Order [Sept. 2010] at 3-4.) This decision improperly conflated an express warranty with an implied warranty.

The Brookses' thirty-year claim is based on an oral representation by Thadd Mays, J. Brooks '07 Dep. at 9, and thus is an *express* warranty. The Brookses themselves

made this point to the Circuit Court: "This statement (i.e., Timberline 30, indicating that the product would last thirty years) is an express warranty of duration." (Pls.' Reply Mem. in Supp. of Mot. to Certify Class at 12.) A warranty that a product will last "a stated period," as described by the Circuit Court, requires an expression of duration. By contrast, an implied warranty is one imposed as a matter of law, without any expression of any kind. S.C. Code Ann. §§ 36-2-314, 36-2-315.

Because the Circuit Court wrongly concluded that a failure to satisfy an express period is a breach of an implied warranty, it circumvented an important requirement of an express warranty claim: the existence of a representation by GAF. In its Order, the Circuit Court did not identify any representation by GAF guaranteeing that the Brookses' shingles would last a specified time. The Circuit Court noted that the Brookses purchased "Timberline 30" shingles, and inferred that the shingles were meant to last 30 years. (Order [Sept. 2010] at 3.) But the "30" referred to the length of the warranty offered by GAF, not to a guarantee of useful life. (Ferraro Dep. at 40.)[10] At a minimum, there was a material issue of fact as to the meaning of the representation, which precludes summary judgment.

Importantly, the Brookses were not aware that GAF's product was called "Timberline 30." Because the Brookses rely on a statement by Thadd Mays, a roofer with an independent company, the Brookses must establish that Mays had actual or apparent authority to make the representation on behalf of GAF—and therefore was

---

[10] The Brookses are likely to cite deposition testimony from GAF employees that they would expect a Timberline 30 shingle to last 30 years. That testimony is not inconsistent with this fact. And to the extent that it is inconsistent, on a motion for summary judgment all inferences are to be given in favor of the non-movant, GAF. Ferguson, 349 S.C. at 562-63, 564 S.E.2d at 96.

GAF's agent—in order to impute the statement to GAF. Graves v. Serbin Farms, Inc., 306 S.C. 60, 63, 409 S.E.2d 769, 771 (1991); Cowburn v. Leventis, 366 S.C. 20, 39-40, 619 S.E.2d 437, 448 (Ct. App. 2005). But the record is devoid of any evidence in support of this agency theory. Baughman v. Am. Tel. & Tel. Co., 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991) ("[t]he party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine issue of material fact"). Therefore, the Circuit Court erred in attributing the representation to GAF, and GAF should not be held to it.

### III.    The Circuit Court erred in granting class certification.

As a general rule, plaintiffs may only sue as to matters in which they have a "personal stake." Lennon v. S.C. Coastal Council, 330 S.C. 414, 416, 498 S.E.2d 906, 906-07 (1998). A notable exception, however, is for a class action. Rule 23, SCRCP; Gen. Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982). "Chief among the justifications for this device is its efficiency," because a class action has claim preclusive effects and it can save the time and resources of both the courts and the parties. Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 318 (4th Cir. 2006); see also Hosp. Mgmt. Assocs., Inc. v. Shell Oil Co., 356 S.C. 644, 659, 591 S.E.2d 611, 619 (2004) (noting the "significant interests in efficiency and finality" in class action litigation).

But the rights of the parties cannot be sacrificed to efficiency. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (citing Advisory Committee note explaining that Federal Rule 23 permits "a class action [that] would achieve economies of time ... without sacrificing procedural fairness"). To protect absent class members, due process requires—among other elements—that the named class representatives be able to adequately represent the class. Hosp. Mgmt., 356 S.C. at 654, 591 S.E.2d at 616. This due process requirement is determined through the guideposts of "commonality" and

81779743.1

"typicality" as well as the competency of the named representatives themselves. <u>Gen.</u>
<u>Tel. Co.</u>, 457 U.S. at 157 n.13. For defendants, due process requires that they be able to
assert "every available defense." <u>Lindsey v. Normet</u>, 405 U.S. 56, 66 (1972); <u>Sanchez v.</u>
<u>Wal-Mart Stores, Inc.</u>, No. 2:06-CV-02573, 2009 WL 1514435, at *4 (E.D. Cal. May 28,
2009); <u>see also</u> <u>Philip Morris USA Inc. v. Scott</u>, __ U.S. __, No. 10A273, 2010 WL
3724564, at *1-2 (Sept. 24, 2010) (Scalia, J.) (granting stay of class action judgment and
predicting that the Supreme Court will grant a petition for certiorari to determine whether
defendants were improperly denied the defense to a fraud claim of showing non-
reliance).

Rule 23 establishes five prerequisites for class certification. Plaintiffs have the
burden of proving:

(1)  the class is so numerous that joinder of all members is impracticable,

(2)  there are questions of law or fact common to the class,

(3)  the claims or defenses of the represented parties are typical of the claims or
      defenses of the class,

(4)  the representative parties will fairly and adequately protect the interests of the
      class, and

(5)  in cases in which the relief primarily sought is not injunctive or declaratory
      with respect to the class as a whole, the amount in controversy exceeds one
      hundred dollars for each member of the class.

Rule 23(a), SCRCP; <u>Gardner</u>, 353 S.C. at 20-21, 577 S.E.2d at 200; <u>Waller v. Seabrook</u>
<u>Island Prop. Owners Ass'n</u>, 300 S.C. 465, 467, 388 S.E.2d 799, 801 (1990). A failure to
satisfy any one of the prerequisites is fatal to class certification. <u>Gardner</u>, 353 S.C. at 21,
577 S.E.2d at 200; <u>Waller</u>, 300 S.C. at 467, 388 S.E.2d at 801. In addition, "the court
must determine the utility of a class action as compared with individual actions." James
F. Flanagan, <u>South Carolina Civil Procedure</u> at 183 (2d ed. 1996). This is similar to the

requirement in the Federal Rules that a class action for money damages be "superior" to other available remedies. Id.; Fed. R. Civ. P. 23(b)(3).

As to each of these requirements, "[i]t is imperative the court apply a rigorous analysis." Waller, 300 S.C. at 467, 388 S.E.2d at 801; see also Gen. Tel. Co., 457 U.S. at 161. This requires the court to examine the elements of the legal claim and then consider whether those elements can be proved through common evidence. For example, in Gardner, plaintiffs argued that their tax returns were improperly garnished because the claimants had not followed mandatory statutory procedures. 353 S.C. at 11-14, 388 S.E.2d at 195-97. While agreeing that the notices were improper, the Supreme Court noted that each plaintiff would have to establish prejudice from the claimant's failure. Id. at 14, 388 S.E.2d at 197. And because proof of prejudice is an individualized inquiry that cannot be determined from common proof, the Court held that the class could not be certified. Id. at 22-23, 388 S.E.2d at 201.

For multiple reasons, the Circuit Court erred in granting class certification in this case. As noted above, the implied warranty claim cannot be proved on a class-wide basis due to individualized issues of manifest defect, notice to GAF, and disclaimers of implied warranties. In addition, as noted below, a class action has less utility than individual warranty claims; and the particular claims of breach of express and implied warranty, negligence, and unjust enrichment cannot be proven through common evidence.

### A.    The Brookses failed to establish the utility of a class action.

Rather than providing value to the class, the Brookses' lawsuit will actually disadvantage those customers whose shingles have manifested a defect. This perverse result follows from three undisputed facts: (1) GAF honors it warranties; (2) the maximum class recovery is $5 million; and (3) the value of a warranty claim exceeds the

value of the class recovery.

First, GAF honors its warranties. The facts before the Circuit Court demonstrated that GAF fulfilled its warranty obligations to every other home owner that presented a claim arising out of cracking shingles. (Mays Dep. at 84-85.) The Brookses did not present any evidence that GAF would not similarly honor its warranties as to other homeowners.

Second, the class claims are limited to $5 million. The First Amended Complaint specifically states that "the amount in controversy for the entire proposed Class does not exceed Five Million Dollars." (First Am. Compl. ¶ 29.) After the Brookses amended their Complaint to assert a class action, GAF removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"). Among its provisions, CAFA creates federal court jurisdiction if the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(6). The Brookses opposed removal by arguing that they would not seek more than $5 million. Based on that representation, the District Court granted the Brookses' motion to remand to state court, but also specifically limited the amount that the class could recover:

> Furthermore, with respect to all claims, the Plaintiffs are barred from recovering a total amount of damages, including actual damages, punitive damages, treble damages, and statutory attorney's fees, exceeding five million dollars ($5,000,000), exclusive of interest and costs for the putative class action ....

Brooks v. GAF Materials Corp., 532 F. Supp. 2d 779, 783 (D.S.C. 2008).[11]

This limitation is important because, as a result of claim preclusion, class

---

[11] The District Court also stated that it "agrees with the admonition in Jones v. Allstate Ins. Co., 258 F. Supp. 2d 424, 427 n.2 (D.S.C. 2003) that 'a subsequent increase in the amount sought by plaintiffs would not be a good career move for plaintiffs' attorneys considering their anticipated future dealing with this court and would probably be barred by judicial estoppel.'" Brooks, 532 F. Supp. 2d at 782.

members will not be able to recover any sums in addition to their share of the $5 million. The doctrine of claim preclusion states that persons who bring suit are forever barred from relitigating issues that were actually raised or that might have been raised. Plum Creek Devo. Co. v. City of Conway, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) (res judicata bars both issues that were actually adjudicated as well as any issues that might have been raised); In re Theisen, 382 S.C. 213, 220, 676 S.E.2d 133, 137 (2009) (citing Plum Creek for proposition that "res judicata bars subsequent actions by same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties"); RIM Assocs. v. Blackwell, 359 S.C. 170, 184, 597 S.E.2d 152, 160 (Ct. App. 2004) (res judicata bars claims arising out of the same transaction). Applying this standard, litigating the class claim for breach of implied warranties will preclude all future claims that arise from the same alleged manufacturing defect, including any express warranty claim.

Absent class members will be bound in the same manner as the Brookses. More than 100 years ago, in a class action, the South Carolina Supreme Court held that the doctrine of res judicata applies to absent class members "the same as if all were before the court." Faber v. Faber, 76 S.C. 156, 162, 56 S.E. 677, 679 (1907) (quoting Smith v. Swormstedt, 57 U.S. 288, 303 (1854)). That is the modern rule as well. See Adams v. S. Farm Bureau Life Ins. Co., 493 F.3d 1276, 1285-86 (11th Cir. 2007) (if the class notice comports with due process, res judicata bars later claims by class members).

Third, because the class is limited to $5 million in recovery, class members will receive less as a result of this lawsuit than they would receive by submitting valid warranty claims directly to GAF. In its Order, the Circuit Court noted that, "in the

Newberrry area alone between 1500 and 2000 potentially affected roofs were installed during the pertinent period." (Order [Mar. 2010] at 4.) Statewide, the Brookses asserted that the class consists of 6100 properties. (Pls.' Mem. in Supp. of Class Cert. at 13.) Even assuming that the class recovers the maximum amount possible, and assuming 6000 properties, the average recovery per property owner would be about $834. This recovery would be further reduced by attorney costs and fees which, if equal to one-third of the recovery, would reduce the average recovery to just $556. This amount is dramatically less than the value that GAF provides under its warranty. For example, GAF offered the Brookses $6,630.00 for labor, and a voucher that would cover the cost of materials. (GAF0005.) Where, as here, injured class members will obtain more by submitting their claims directly to GAF than they would obtain through the lawsuit, class certification should have been denied.

### B.    The Circuit Court erred in granting class certification on the express and implied warranty claims.

The Circuit Court also erred in certifying class claims for breach of express and implied warranties. In this case, the Brookses premise both their express and implied warranty claims upon an oral representation by Thadd Mays, an independent roofer. (J. Brooks '09 Dep. at 58.) Because the particular representation—that the shingles would last 30 years—is not a warranty that GAF provided in writing, the Brookses would need to establish that an identical representation was made to each class member by each roofer. This would require individualized determination of the exact representations made by the roofers, as well as individualized determinations of whether the roofers were "agents" of GAF such that they could bind the company.

Where a claim is based on express representations, and the representations may

vary from class member to class member—as is the nature of oral representations—then class certification is not appropriate. See, e.g., Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 190 (3d Cir. 2001) ("[i]t has become well-settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action"); Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008) (same). In this circumstance, the Brookses' claims are not common to the class. See Brunson v. Louisiana-Pacific Corp., 266 F.R.D. 112, 119 (D.S.C. 2010) (while noting that "claims based on disparate representations can destroy commonality ... for breach of an express warranty," the court found commonality because the written warranties were substantially the same).

Even if the Brookses argue that the class's express warranty claims are based on GAF's representation that the Mobile shingles conform with ASTM D 3462-05, the Brookses do not meet the typicality requirement of Rule 23. For the Brookses to maintain their claim on behalf of the class, they must show—among other requirements—that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3), SCRCP. The failure to satisfy this prerequisite "is fatal to class certification." Waller, 300 S.C. at 467, 388 S.E.2d at 801. This "typicality requirement goes to the heart of a representative parties' ability to represent a class." Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). To be typical, proof of the Brookses' claims must advance the claims of the class as well. Id. at 466-67.

That is not the case with respect to the ASTM warranty. To assert an express warranty claim, the Brookses must initially identify a representation of fact that

"becomes part of the basis of the bargain." S.C. Code Ann. § 36-2-313(1)(a), (b). Courts dispute whether "basis of the bargain" requires strict reliance on a representation. See Cole v. Gen. Motors Corp., 484 F.3d 717, 726 (5th Cir. 2007) (describing state law variations); Campus Sweater & Sportswear Co. v. M. B. Kahn Constr. Co., 515 F. Supp. 64, 96-97 (D.S.C. 1979) (noting the open issue in South Carolina). But even if it does not require strict reliance, the Brookses cannot show that the ASTM standard was part of the basis of their bargain because the Brookses never saw the packaging, and thus were entirely unaware of the ASTM warranty. (E. Brooks '07 Dep. at 8; J. Brooks '07 Dep. at 8-9.)

### C.     The Circuit Court erred in granting class certification on the negligence claim.

In addition to granting class certification on the Brookses' express and implied warranty claims, the Circuit Court also granted class certification on the Brookses' negligence claim. As described below, GAF's statute of limitations and economic loss rule defenses preclude class certification.

#### 1.     The statute of limitations precludes class certification and summary judgment in favor of the class.

In its order granting summary judgment in favor of the class on the implied warranty claim, the Circuit Court also denied GAF's motion for summary judgment on the statute of limitations with respect to the Brookses' negligence claims. (Order [Sept. 2010] at 10.) For that claim, the statute of limitations is three years. S.C. Code Ann. § 15-3-530(5). The Circuit Court found that "there is a genuine issue of material fact as to defendant's statute of limitations argument." (Id.)

The Circuit Court failed to recognize, however, that this fact dispute precluded class certification. The "essence of the typicality requirement is captured by the notion

81779743.1

that 'as goes the claim of the named plaintiff, so go the claims of the class.'" Deiter, 436

F.3d at 466 (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331,

340 (4th Cir. 1998)). Thus, if a jury determined that the Brookses' claims are barred by

the statute of limitations, then judgment must also be entered in favor of GAF on the

class claims. Accordingly, courts hold that individualized issues with respect to the

statute of limitations preclude class certification. Thorn v. Jefferson-Pilot Life Ins. Co.,

445 F.3d 311, 321-22 (4th Cir. 2006) (affirming denial of class certification where the

statute of limitations raised individualized issues); Broussard, 155 F.3d at 342 (reversing

class certification where, among other issues, the showing necessary to toll the statute of

limitations was not typical of the class.).

     In this case, GAF may prevail on its limitations defense for reasons wholly unique

to the Brookses. As described above, in March 2003—more than three years before the

Brookses filed suit—Thadd Mays went onto the Brookses' roof along with GAF

representatives. (Mays Dep. at 46-47; GAF Mot. for Summ., J. Ex. 4.) Mays testified

that he probably told Jack Brooks about the cracking on that same day, and perhaps told

Jack Brooks even before then. (Mays Dep. at 78-79.) Jack Brooks agrees that he learned

of the cracking from Mays, but he "assumes" that the conversation occurred in late 2005

or early 2006. He is not sure as to the timing.

> Q:    When did you first notice that the shingles were cracking?
>
> A:    When Mr. Mays came and told me.
>
> Q:    Okay. And when did Mr. Mays come and tell you that?
>
> A:    I think – and I'm not sure on times. But I'm assuming around 2006 – maybe the beginning of 2006. Or maybe the end of 2005. I'm just not sure.

(J. Brooks '07 Dep. at 10.) Based on this record, a jury may reasonably find that the

Brookses' claims are time barred, and by doing so the jury would also be finding against the class. Because the class claims should not rise or fall based on a defense unique to the Brookses, the Brookses are not and cannot be typical class representatives.

### 2. The economic loss doctrine precludes class certification and summary judgment in favor of the class.

In its motion for summary judgment, GAF also argued that the Brookses' negligence claim was barred by the economic loss doctrine. That doctrine simply stands for the proposition that a party cannot transform an alleged breach of contract into a tort. Kennedy v. Columbia Lumber & Mfg. Co., 299 S.C. 335, 345, 384 S.E.2d 730, 736 (1989). An important limitation of this rule, however, is that it does not apply in circumstances where an allegedly defective product has injured persons or "other property." Id. at 341, 384 S.E.2d at 734.

In this case, after summary judgment briefing but before the hearing, the Brookses submitted a new affidavit stating that they had incurred interior water damage as a result of the cracked roof shingles. The Brookses then argued that this water intrusion constituted damage to other property, and therefore the economic loss doctrine does not apply. The Circuit Court agreed: "It is unnecessary to delve into any extensive analysis of the economic loss doctrine because our Supreme Court has made it clear that the rule does not apply where other property damage is proven."[12] (Order [Sept. 2010] at 10-11.)

---

[12] GAF disagrees with the Circuit Court. "Other property" is determined by the type of damage that the parties could reasonably foresee at the time of contracting in the event of product failure. Palmetto Linent Serv. Inc. v. U.N.X., Inc., 205 F.3d 126, 130 (4th Cir. 2000) (economic loss rule barred claim for damages to linens caused by defective laundry pump); Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1060 (D.S.C. 1993) (economic loss rule barred damage claims to real property arising from a defective air eliminator); Sapp v. Ford Motor Co., 386 S.C. 143, 149 n.4, 687 S.E.2d 47, 50 n.4 (2009) (approving Palmetto and Myrtle Beach). Because interior water damage is foreseeable as a matter of law in the event that a roof fails, Edward's of Byrnes Downs v.

While the Brookses may have escaped application of the economic loss rule, that doctrine still bars the claims of those class members who have not suffered other property damage.    Because this analysis requires separate proof for each class member, the Brookses cannot demonstrate commonality.    See Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68, 74-75 (E.D.N.C. 2008) (individual issues, including the economic loss doctrine, prevented class certification).

### D.    The unjust enrichment claim could not be certified due to the lack of commonality.

Finally, the Brookses' unjust enrichment claim cannot be certified because it too is not susceptible to common proof.    First, the unjust enrichment claim is also subject to the three-year statute of limitations.    S.C. Code. Ann. § 15-3-530(5).    Additionally, the unjust enrichment claim is available only to those who do not have contract claims, and that too requires individualized determinations.

In South Carolina, "there can be no claim for unjust enrichment … where the relationship is governed by an express contract."    Flagstar Bank, FSB v. First Citizens

---

Charleston Sheet Metal Co., 253 S.C. 537, 543, 172 S.E.2d 120, 122-23 (S.C. 1970) (holding that water damage caused by failure to install roof timely was foreseeable), the economic loss doctrine fully bars the Brookses' tort claims.    Further, even if water intrusion constitutes damage to "other property," the economic loss doctrine would still bar tort claims for damages to the roof shingles themselves.    Wade v. Tiffin Motorhomes, Inc., 686 F. Supp. 2d 174, 189-90 (N.D.N.Y. 2009) (where faulty propane system destroyed recreational vehicle, plaintiffs could assert tort claims for the loss of the vehicle's contents, but only contract claims for the loss of the vehicle itself); Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC, No. 1:03CV949, 2005 WL 1610653, at *16-17 & n.16 (M.D.N.C. July 8, 2005) (where defective gearbox caused helicopter to crash, plaintiff could assert tort claims for the loss of the helicopter without including the gearbox, and only contract claims for the destruction of the gearbox).    Finally, even if the economic loss doctrine did not bar the tort claims, those claims would still fail due to the Brookses' failure to repair the roof, and thereby mitigate their damages, from the time they brought suit in 2006 until the water damage occurred in 2010.    See Hutson v. Cummins Carolinas, Inc., 280 S.C. 552, 560, 314 S.E.2d 19, 24 (Ct. App. 1984) (truck owner failed to mitigate damages by having the truck repaired).

Bank & Trust Co., No. 3:09-876-CMC, 2009 WL 1707941, at *6 (D.S.C. June 17, 2009) (dismissing unjust enrichment claim based on the existence of an express contract); Turner v. Rams Head Co., No. 3:05-2893-CMC, 2007 WL 2579386, at *7 (D.S.C. Sept. 4, 2007) (stating that "an action for unjust enrichment cannot lie in the face of an express contract" and granting summary judgment to defendant). Thus, to determine if a class member has an unjust enrichment claim, the Circuit Court would have to inquire individually whether the class member has a contractual warranty claim. If so, then the warranty would provide the remedy rather than a claim for unjust enrichment.

## Conclusion

The Circuit Court committed multiple errors that require reversal in this class action. It erred in granting summary judgment in favor of the named plaintiffs even though GAF offered a complete re-roof. It also erred by certifying, and then granting summary judgment to, a class of property owners who have not suffered any injury, who have not submitted warranty claims to GAF, and as to whom GAF disclaimed all implied warranties.

COLLINS & LACY, P.C.

By: _____

GRAY T. CULBREATH
1330 Lady Street, Sixth Floor (29201)
Post Office Box 12487
Columbia, South Carolina 29211
(803) 256-2660
(803) 771-4484 (f)

*And*

(*pro hac vice* admission pending)
Joel A. Mintzer, Esquire
ROBINS KAPLAN MILLER &
    CIRESI, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402

**ATTORNEYS FOR DEFENDANT GAF
MATERIALS CORPORATION**

Columbia, South Carolina
November 3, 2010

81779743.1

41

THE STATE OF SOUTH CAROLINA
IN THE COURT OF APPEALS
No. 2010174207

Appeal From Newberry County
Court of Common Pleas

J. Mark Hayes, II, Circuit Court Judge
Civil Action No. 2006-CP-36-00129

RECEIVED

NOV 0 3 2010

SC Court of Appeals

Jack Brooks and Ellen Brooks, on behalf of themselves and others similarly situated, ...............................................……......Respondents,

v.

GAF Materials Corporation.............................…......Appellant

## PROOF OF SERVICE

I certify that I have served the Initial Brief of Appellant to be included in the record on appeal on Respondents Jack Brooks and Ellen Brooks by U.S. Postal Service, with sufficient postage affixed and appropriate return address, on November 3, 2010, to their attorneys of record, Thomas H. Pope, III, Esquire, Post Office Box 190, Newberry, South Carolina 29108 and Gibson A. Solomons, III, Esquire and Daniel A. Speights, Esquire, Post Office Box 685, Hampton, South Carolina 29924.

**[Signature Page to Follow]**

COLLINS & LACY, P.C.


Gray T. Culbreath
Post Office Box 12487
Columbia, SC 29211
Telephone: (803) 256-2660
Facsimile: (803) 771-4484
Attorneys for Appellant GAF Materials
Corporation


Columbia, South Carolina
November **3**, 2010