# EXHIBIT N

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF NEWBERRY ) | FOR THE EIGHTH JUDICIAL CIRCUIT |
| ) | |
| Jack Brooks and Ellen Brooks, ) | Civil Action No.: 2006-cp-36-129 |
| ) | |
| Plaintiffs, ) | |
| ) | **OPPOSITION OF DEFENDANT GAF** |
| vs. ) | **MATERIALS CORPORATION TO** |
| ) | **PLAINTIFFS' MOTION TO AMEND** |
| GAF Materials Corporation, ) | **COMPLAINT** |
| ) | |
| Defendant. ) | |

## INTRODUCTION

In a cynical game of jurisdictional manipulation, Plaintiffs now seek to amend their Complaint in a manner that they know will cause GAF to remove this case—for the third time—to federal court. Each time before, Plaintiffs specifically pleaded that they seek only limited damages, thereby ensuring that the amount-in-controversy requirement for federal jurisdiction was not met. Despite those purposeful choices, Plaintiffs now seek to amend their Complaint in a manner so that federal courts will now have jurisdiction.

The timing of Plaintiffs' motion could not be more suspect. GAF timely appealed this Court's earlier summary judgment and class certification decisions, and the Court of Appeals denied Plaintiffs' motion to dismiss that appeal. Plaintiffs apparently believe that a fresh start in federal court provides them better odds than responding to GAF's arguments in the appellate court. Nothing else can explain their behavior. Plaintiffs admit knowing for over 20 months (and in fact have known for more than three years) that they could sue for greater damages. Because Plaintiffs could have brought this very same motion after the conclusion of the appeal without any additional prejudice, their decision to file at this time can be explained only by a desire to avoid appellate review.

Various rules prevent this manipulative conduct. First, the appellate rules hold that the Circuit Court lacks jurisdiction over issues that are pending before the Court of Appeals. That is the situation here. Plaintiffs' damages limitation was part of the operative Complaint when the Court granted class certification, and GAF's appeal of that class certification decision is pending in the Court of Appeals. Indeed, GAF's opening brief specifically argues that a class action is not desirable under the facts of this case, as truly injured home owners would obtain greater relief under their express written warranties than by sharing $5 million pro-rata (and reduced by attorneys fees).

Second, the doctrines of judicial estoppel and waiver also apply. As described below, the federal court specifically warned Plaintiffs that any future attempt to amend their Complaint in this manner would be barred by judicial estoppel. And even if those doctrines did not apply, the proposed Second Amended Complaint is infirm for other reasons that also compel the denial of Plaintiffs' motion.

**FACTS**

In November 2007, Plaintiffs amended their Complaint to assert for the first time claims on behalf of a class. In addition to asserting class claims, the First Amended Complaint also affirmatively limited the amount of damages sought: "The amount in controversy for the entire proposed Class does not exceed Five Million Dollars." (First Am. Compl. ¶ 29.)

Plaintiffs included this limitation even though they knew that they had a sufficient basis to believe that class damages could exceed $5 million. According to the First Amended Complaint, the class included "hundreds of homes" in South Carolina, meaning at least 200 such homes. (First Am. Compl. ¶ 15.) Plaintiffs also pleaded that, as damages, they sought "replacement" of the roofs. (Id. ¶ 43.) Though not specified in the First Amended Complaint,

Plaintiffs knew at the time of filing that the cost of replacing their own roof exceeded $10,000. (GAF Ex. 1.) Thus, just from the face of the First Amended Complaint, potential damages would exceed $2 million (200 homes multiplied by $10,000 per home). Because the First Amended Complaint further sought treble damages, at least $6 million was at issue. (First Am. Compl., Prayer ¶ D.) The First Amended Complaint additionally alleged that each class member might seek up to $74,999 in damages. (Id. ¶ E.) If so, then the total damages for 200 homeowners would approach $15 million. See Chavis v. Fid. Warranty Servs., Inc., 415 F. Supp. 2d 620, 627 (D.S.C. 2006) (determining amount in controversy by multiplying the number of class members by the asserted individual recovery); Lanier v. Norfolk S. Corp., No. 1:05-3476, 2006 WL 1878984, at *2 (D.S.C. July 6, 2006) (same).

Plaintiffs nonetheless limited their damages for a specific procedural purpose: to avoid removal of the lawsuit to federal court. The Class Action Fairness Act ("CAFA") permits defendants to remove class actions to federal court if the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2).

Anticipating that Plaintiffs might later seek greater damages, and then argue that GAF could not remove because it should have removed the case earlier, GAF removed the case to federal court in December 2007. In its papers to the federal court, GAF explained how, under South Carolina law, Plaintiffs might seek greater damages than pleaded in the Complaint. (GAF Ex. 2 at 7.) GAF also explained how, under the First Amended Complaint as pleaded, Plaintiffs knew that their damages would exceed $5 million. (Id. at 12-15.)

Plaintiffs never denied knowing that their true damages might exceed $5 million. (But they did argue that GAF failed to prove it.) Rather, Plaintiffs argued that they are "the master of

[their] pleadings," that they may "tailor those pleadings to avoid the exercise of Federal jurisdiction," and that the federal court must accept Plaintiffs' decision. (GAF Ex. 3 at 3.)

Relying on Plaintiffs' decision to forego greater damages, the federal court remanded the lawsuit. But in doing so, the federal court explicitly prohibited Plaintiffs from engaging in the very conduct that they are now shamelessly pursuing:

> Furthermore, with respect to all claims, the Plaintiffs are barred from recovering a total amount of damages, including actual damages, punitive damages, treble damages, and statutory attorney's fees, exceeding five million dollars ($5,000,000), exclusive of interest or costs for the putative class action.

Brooks v. GAF Materials Corp., 532 F. Supp. 2d 779, 783 (D.S.C. 2008).[1]

Following remand, the parties engaged in discovery. By July 2008, GAF had produced information in discovery which alerted Plaintiffs to the number of potential class members. Specifically, on March 3, 2008, Plaintiffs served an interrogatory asking GAF to identify "all known South Carolina consumers of Timberline shingles in the last ten years." (Pls.' Ex. A at 1.) GAF answered on July 15, 2008, by providing a list of shipments to shingle distributors in South Carolina. (Pls.' Ex. B.) Among other details, the list included the number of squares of shingles provided to each distributor. (Id.) This list identified about 131,000 squares of shingles.[2] (Id.)

This information bolstered Plaintiffs' knowledge that class damages could exceed $5 million. For example, the Brookses' home required 51 squares of shingles to re-roof, with an

---

[1] The federal court further admonished Plaintiffs that "a subsequent increase in the amount sought by plaintiffs would not be a good career move for plaintiffs' attorneys considering their anticipated future dealing with the court and would probably be barred by judicial estoppel." Brooks, 532 F. Supp. 2d at 782 (quoting Jones v. Allstate Ins. Co., 258 F. Supp. 2d 424, 427 n.2 (D.S.C. 2003)).

[2] Plaintiffs state that this document "reflected no quantities." (Pls.' Mem. at 3.) In fact, the third column is labeled "Qty." (Pls.' Ex. B at 1.)

attendant cost of $10,891 for materials and labor.[3] (GAF Ex. 1.) Assuming damages of $10,000 for every 50 squares of shingles, class damages for 130,000 squares would be $26 million.[4]

In their pending motion to amend, Plaintiffs acknowledge receiving this information in July 2008, but assert that the document "did not specify the unit designation." (Pls' 12/6/10 Mtn. at 2.) Note the careful wording. Plaintiffs *do not* claim that they were unaware of the unit designation, but simply that the document did not contain it. In fact, Plaintiffs *were* aware of the unit designation. In a June 2007 deposition, a witness described how shipments to distributors, and to roofing contractors, are in squares. (GAF Ex. 4 [Hull Dep.] at 21:21-22:23; 26:6-27:14.)

Plaintiffs then admit that in March 2009, GAF produced additional documents that specified the quantities, and that by July 10, 2009, they had all the information needed to amend their Complaint to assert damages greater than $5 million. Seeking to blame GAF for their own failure to amend their Complaint, Plaintiffs assert that "GAF has offered no explanation of why it waited so long after the January 31, 2008 remand to inform plaintiffs of the potential size of the class." (Pls.' 3/14/11 Mem. at 4.) In fact, Plaintiffs served discovery seeking data on shipments into South Carolina in March 2008 (Pls.' Ex. A), and GAF provided the data just a few months later. Plaintiffs have offered absolutely no explanation of why they waited over two years to amend their Complaint.

Despite having the necessary knowledge in July 2008, with even more detailed knowledge by July 10, 2009, Plaintiffs chose not to move to amend their Complaint. Rather, on July 15, 2009, Plaintiffs chose to move for class certification. Plaintiffs' decision to move for class certification on the Complaint as limited, rather than moving to amend the Complaint, was

---

[3] Plaintiffs rejected GAF's May 2006 offer of a complete re-roof, with a value of $10,891. Plaintiffs assert that they alone determine the value of their claims, and they seek an even greater amount from GAF.
[4] That same document discloses that over 10,000 squares were shipped to Fulmer Building Supply in Newberry, the place where Plaintiffs' shingles were purchased.

based on their recognition that an amendment would cause GAF to remove the case to federal court once again.

In March 2010, this Court granted Plaintiffs' motion for class certification. One hurdle to class certification arises from GAF's history of resolving warranty claims without resort to litigation. As GAF has explained, its warranty process provides better relief to any purchasers who experience actual property damage than would a class action where the total amount of damages is limited to $5 million. This is because claim preclusion would bar homeowners from seeking more from GAF than their pro rata distribution of the class recovery. See Plum Creek Dev. Co. v. City of Conway, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) (res judicata bars both issues that were actually adjudicated as well as any issues that might have been raised); Faber v. Faber, 76 S.C. 156, 162, 56 S.E. 677, 679 (1907) (holding that res judicata applies to absent class members "the same as if all were before the court").

After this Court granted summary judgment in September 2010, GAF timely appealed both the summary judgment decision and the intertwined class certification decision. In its initial appellate brief, filed on November 3, 2010, GAF urged the relevance of the $5 million limitation on class certification issues. (GAF Ex. 5 at 31-34.)

On November 29, 2010, just four days before their own initial brief was due, Plaintiffs filed a motion to dismiss the appeal. The Court of Appeals denied that motion. It held that the summary judgment decision was immediately appealable because it finally determined "some substantive matter forming the whole or part of some cause of action or defense." (GAF Ex. 6 at 1-2, citing Mid-State Distribs., Inc. v. Century Importers, Inc., 310 S.C. 330, 334, 426 S.E.2d 777, 780 (1993)). As to the class certification decision, the Court of Appeals determined that

consideration of the class certification issue "rests with the panel ultimately deciding the appeal." (Id. at 2.)

One week after moving to dismiss the appeal—on December 6, 2010—Plaintiffs filed their current motion to amend their Complaint. Specifically, Plaintiffs seek to eliminate paragraph 29 of the First Amended Complaint, which disclaims damages that exceed $5 million. (Pls.' 12/6/10 Mtn. at 2.) The motion also states that the amendment would "reorganize the Complaint to reflect that certain causes of action are individual causes of action and certain causes of action are class causes of action. (Id.)

Following several requests by GAF, Plaintiffs served their draft Second Amended Complaint on February 28, 2011. The new draft indeed deletes the earlier paragraph 29 and renumbers the rest of the allegations. But the new draft does not reorganize the Complaint. Thus, the proposed Complaint alleges a class that differs from that certified by the Court, and it also seeks class certification of a cause of action that Plaintiffs previously withdrew from class consideration, namely their claim regarding unfair trade practices.

## ARGUMENT

Plaintiffs' motion to amend the Complaint should be denied. Foremost, the motion cannot be considered at this time because the Court of Appeals currently has exclusive jurisdiction over the issue raised by the proposed amendment. GAF filed a petition for writ of prohibition with the Court of Appeals to determine the jurisdictional issue on an expedited basis. Plaintiffs opposed, arguing that this Court should determine in the first instance whether there is jurisdiction, with that decision subject to later appellate review. The Court of Appeals denied GAF's petition, stating that a writ of prohibition is not appropriate, but the Court of Appeals did not decide whether this Court has jurisdiction to decide the motion to amend. (GAF Ex. 7.)

Even if this Court has jurisdiction to decide the motion to amend, Plaintiffs' motion should be denied under the doctrines of judicial estoppel and waiver. It should additionally be rejected because, as drafted, the proposed Second Amended Complaint fails to conform to this Court's earlier class certification decision.

### I.   This Court lacks jurisdiction to grant Plaintiffs' motion.

The effect of an appeal on Circuit Court proceedings is governed by Rule 205, SCACR. That Rule states that the Court of Appeals has exclusive jurisdiction over matters affected by the appeal:

> Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal .... Nothing in these Rules shall prohibit the lower court, commission or tribunal from proceeding with matters not affected by the appeal.

Rule 205, SCACR. Similarly, Rule 241 states that a notice of appeal automatically stays all "matters decided in the order," but that the Circuit Court retains jurisdiction "over matters not stayed by the appeal." Rule 241(a), SCACR.[5] See also Grosshuesch v. Cramer, 377 S.C. 12, 31 n.7, 659 S.E.2d 112, 122 n.7 (2008) (reiterating "that while an appeal is pending, a lower court cannot act on matters affecting the issue on appeal"). Whether an issue affects a matter on appeal must be decided on an issue-by-issue basis. Arnal v. Fraser, 371 S.C. 512, 519, 641 S.E.2d 419, 423 (2007).

In this case, Plaintiffs' motion to amend directly affects an issue on appeal. Rule 23 establishes five prerequisites for class certification, including numerosity, commonality, typicality, and adequacy of representation. Rule 23, SCRCP. In addition, "the court must determine the utility of a class action as compared with individual actions." James F. Flanagan, South Carolina Civil Procedure at 183 (2d ed. 1996). This is similar to the requirement in the

---

[5] This Rule was previously numbered Rule 225, SCACR.

82063648.1                                         8

Federal Rules that a class action for money damages be "superior" to other available remedies. Id.; Fed. R. Civ. P. 23(b)(3).

In its appeal, GAF specifically argues that class treatment is not appropriate because, among other reasons, class damages have been limited to $5 million. This limitation is significant because there is no allegation (or evidence) that GAF does not honor its warranties, and the value of warranty relief—if the class has been injured—is greater than what could be recovered under the Complaint as pleaded. Should the motion to amend be granted, then the issue that GAF has already briefed to the Court of Appeals would be obviated.

Plaintiffs' desire to amend the Complaint while the appeal is pending—even though they admit knowing of the basis for their amendment since at least July 2009—seems specifically directed to avoiding the issue. Plaintiffs are attempting to change the arguments that are before the Court of Appeals by changing the relevant record. This conduct undermines orderly judicial administration as it creates a quicksand of ever-changing facts and issues before the Court of Appeals. This is precisely what Rules 205 and 241(a) preclude.

In similar circumstances, the Supreme Court has held that the Circuit Court lacked jurisdiction. In Arnal, the family court entered a divorce decree addressing multiple issues, including child visitation. The child's father appealed restrictions on his visitation rights (among other issues). While that appeal was pending, the family court sanctioned the father for other misconduct by further restricting the father's visitation. The Supreme Court held that the family court lacked jurisdiction to further restrict visitation because that affected the issue on appeal. It explained: "Although conditions of visitation and the grant of additional summer and holiday visitation may not appear to be the same matter being addressed on appeal, the decisions both of the Court of Appeals and of this Court in the first appeal were impacted by the suspension of

82063648.1                                  9

overnight visitation in deciding whether to award Father additional summer and Easter visitation." Arnal, 371 S.C. at 521 n.6, 641 S.E.2d at 423 n.6. Likewise here, Plaintiffs' proposed amendment will impact the issues that GAF has already briefed as part of its appeal.

Plaintiffs argue that their motion is simply conforming the pleadings to the evidence. (Pls' 3/14/11 Mem. at 5.) But Rule 15(b), SCRCP, applies only to issues tried with the "express or implied consent" of GAF. GAF has not consented, and does not consent now, to an expansion of damages in this case. Moreover, a motion to conform pleading to evidence can be brought "at any time, even after judgment." Rule 15(b), SCRCP. Plaintiffs present no valid reason why the motion must be brought now, while the issues are currently on appeal.

Plaintiffs may also argue that the Court retains jurisdiction because its summary judgment decision reserved the issue of damages. But Plaintiffs misstate the issue reserved by this Court. In its summary judgment order, the Court stated that it "will not attempt to address the amount of damages for the class or the representatives at this time." (9/20/10 Order at 6.) This comment was explaining the Court's decision to grant partial summary judgment on just liability; it did not reserve the right to alter the maximum recovery available to the class.

### II.   Plaintiffs' motion to amend must be denied.

#### A.   Plaintiffs are judicially estopped from claiming more than $5 million in damages.

Plaintiffs adamantly declared that they were not seeking more than $5 million in damages. They did this both in their November 2007 First Amended Complaint and in argument to Judge Herlong at the United States District Court for the District of South Carolina. Although GAF was concerned that Plaintiffs would not be bound by their self-imposed cap on damages, Judge Herlong noted that Plaintiffs "would probably be barred [from increasing their damage claims] by judicial estoppel." Brooks, 532 F. Supp. 2d at 782 (citing Jones v. Allstate Ins. Co.,

258 F. Supp. 2d 424, 427 n.2 (D.S.C. 2003)). Judge Herlong went further and ordered that "with respect to all claims, the Plaintiffs are barred from recovering a total amount of damages, including actual damages, punitive damages, treble damages, and statutory attorney's fees, exceeding five million dollars ($5,000,000), exclusive of interest and costs for the putative class action." Id. at 783.

Judge Herlong was correct: Plaintiffs are barred by judicial estoppel. Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. Whitten v. Fred's, Inc., 601 F.3d 231, 241 (4th Cir. 2010). This doctrine prevents parties from playing fast and loose with the courts and protects the essential integrity of the judicial process. Id.

Judicial estoppel applies if five elements are met: "(1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent." Cothran v. Brown, 357 S.C. 210, 215-16, 592 S.E.2d 629, 632 (2004). All five elements are satisfied in this case.

First, the inconsistent positions were taken by the same party. The Plaintiffs who filed the motion to remand now seek to amend their Complaint.

Second, Plaintiffs took their inconsistent positions in the same proceedings. Plaintiffs made representations to Judge Herlong upon removal of this very case, and are now making contrary representations to this Court.

Third, Plaintiffs were successful in their position and they obtained a benefit. The central issue in Plaintiffs' motion to remand was the amount in controversy. Plaintiffs claimed that GAF's removal was improper because Plaintiffs had **"tailored"** their Complaint to remain in state court. Judge Herlong found that Plaintiffs could choose to limit the damages alleged in their Complaint in order to avoid removal to federal court. Brooks, 532 F. Supp. 2d at 782. Judge Herlong relied on Plaintiffs' assertions, specifically basing its remand order on Plaintiffs' limitation of the amount in controversy.

Fourth, the inconsistency was an intentional effort to mislead Judge Herlong. At the time of removal, Plaintiffs did not limit their damages because they lacked information; rather Plaintiffs limited their damages because they affirmatively sought to avoid federal jurisdiction. At the time Plaintiffs filed their First Amended Complaint, they knew that there were at least "hundreds of homes" at issue, that the class sought roof replacement at an average value of $10,000, and that they sought treble and punitive damages, along with attorneys' fees. (First Am. Compl. ¶¶ 15, 43 & Prayer ¶¶ C, D, F.) Accordingly, at least $6 million was at issue, more than the $5 million CAFA jurisdictional amount-in-controversy requirement. Yet, Plaintiffs chose to avoid federal jurisdiction by "resort[ing] to the expedient of suing for less than the jurisdictional amount, and though [they] would be entitled to more, the defendant [could not] remove." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938). This was a calculated litigation decision such that changing positions at this time "is surely characterized as bad faith." De Aguilar v. Boeing Co., 47 F.3d 1404, 1410 (5th Cir. 2005). After three years in their chosen jurisdiction, Plaintiffs now seek the benefit of both worlds: litigation in state court and also damages of more than $5 million. This is the very unfair advantage judicial estoppel was designed to prevent.

And fifth, Plaintiffs' new damages claim is inconsistent with their previous stance in the litigation. In Plaintiffs' own words, they "tailored the pleadings, specifically stating that the amount in controversy did not exceed five million dollars." (GAF Ex. 3 at 5.) Now, three years later, Plaintiffs are alleging damages in excess of $5 million. This factual position is inconsistent with their prior stance.

In similar circumstances, other courts have applied judicial estoppel. One example is Tinkham v. Jenny Craig, Inc., 699 N.E.2d 1255 (Mass. App. Ct. 1998). The Tinkham plaintiffs had originally filed their lawsuit in Massachusetts state court. When defendant removed the matter to federal court, asserting that damages exceeded $50,000—which was the threshold for diversity of citizenship jurisdiction at that time—plaintiffs stipulated that their demands were below $50,000 and moved to remand. The federal court ordered remand, stating that plaintiffs were "bound by [that] stipulation in the state court." Id. at 1256. Plaintiffs then filed a second lawsuit (arising out of the same facts) in state court, and defendants again removed to federal court. The federal court remanded the second case as well, holding that plaintiffs were bound by their damages stipulation in the first case. Id. at 1257. On that second go-around, the federal court specifically told plaintiffs that they "were bound by the doctrine of judicial estoppel to keep their claims below $50,000," and that sanctions might be appropriate "if the forum shopping doesn't stop." Id. at n.4. After remand, the state trial court enforced the judicial estoppel, which plaintiffs later appealed. The appellate court found no error. "[P]laintiffs had, in effect made a bargain with the federal court not to seek greater than $50,000 per plaintiff in state court on their state law claims." Id. at 1260. The court also noted no error in the determination that plaintiffs had misled the federal court as to the full extent of their damages, and that they "were and still are 'playing fast and loose' with the jurisdiction of the court." Id.

Likewise here, Plaintiffs specifically stipulated that their class claims would not exceed $5 million in order to avoid federal court jurisdiction. The federal court relied on that stipulation and warned Plaintiffs that judicial estoppel would prevent them from seeking greater damages in this Court. And now, after three years of litigation and during the pendency of an appeal, Plaintiffs seek to amend their Complaint in a manner that will allow GAF to remove the case to federal court once again.

While Rule 15 states that leave to amend "shall be freely given," it can only be freely given "when justice so requires." Rule 15(a), SCRCP. That circumstance is not present here. Justice is not served because the effect of the amendment will be the removal of this case to federal court. As a result, the Court of Appeals will not be able to address the issues currently before it; and the federal court will reconsider both class certification and summary judgment. The efforts of this Court since 2006 will be largely repeated by the federal court.

### B.     Plaintiffs waived their right to amend.

Plaintiffs also waived the right to assert damages greater than $5 million. "A waiver is a voluntary and intentional abandonment or relinquishment of a known right. Waiver requires a party to have known of a right and known that right was being abandoned." Sanford v. S.C. State Ethics Comm'n, 385 S.C. 483, 496-97, 685 S.E.2d 600, 607 (2009) (citations omitted). Here, as described above, Plaintiffs knew they had a right to recover more than $5 million before they filed their First Amended Complaint. Plaintiffs intentionally abandoned that right to secure remand. (First Am. Compl. ¶ 29; Brooks, 532 F. Supp. 2d at 782.) Having made that choice, Plaintiffs cannot now change their minds.

### C. Plaintiffs' proposed Second Amended Complaint does not conform to this Court's previous orders.

In a class action, the status of the pleadings is important. For example, a "court does not have the power to certify a class in a class action unless a complaint identifying the class to be certified is properly filed." Bishopp v. Dryvit Sys., Inc., No. CA2006-05-063, 2007 Ohio App. LEXIS 816, at *12 (Ohio Ct. App. Mar. 5, 2007). In this case, Plaintiffs' proposed Second Amended Complaint suffers from two defects.

First, the proposed Complaint misidentifies the class. In its March 2010 class certification decision, the Court defined the class in this case:

> The class is defined as all South Carolina property owners whose property have GAF Timberline shingles manufactured in GAF's Mobile, Alabama plant during the years 1999-2007.

Within this definition are several key terms. Initially, the class is limited to "property owners." It does not include persons who purchased GAF shingles for resale, nor does it include renters. Next, the class is limited to "property [that] have" the shingles, meaning that the GAF shingles have been installed. This phrase again excludes persons who may have purchased but not used the shingles. And finally, the class is limited to a particular time period, "1999-2007." Thus it does not include earlier or later property owners.

Contrary to this Court's determination, the proposed Second Amended Complaint defines a much broader class:

> The Class consists of all consumers in South Carolina who have purchased and/or used GAF shingles manufactured at the Defendant's Mobile, Alabama plant.

(Second Am. Compl. ¶ 21.) Plaintiffs' proposed amendment lacks the key terms required by this Court. Its class definition includes "consumers" and not just property owners; it includes purchasers and users even if the product was not installed; and it entirely lacks any limiting time period.

The proposed Complaint's second error is that it asserts an unfair trade practice claim on behalf of the class. Following class certification briefing in 2009, Plaintiffs voluntarily withdrew from class consideration their causes of action for violation of the South Carolina Unfair Trade Practices Act (as well as for fraud and negligent misrepresentation). Nonetheless, Plaintiffs' proposed Complaint seeks certification of the trade practices claim. (Second Am. Compl. ¶ 69 & Prayer ¶ A.) Because Plaintiffs voluntarily chose to forego that class claim, that decision must also be reflected in their Second Amended Complaint.

## CONCLUSION

For the above-stated reasons, Plaintiffs' motion to amend the Complaint must be denied.

Respectfully submitted,

COLLINS & LACY, P.C.

By: *[signature]*

GRAY T. CULBREATH
1330 Lady Street, Sixth Floor (29201)
Post Office Box 12487
Columbia, South Carolina 29211
(803) 256-2660
(803) 771-4484 (f)

*and*

JOEL A. MINTZER (MN 11427)
Robins, Kaplan, Miller & Ciresi, L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500
(612) 339-4181

ATTORNEYS FOR DEFENDANT GAF MATERIALS CORPORATION

Columbia, South Carolina
March 18, 2011