**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Jack Brooks, on behalf of himself and others similarly situated; and Ellen Brooks, on behalf of herself and others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>GAF Materials Corporation, )<br><br>Defendant. ) | Civil Action No.: 8:11-cv-00983-JMC<br><br>**ORDER AND OPINION** |

Plaintiffs Jack Brooks and Ellen Brooks ("Plaintiffs") bring this putative class action against Defendant GAF Materials Corporation ("GAF") asserting claims for negligence, negligent representation, breach of warranty, breach of implied warranties, fraud, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), and unjust enrichment arising from GAF's sale of allegedly defective roofing shingles. Currently before the court is GAF's Motion for Summary Judgment and to Decertify the Class [Doc. 38]. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

GAF manufactures roofing materials, including roofing shingles marketed under the Timberline® brand name. Plaintiffs are residents of Newberry, South Carolina. In August 2000, contractor Thadd Mays ("Mays") replaced Plaintiffs' roof using Timberline shingles. Plaintiff asserts that, at the time of installation, Mays indicated that the shingles installed on Plaintiffs' roof were "thirty-year" shingles. GAF asserts that the shingles installed on Plaintiffs' roof were covered by a thirty-year limited warranty which provided that, in the event of a manufacturing

1

defect, GAF would furnish new shingles and pay the "full reasonable cost of labor to repair or recover the defective shingles" for the first five years after original installation.  Thereafter, GAF would contribute to the purchase of new shingles (but not the cost of labor to install them), with the amount contributed by GAF prorated to reflect the amount of use a homeowner received in proportion to the warranty term.  The terms of this limited warranty, including a disclaimer of implied warranties, appeared on the packaging of each bundle of Timberline shingles.

In March 2003, after receiving complaints from other property owners, Mays inspected Plaintiffs' roof and observed cracking in some of the shingles. Several GAF employees accompanied Mays during the inspection. No one from GAF ever advised Plaintiffs of the cracking in the shingles on their roof.  It is disputed as to whether Mays informed Plaintiffs of the cracking at the time of his inspection and observation in 2003 or sometime later.

In March 2006, Mays submitted warranty claims to GAF on behalf of Plaintiffs and several other property owners.  Mays also submitted proposals to GAF which included his estimates for completing the removal and replacement of the roofs. GAF resolved the majority of the warranty claims submitted by Mays by offering a payment in the amount estimated by Mays for the labor costs associated with the claims and a materials voucher for the GAF roofing shingles necessary to complete the work.

On April 17, 2006, Plaintiffs filed suit against GAF.  Two days after the suit was filed, GAF informed Mays that it would resolve Plaintiffs' claim by making payment for the labor costs to Mays Contracting as well as providing a materials voucher for GAF roofing shingles. Plaintiffs declined GAF's offer and proceeded with the lawsuit.  At the time of the initiation of this suit, Plaintiffs did not report to GAF any damages other than the allegedly defective shingles.  However, in 2010, Plaintiffs' expert witness opined that there were two leaks in the interior of Plaintiffs' home which he attributed to the cracking shingles.

2

Plaintiffs originally filed this suit as an individual action against GAF in the Court of Common Pleas of Newberry County, South Carolina ("Circuit Court") on April 17, 2006. GAF removed the case to federal court on the basis of diversity jurisdiction. The matter was remanded back to the Circuit Court upon Plaintiffs' representation that they would restrict their claim to an amount under $75,000 and, therefore, the matter did not meet the monetary threshold for diversity jurisdiction. In November 2007, Plaintiffs amended their complaint to assert a class action, and GAF again removed the matter to federal court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). After removal, Plaintiffs sought remand on the ground that they tailored their complaint to avoid federal jurisdiction by limiting their damages to five million dollars. Relying on that representation, this court remanded the case to the Circuit Court again.

The case then proceeded in the Circuit Court. In March 2010, the Circuit Court granted Plaintiffs' request for class certification ("Circuit Court Certification Order"). The Circuit Court defined the class as: "all South Carolina property owners whose roofs include Timberline® shingles manufactured at GAF's Mobile, Alabama manufacturing facility between 1999 and 2007."

The Circuit Court also heard the parties' motions for summary judgment. GAF moved for summary judgment as to all claims brought by Plaintiffs. Plaintiffs requested judgment be entered in favor of the class on the cause of action for breach of implied warranties. In September 2010, the Circuit Court denied GAF's motion and granted Plaintiffs' motion as to the cause of action for breach of implied warranties ("Circuit Court Summary Judgment Order").

GAF appealed to the South Carolina Court of Appeals. While that appeal was pending, Plaintiffs filed a motion to amend their complaint in the Circuit Court seeking more than $5

million in class action damages. The Circuit Court granted Plaintiffs' motion, and GAF promptly removed the matter back to this court.

After the removal of the matter to this court, GAF filed the instant motion requesting the court enter an order granting summary judgment in favor of GAF as to all claims asserted by Plaintiffs in their individual capacity or, alternatively, for an order reconsidering and reversing the Circuit Court Summary Judgment Order granting partial summary judgment in favor of Plaintiffs on their claims for breach of implied warranties. GAF further seeks an order from this court decertifying the class which was certified by the Circuit Court on March 18, 2010.

## EFFECT OF STATE COURT ORDERS

Where a matter is removed to federal court after a state court has entered a judgment, "the district court should immediately adopt the judgment as its own." *Resolution Trust Corp. v. Allen*, 16 F.3d 568, 575 (4th Cir. 1994). "After this adoption, the judgment [sh]ould be treated the same as other judgments entered by the district court and the parties would follow the ordinary rules regarding post-judgment remedies." *Id.* at 573.

GAF filed the instant motion prior to the court's adoption of the Circuit Court orders as its own. However, in the interest of judicial economy, the court now adopts the Circuit Court orders as orders of this court in accordance with the guidance from *Resolution Trust Corp.*, and proceeds with review of this motion as allowed under the Federal Rules of Civil Procedure.

## DISCUSSION

I.    **The Circuit Court's Summary Judgment Order**

    A.    **Standard of Review**

In accordance with the Federal Rules of Civil Procedure, a party "may file a motion to alter or amend a [state court judgment made prior to removal] under Rule 59(e) which must be served no later than [twenty-eight] days after the district court's entry of the state court judgment

4

as its own." *Id.* at 573 n.5; *see also* Fed. R. Civ. P. 59(e).[1]  A court may alter or amend a judgment only where the movant shows either (1) an intervening change in the controlling law; (2) new evidence that was not available at the time of the ruling; or (3) that there has been a clear error of law or a manifest injustice. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010).

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477

---

[1] There is some dispute between the parties regarding the standard of review that is applicable in this matter.  GAF contends that this court should review its motion pursuant to Federal Rules of Civil Procedure 54(b) and 56 and revisit the Circuit Court orders under the exceptions to the law of the case doctrine.   Plaintiffs insist that Rule 59(e) is the more appropriate standard and that GAF failed to make a timely motion under the rule.  Based on the guidance from *Resolution Trust Corp.*, the court agrees with Plaintiffs' assertion of Rule 59(e) as the appropriate standard.  However, because the time for filing a motion pursuant to Rule 59(e) runs from the date at which the district court adopts the state court judgment as its own, GAF's motion is timely.  Furthermore, because the standard of review for exceptions to the law of the case doctrine is substantially the same as the standard applicable to Rule 59(e) motions, the parties' dispute on this issue is largely irrelevant to the resolution of GAF's motion. *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (noting that a prior ruling in a case may be changed under certain circumstances including when: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work a manifest injustice.").

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### B.   GAF's Request for Summary Judgment in its Favor on Plaintiff's Individual Claims

GAF argues that it is entitled to summary judgment as to Plaintiffs' individual claims on the grounds that Plaintiffs' claims are moot and barred by the statute of limitations.[2] Specifically, GAF contends that Plaintiffs' claims became moot after GAF offered to resolve the warranty claim and made an offer of judgment to Plaintiffs which allegedly included the full amount of damages to which Plaintiffs would be entitled to recover. The Circuit Court rejected this argument, finding that GAF could not moot Plaintiffs' claims by submitting an offer of judgment based on GAF's unilateral determination of the value of Plaintiffs' claims.

---

[2] GAF substantially ignores the Circuit Court ruling denying GAF's summary judgment motion when the matter was in state court and appears to ask this court to review the current motion without any consideration to the Circuit Court's prior ruling. Although the Federal Rule of Civil Procedure 56 allows a party to file a summary judgment motion at any time before thirty days after the close of discovery, the court's adoption of the Circuit Court orders in accordance with *Resolution Trust Corp.* renders GAF's current motion more in the nature of a request to alter or amend under Rule 59(e). However, the court's resolution of GAF's request for summary judgment would be the same under either rule.

A claim may become moot once a defendant makes an offer of judgment in the amount of damages claimed by a plaintiff. *See Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (finding a plaintiff's claims to be moot once the defendant offered to pay the damages to which plaintiff claimed to be entitled). Stated otherwise, an unconditional offer of judgment moots a claim "when the claimant receives the relief he or she sought to obtain through the claim." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002). In this case, the offer of judgment did not encompass all of the relief Plaintiffs sought through their claims against GAF. Although GAF encourages the court to accept the proposition that the offer of judgment satisfied any damages to which Plaintiffs were entitled for the alleged breach of implied warranties, GAF wholly ignores the fact that Plaintiffs' suit encompassed claims other than breach of implied warranties. GAF's offer of judgment is certainly more than the amount Mays indicated was necessary for the replacement of Plaintiffs' roof, but it belies logic to assume that the offer of judgment satisfied all of the relief sought by Plaintiffs through their additional claims including fraud and violation of the SCUTPA which arise from Plaintiffs' assertions that GAF knowingly sold defective shingles. Therefore, the court finds GAF's mootness argument to be without merit.

GAF further asserts that Plaintiffs' tort claims are barred by the statute of limitations. South Carolina law provides for a three-year statute of limitations on actions for negligence, negligent misrepresentation, fraud, and unfair trade practices. *See Cline v. J.E. Faulkner Homes, Inc.*, 359 S.C. 367, 370, 597 S.E.2d 27, 29 (Ct. App. 2004) (three-year statute of limitations for negligence claims); *ABN Amro Mortg. Grp., Inc. v. SAJJ, LLC*, Civil Action No. 7:05-1720-RBH, 2007 WL 840342, at *5 (D.S.C. March 15, 2007) (three-year statute of limitations for negligent misrepresentation and unfair trade practices claims); and *Moore v. Benson*, 390 S.C.

7

153, 160, 700 S.E.2d 273, 277 (Ct. App. 2010) (fraud action "is governed by a three-year statute of limitations period")

The discovery rule determines the date of accrual for a claim. *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct. App. 1998). Under the discovery rule, an action accrues on the date an aggrieved party either discovered or should have discovered, through reasonable diligence, that a claim has occurred. *Id*. South Carolina's discovery rule does not require actual notice of or knowledge of the full extent of damages or a claim; rather, the rule only requires a party to act promptly to investigate the existence of a claim where facts and circumstances indicate that one might exist. *See Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645, 647 (1996).

GAF asserts that the statute of limitations began to run in March 2003 when Mays examined Plaintiffs' roof because Mays testified in his deposition that he told Plaintiffs about the cracking problem in the shingles "probably the same day." Plaintiffs dispute GAF's contention of when the statute began to run. Plaintiffs rely on Mr. Brooks' deposition testimony indicating that he believed Mays did not inform him of the cracking issue until late 2005 or early 2006, although he admitted that he could not be certain of the exact date. The Circuit Court found that there was a genuine issue of material fact concerning the date on which Plaintiffs' tort claims accrued. This court agrees with the Circuit Court's assessment and finds it inappropriate to alter the Circuit Court's order on this issue.

      **C.    GAF's request for amendment of the Circuit Court Order Granting Partial Summary Judgment in Favor of Plaintiffs on the Cause of Action for Breach of Implied Warranties**

Alternatively, GAF requests that the court alter the Circuit Court order granting partial summary judgment in favor of Plaintiffs on their claim for breach of implied warranties. The Circuit Court granted Plaintiffs' Motion for Partial Summary Judgment on the basis that GAF's

attempt to exclude implied warranties was ineffective under *Gold Kist v. The Citizens, and Southern Nat. Bank. of South Carolina*, 286 S.C. 272, 333 S.E.2d 67 (Ct. App. 1985). Because the Circuit Court order relies on *Gold Kist* without discussion of its applicability to the circumstances of this case, the court grants GAF's request for amendment of the Circuit Court order.

Subject to certain limitations, South Carolina law generally permits a seller to disclaim the implied warranties of merchantability and fitness for a particular purpose. The South Carolina Code of Laws specifically provides:

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude the implied warranty of merchantability or of fitness for a particular purpose must be specific
> . . . .

S.C. Code Ann. § 36-2-316 (2012).

Furthermore, "a seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty." S.C. Code Ann. § 36-2-318 (2012). As noted in the Comments to section 318, third-party beneficiaries not only receive warranty protection, but are subject to valid warranty disclaimers. *See id.*, Cmt 1 (providing, in part: "[t]o the extent that the contract of sale contains provisions under which warranties are excluded or modified, or remedies for breach are limited, such provisions are equally operative against beneficiaries of warranties under this section").

Although South Carolina courts have not expounded upon this Code section, the United States Court of Appeals for the Fourth Circuit has had the opportunity to analyze a similar provision from another jurisdiction. Relying on the Uniform Commercial Code Official

Comment, which is substantially the same as the Comment to S.C. Code Ann. § 36-2-318, the Court noted that Virginia's statutory provision extending warranty protection to certain third-parties was intended "to confer on foreseeable users of a product both the benefits and limitations of warranties provided to the purchaser." *See Buettner v. R.W. Martin & Sons, Inc.*, 47 F.3d 116, 119 (4th Cir. 1995). The Court further cited with approval *Goodbar v. Whitehead Bros.*, 591 F. Supp. 552, 567 (W.D. Va. 1984) *aff'd sub nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir. 1985), in which the district court found that, because a third-party user of silica products could have no more warranty protection than the purchaser, the proper inquiry for determining the rights of the third-party user was "whether an implied warranty . . . was created when the Defendant suppliers sold the silica sand and related products to the [purchaser]." *Id*. Accordingly, to the extent that a plaintiff seeks the protections of an express warranty as a third-party beneficiary, the plaintiff is also bound by the warranty limitations and disclaimers. *See Sharp v. Tamko Roofing Prods., Inc*., 695 N.W.2d 43 (Table), 2004 WL 2579638 (Iowa App. 2004) (finding that plaintiff property owners were bound, as third-party beneficiaries, by warranty disclaimers located on product labels despite having never actually seen the disclaimers because the disclaimers were readily available to the builder who originally purchased the shingles).

Under South Carolina law, warranty limitations or disclaimers must be a part of the basis of the bargain between the parties to a transaction to be effective. To that end, the South Carolina Court of Appeals has adopted the prevailing view that "a disclaimer printed on a label or other document and given to the buyer at the time of delivery of the goods is ineffective if a bargain has already arisen." *Gold Kist*, 286 S.C. at 277, 333 S.E.2d at 71. *Gold Kist* concerned a dispute between Gold Kist and buyers over an unpaid account. The buyers purchased corn seed from Gold Kist's representatives based on the representatives' advice and quality assurances.

When the seed failed to meet the quality standards, the buyers refused to pay and claimed that the seed was defective. Gold Kist claimed that it had disclaimed implied warranties and limited its liability because it included a disclaimer on a label printed on the seed bags delivered to the buyers. The matter went to trial and the jury returned a verdict for the supplier in an amount substantially less than the amount owed on the account. The supplier made a post-trial motion seeking a judgment notwithstanding the verdict in its favor for the amount owed on the account. In affirming the jury verdict, the Court of Appeals found that "the disclaimer [was] invalid because it amount[ed] to a post-contract, unbargained-for unilateral attempt by Gold Kist to limit its obligations under the contract." *Id*.

In evaluating Plaintiffs' Motion for Partial Summary Judgment, the Circuit Court concluded, without discussion, that GAF's claims concerning the warranty disclaimers was barred by *Gold Kist*. Ostensibly, the Circuit Court concluded that GAF's warranty disclaimers were ineffective because they were printed on the label attached to the packaging of the shingles. However, the circumstances of this case require a more detailed inquiry. The focus of the inquiry in the circumstances of this case is two-fold. First, the court must identify the actual parties to the transaction. Then the court must determine whether the alleged disclaimers were part of the bargain struck between the parties to the transaction. In the instant case, there is a genuine issue of material fact as to both questions.

It is undisputed that Plaintiffs did not purchase the shingles directly from GAF, but that Mays provided the shingles to Plaintiffs in connection with his work on Plaintiffs' roof. Mays testified in his deposition that at the time of the installation of the shingles on Plaintiffs' roof, Mays was certified as a Master Elite Roofer by GAF. He further stated that GAF provided him with some training and some promotional materials as a result of his certification.

Mr. Brooks testified in his deposition that he had been acquainted with Mays since at least 1994 or 1995 when Mays built the Plaintiffs' residence.  When Plaintiffs decided to replace their roof, they hired Mays who recommended that Plaintiffs install the Timberline shingles.  Mr. Brooks further testified that, although Mays did not show him any materials from GAF about the shingles, Mays told him that the Timberline shingle was a "thirty-year shingle" and that he would like it better than the shingles previously installed on the roof.

GAF contends that they effectively disclaimed implied warranties because the disclaimer was readily apparent on the label of each bundle of shingles and that Mays was aware or should have been aware of the disclaimer as a consequence of his having previously used the product hundreds of times and having previously handled warranty claims with GAF on behalf of other customers.  Mays also testified that he bought the shingles for Plaintiffs' roof from a local distributor.  GAF posits that, because the terms of the warranty were known to or readily available for review by Mays at the time of his purchase of the shingles, Plaintiffs are bound by the disclaimer as third-party beneficiaries or through Mays' knowledge as an agent of Plaintiffs.

Conversely, Plaintiffs argue that Mays' knowledge of the disclaimer cannot be imputed to them because Mays was an agent of GAF and GAF is bound by Mays' representations regarding the shingles.  Under Plaintiffs' theory, they would have purchased the shingles from Mays, as agent for GAF, without the benefit of having the disclaimer terms available.

Because there are genuine disputes of material fact concerning the circumstances under which the shingles were purchased, the court cannot conclusively determine whether the disclaimer printed on the product labels was a post-contract attempt to limit liability after Plaintiffs purchased the shingles from Mays as a representative of GAF or whether the

disclaimer was included as a basis of the bargain between Mays, as purchaser, and GAF to which Plaintiffs would be bound as third-party beneficiaries.[3]

## II.     GAF's Request for Class Decertification

GAF requests that the court amend or modify the Circuit Court Certification Order because Plaintiffs cannot meet the more rigorous requirements for maintaining a class action suit in federal court.[4]

Under Rule 23, the court may alter or amend a class certification order at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1). A district court has broad discretion in determining whether to modify or decertify a class. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). To modify or decertify a class, the court must make the same inquiry required for class certification – whether the claims should be maintained as a class under Rule 23. The court "must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006) (quoting *Gariety v. Grant Thornton*, 368 F.3d 356, 365 (4th Cir. 2004) (citations omitted)). "The

---

[3] The court notes Plaintiffs' argument that GAF's warranty failed of its essential purpose. "A warranty fails of its essential purpose if the seller is unwilling or unable to repair or replace the product or if there is an unreasonable delay in the repair or replacement of the product." *Herring v. Home Depot, Inc.*, 350 S.C. 373, 379, 565 S.E.2d 773 (Ct. App. 2002). Whether an express warranty has failed of its essential purpose under South Carolina law depends on "the facts or circumstances surrounding contract, nature of basic obligations of party, nature of goods involved, uniqueness or experimental nature of items, general availability of items, and the good faith and reasonableness of provision." *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1044 (D.S.C.1993). In this case, there is a genuine issue of material fact as to whether the limited warranty offered by GAF failed of its essential purpose.

[4] It is well established that South Carolina Rule 23 "endorses a more expansive view of class action availability than its federal counterpart." *See Grazia v. South Carolina State Plastering, LLC,* 390 S.C. 562, 576, 703 S.E.2d 197, 204 (2010) (citing *Littlefield v. South Carolina Forestry Comm'n*, 337 S.C. 348, 354–55, 523 S.E.2d 781, 784 (1999)).

13

likelihood of the plaintiffs' success on the merits, however, is not relevant to the issue of whether certification is proper." *Id*.

The party seeking class certification bears the burden of demonstrating that all requirements of Rule 23 are met. *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989). To meet this burden, the party must do more than articulate a hypothetical application of the rule. Instead, the party must produce enough evidence to demonstrate that class certification is, in fact, warranted. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id*. (internal citations omitted).

First, the proposed class must conform to Rule 23(a) which requires a showing of numerosity, commonality, typicality, and representational adequacy. Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is not dependent on a specific number of class members. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967)). Rather, the court must consider the circumstances of each case in evaluating the practicability of joinder. *Id*. "The 'practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion.'" *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 231 (D.S.C. 2009) (citations omitted).

"Commonality requires that there are questions of law or fact common to the class." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal citations and quotation marks omitted). "[The class] claims must depend upon a common contention of such a nature that it is capable of class[-]wide resolution – which means that determination of its truth

14

or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "What matters to class certification [ ] is not the raising of common questions . . . but, rather the capacity of a class[-]wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*.

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). The court must identify a "cognizable injury" suffered by the class representatives that is "similar to the injuries suffered by the other class members." *McClain v. South Carolina Nat'l Bank*, 105 F.3d 898, 903 (4th Cir. 1997). The named plaintiff's claims need not be identical to those of the class members. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). However, "[a] plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67.

Additionally, the representative plaintiffs must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). Representational adequacy "involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *George*, 259 F.R.D. at 232. The purpose of the inquiry is to determine whether there are any conflicts between the interest of the named plaintiffs and the unnamed class members. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

"The final three requirements of Rule 23(a) 'tend to merge,' with commonality and typicality 'serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that

the interests of the class members will be fairly and adequately protected in their absence.'" *Brown v. Nucor Corp.,* 576 F.3d 149, 152 (4th Cir. 2009) (quoting *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 337 (4th Cir. 1998)). "[C]ertification is only concerned with the commonality (not the apparent merit) of the claims and the existence of a sufficiently numerous group of persons who may assert those claims." *Id.* at 152 (quoting *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 332-33 (4th Cir. 1983)).

In addition to meeting the requirements of Rule 23(a), the proposed class must also fall within one of the three circumstances provided in Rule 23(b) for class certification to be proper. The first circumstance under which a class action may be maintained occurs under Rule 23(b)(1). A class action may be warranted where separate actions by or against individual class members would create the risk of (1) inconsistent adjudications with respect to class members, resulting in incompatible standards of conduct for the party opposing the certification, or; (2) adjudications involving individual class members that would be dispositive of the interests of other class members or impede the other class members from protecting their interests. *See* Fed. R. Civ. P. 23(b)(1). The second situation arises where the party opposing the class has acted or refused to act on grounds that apply to the class in general, resulting in injunctive or declaratory relief being appropriate for the class in total. *See* Fed. R. Civ. P. 23(b)(2). The final situation under which a class may be maintained involves a court finding that common questions of law or fact among the parties predominate over individual questions and therefore a class action is the best available method for adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) applies in this case.

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority.

> The predominance requirement is similar to but more stringent than the commonality requirement of Rule 23(a). Whereas commonality requires little

16

> more than the presence of common questions of law and fact, Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Fed. R. Civ.P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The superiority requirement ensures that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Among the factors a district court should consider in deciding whether a class action meets these two requirements are:
>
> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Thorn*, 445 F.3d at 319 (internal citations and quotation marks omitted).

GAF does not dispute Plaintiffs' ability to meet the numerosity requirement of Rule 23. However, GAF does have several objections to class certification which warrant discussion here. First, GAF contends that Plaintiffs cannot demonstrate that they are adequate representatives for the class. In support of its contention that Plaintiffs are not adequate class representatives, GAF again argues that Plaintiffs' claims are moot because of GAF's offer of judgment and that they cannot proceed as representatives on claims for which they have no standing to assert on their own behalf. Because the court found GAF's mootness argument to be without merit, *see supra* Part I.B., the court finds that GAF's arguments that Plaintiffs are inadequate class representatives on the basis of mootness are also unmeritorious.

Next, GAF asserts that Plaintiffs' claims are not typical of the other class members' claims because Plaintiffs' claims are time-barred and based on oral representations. The court has found that there is a factual dispute as to whether Plaintiffs' claims are barred by the statute of limitations. Therefore, this is an inappropriate basis on which to decertify the class. To the extent that GAF argues for decertification on the grounds that Plaintiffs' claims rest on oral

17

representations, its argument is misplaced. Typicality does not require that the claims of the class representative be identical to the claims of the other class members. *Deiter*, 436 F.3d at 466. Instead, what matters is that the class representative's injuries be sufficiently similar to the injuries of the class members such that the class representative is able to advance the claims of the entire class through proof of his own claim. *Id*. at 466-67. Here, Plaintiffs seek to prosecute a class-wide claim for allegedly defective shingles which prematurely exhibit a cracking problem. While some of Plaintiffs' claims rest on oral representations, many of Plaintiffs' claims also rest on the express written warranty. Accordingly, GAF's position is not appropriately supported.

GAF further argues that the proposed class is unmanageable. More specifically, GAF contends that there are significant administrative obstacles to identifying the members of the class as it is currently defined. "Although not specifically mentioned in the rule, the definition of a class is an essential prerequisite to maintaining a class action." *Roman v. ESB, Inc*., 550 F.2d 1343, 1348 (4th Cir. 1976). "A class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Alasin v. Westinghouse Savannah River Co*., Civil Action No. 1:05-1045-HFF-BM, 2008 WL 2169427, at *2 (D.S.C. May 23, 2008). "Where the practical issue of identifying class members is overly problematic, the court should consider that the administrative burdens of certification may outweigh the efficiencies expected in a class action." *Cuming v. S.C. Lottery Comm'n*, 2008 WL 906705, at *1 (D.S.C. March 31, 2008).

Based on a review of the memoranda, exhibits, and arguments of the parties, the court determines that the class definition is not sufficiently definite. The class definition proposed by Plaintiffs and adopted by the Circuit Court includes: "all South Carolina property owners whose roofs include Timberline® shingles manufactured at GAF's Mobile, Alabama manufacturing

facility between 1999 and 2007." The definition not only includes persons who are not injured,[5] but also persons with an injury that may not be remotely similar to the injury at issue in this case – i.e., premature cracking. Furthermore, the record suggests that there is no reasonable method of identifying prospective class members. GAF's Timberline shingles are sold through distributors and often in circumstances such that the prospective class members may not even know whether they have GAF shingles on their property. There appears to be no reliable database or repository of purchaser information. GAF only has purchaser information for those who send in warranty documents, and Plaintiffs have offered no alternative method for ascertaining the members of the class. Presumably, to become a member of the class, the prospective class member would have to demonstrate that Timberline shingles are, in fact, on their property. Then the prospective class member must demonstrate that the shingles were manufactured at GAF's Mobile, Alabama facility during the relevant period. The definition also excludes all purchasers of the allegedly defective shingles who, for whatever reason, are not property owners. The court finds that the level of factual inquiry involved in the administration of the class as currently defined poses an administrative burden to certification which outweighs the potential efficiencies of class treatment.

Finally, GAF alleges that Plaintiffs cannot meet the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b). Where "common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003). Because the proposed class is not sufficiently defined, the court cannot make a meaningful

---

[5] The fact that a class definition may include uninjured persons, in and of itself, does not necessarily render a class definition overly broad. *See Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 676 (7th Cir. 2009).

determination of predominance, but such determination is neither necessary nor warranted given that the court finds the class unmanageable in its current posture.

## CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** Defendant GAF Materials Corporation's Motion for Summary Judgment and to Decertify the Class [Doc. 38]. The court grants GAF's motion in as much as it requests reconsideration of the Circuit Court's orders granting class certification and granting partial summary judgment in favor of Plaintiffs. Upon reconsideration, the court grants Defendant's request for class decertification. This finding is without prejudice to Plaintiffs' right to amend the proposed class definition to provide for a class which is sufficiently defined to warrant certification. Furthermore, the court finds that it is appropriate to alter the Circuit Court order because there are genuine issues of material fact which preclude a finding of partial summary judgment in favor of Plaintiffs on the cause of action for breach of implied warranties. Finally, the court denies GAF's request for reconsideration of the Circuit Court's order denying its summary judgment motion as to Plaintiffs' individual claims because GAF has not presented a sufficient basis to warrant reconsideration.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 31, 2012
Greenville, South Carolina