# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

Jack Brooks, on behalf of himself )
and others similarly situated; and )
Ellen Brooks, on behalf of herself )
and others similarly situated, )
                                         )
                Plaintiffs, )     Civil Action No.: 8:11-cv-00983-JMC
                                         )
                v. )     **ORDER AND OPINION**
                                         )
GAF Materials Corporation, )
                                         )
                Defendant. )

Plaintiffs Jack Brooks and Ellen Brooks ("Plaintiffs") bring this putative class action against Defendant GAF Materials Corporation ("GAF") asserting claims for negligence, negligent misrepresentation, breach of warranty, breach of implied warranties, fraud, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), and unjust enrichment arising from GAF's sale of allegedly defective roofing shingles. Currently before the court is Plaintiffs' Motion to Alter or Amend Order and Opinion Decertifying Class or, in the Alternative, Motion to Redefine the Class [Dkt. No. 77].

## FACTUAL AND PROCEDURAL BACKGROUND

GAF manufactures roofing materials, including roofing shingles marketed under the Timberline® brand name. Plaintiffs filed a class action suit against GAF alleging, among other things, that GAF knowingly manufactured defective shingles that cracked and caused damage to Plaintiffs' roofs and houses. Originally, the class was defined as "all South Carolina property owners whose roofs include Timberline® shingles manufactured at GAF's Mobile, Alabama

manufacturing facility between 1999 and 2007." However, on May 31, 2012, this court entered an order decertifying the class because "the class definition [was] not sufficiently definite." *Brooks v. GAF Materials Corp.*, C.A. No. 8:11-cv-00983-JMC, 2012 WL 1963515, at *11 (D.S.C. May 31, 2012) ("Decertification Order"). Plaintiffs filed the instant motion requesting the court to alter or amend the Decertification Order to reinstate the class as certified by the state court. Alternatively, because the court allowed Plaintiffs leave to seek certification of a more definite class, Plaintiffs request that the court alter its Decertification Order to modify or redefine rather than decertify the class based on Plaintiffs' newly proposed definition. Plaintiffs' newly proposed definition is:

> all South Carolina persons or entities who own or have an interest in any property with GAF Timberline® Shingles manufactured at Mobile for the years 1999 through 2007 which have cracked, split, or torn or are likely to crack, split, or tear. The class is not intended to include any structure owned by the Defendant or any of its subsidiaries or affiliates. [1]

For the reasons set forth below, the court denies Plaintiffs' request that the court alter or amend its Decertification Order pursuant to Rule 59(e), but grants Plaintiffs' request for certification of a redefined class.

## DISCUSSION

**Plaintiffs' Request to Alter or Amend the Court's Decertification Order**

Plaintiffs initially request that the court alter or amend the Decertification Order to retain the class certification as it was originally defined by the state court. A court may alter or amend a judgment only where the movant shows either (1) an intervening change in the controlling law; (2) new evidence that was not available at the time of the ruling; or (3) that there has been a clear

---

[1] In accordance with Plaintiffs' previous requests for certification and representations in their pleadings, class certification would only apply to the causes of action for negligence, breach of warranty, breach of implied warranties, and unjust enrichment. *See* Second Amended Complaint. [Dkt. No. 1-1]

2

error of law or a manifest injustice. *See Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010).

Plaintiffs argue that the court made several errors in the Decertification Order which warrant reconsideration. First, Plaintiffs contend that the court applied the wrong legal standard in determining the decertification issue. Specifically, Plaintiffs state that the court "committed a fundamental error of law when it held, without citation of authority, that, 'To modify or decertify a class, the court must make the same inquiry required for class certification – whether the claims should be maintained as a class under Rule 23.'" Plaintiff's Motion to Alter or Amend Order and Opinion Decertifying Class or, in the Alternative, Motion to Redefine the Class, at 3 [Dkt. No. 77, at 3]. However, Plaintiffs read the court's statement in isolation and without reference to the immediately preceding reference to United States Supreme Court authority expressly recognizing the court's discretion to modify a class certification order, which reasonably includes the discretion to decertify the class if warranted. *See Brooks¸* 2012 WL 1963515, at \*8 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Indeed, it is well-established that the court has an obligation to ensure that a class continues to be properly certified under Rule 23 during the course of litigation. *See Stastny v. S. Bell Tel. and Tel. Co.*, 628 F.2d 267, 276 (4th Cir. 1980) (discussing the trial court's obligation to ensure that the representative plaintiff has met the burden of demonstrating the requirements of Rule 23(a) and (b) for class certification and that class certification remains appropriate under Rule 23 throughout the litigation). Attendant to that obligation, courts routinely consider the same standard for class decertification as they do for class certification. *See Mendez v. Radec Corp.*, 260 F.R.D. 38, 43 (W.D.N.Y. 2009) ("In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met.") (citations omitted); *E. Maine Baptist Church v. Union Planters Bank,*

*N.A.*, 244 F.R.D. 538, 541 (E.D. Mo. 2007) ("In considering a defendant's motion for decertification, the Court follows the legal standard required for class certification . . . and focuses its inquiry as to whether or not the requirements of Rule 23 have been met."); *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 544 (E.D. Va. 2000) ("In considering the Defendant's Motion to Decertify the Class Action, this Court adheres to the legal standard required for class certification."). Therefore, the court finds Plaintiffs' first point of error to be without merit.

Plaintiffs further contend that the court addressed GAF's decertification motion without requiring GAF to demonstrate any change in circumstances. However, GAF repeatedly argued and the court acknowledged in the Decertification Order that the removal of the action from state court to federal court was a sufficient change in the circumstances of the case to necessitate a review of the class certification issue. It is not a forgone conclusion, as Plaintiffs argue, that class certification under South Carolina Rule of Civil Procedure 23 meets the more rigorous requirements of its federal counterpart. *See Brooks,* 2012 WL 1963515, at *12 (citing *Grazia v. S. C. State Plastering, LLC*, 390 S.C. 562, 576, 703 S.E.2d 197, 204 (2010), which recognized that South Carolina Rule 23 "endorses a more expansive view of class action availability than its federal counterpart."). Perhaps owing to the fact that Plaintiffs failed to appreciate the difference, we find ourselves presently revisiting the issue, but that error lies with Plaintiffs and not with the court.

Additionally, Plaintiffs argue that the court misconstrued the manageability issues and contend that they were not given an adequate opportunity to address GAF's argument that the class as certified by the state court was unmanageable. Although Plaintiffs contend that GAF did not raise the manageability issues until the May hearing in this case, the record reflects that GAF actually briefed the issue in its initial memorandum seeking the decertification. Plaintiffs briefly addressed the issue in their response supported by one exhibit depicting the number of shingles

4

sold in South Carolina, but it was not until the instant motion that Plaintiffs provided the court with a detailed description of how they intended to identify prospective class members along with supporting documentation.

Finally, Plaintiffs complain that the court should have modified or redefined the class rather than decertify the class. However, given the court's unanswered concerns regarding the manageability of the class, it is difficult to envision how the court could have crafted a suitable class definition without additional information from the parties. Although Plaintiffs now complain that the court improperly decertified the previously defined class upon finding it unmanageable, Plaintiff did not contend in its prior briefing that modification would have been more appropriate and did not offer the court any alternative class definition or method for the court to make an independent determination of an alternative class definition.

For these reasons, the court finds that Plaintiffs have failed to meet the requirements for reconsideration under Rule 59(e). However, while Plaintiffs cannot meet the standard for alteration or amendment of the court's Decertification Order under Rule 59(e), the court finds it appropriate to now address Plaintiffs' alternative request for certification of a class based on a modified or redefined class definition.

**Request for Certification of Class Based on Modified or Redefined Class Definition[2]**

**A.     Rule 23(a)**

This court previously outlined Plaintiffs' satisfaction of the numerosity, commonality,

---

[2] Although the court granted GAF's request for decertification of the class previously certified in state court, the court also granted Plaintiffs leave to seek certification of a more definite class. GAF contends that the instant motion is an improper mechanism for Plaintiffs to seek such certification. The court disagrees. This is the third round of briefing on the issue of class certification in this case, and it appears to the court that the parties have now exhaustively addressed the relevant issues. Given the procedural posture of this case, the court finds that judicial economy would be best served by presently addressing Plaintiffs' alternative motion for certification of a redefined class, to which GAF was allowed to fully respond.

5

typicality, and representational adequacy requirements of Rule 23 in the Decertification Order. *See Brooks*, 2012 WL 1963515, at *8-11.[3] However, the court expressed several concerns with the original class definition. *Id.* at *11.

Most significantly, the court noted that the record did not reflect a reasonable method for identifying prospective class members. It is well-accepted that class action suits brought pursuant to Rule 23(b)(3), where individual damage claims are likely, must concern a class that is "currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (noting multiple jurisdictions subscribing to the proposition); *see also* Manual for Complex Litigation § 21.222 (4th ed. 2004). Ascertainability serves several critical purposes including: 1) ensuring that class members can be identified in an administratively efficient manner compatible with the goals of class action treatment; 2) providing the "best notice practicable" to protect the interests of absent class members; and 3) allowing adequate opportunity for defendants to protect themselves by confirming that those bound by the class proceedings are easily identifiable. *See Marcus*, 687 F.3d at 593; Manual for Complex Litigation § 21.222. It is not necessary that every class member actually be identified prior to class certification, but the class plaintiff must clearly establish that there is a method by which class membership could be clearly ascertained. *Id.*

When this issue was before the court on GAF's request for decertification, the parties presented the court with limited information regarding the methods for identifying class members. Therefore, the court did not have all of the relevant facts before it at the time of its previous determination of the manageability issue. In the instant motion, Plaintiffs now have detailed several alternative (or cumulative) methods which it contends resolves the court's

---

[3] Neither party has challenged the court's findings on numerosity, commonality, typicality, and representational adequacy, and the court incorporates the analysis herein as if set forth verbatim.

concerns regarding the ascertainability of the proposed class members, i.e. GAF customers who purchased shingles manufactured at the Mobile, Alabama plant from 1999 to 2007.[4] Specifically, they have provided supporting documentation showing a partial customer list maintained by GAF, a list of certified GAF installers who would likely be able to identify their own customers as class members, and a list of distribution houses that also may have customer records of who purchased Timberline® shingles. Furthermore, Plaintiffs have provided the court with supporting documentation exhibiting that the shingles themselves have specific markings on them identifying the year and location in which they were manufactured that may be used to confirm a potential plaintiff's membership in the class. Based on this additional information concerning these objective methods for identifying prospective class members now offered by Plaintiffs and supported by the record, the court is satisfied that the prospective class members are ascertainable.[5]

The court also noted that the class as previously certified by the state court presented

---

[4] GAF objects to the court allowing Plaintiffs to present this additional evidence to support their claim for class certification because GAF contends that this information was readily available to Plaintiffs at the May 2012 hearing of GAF's motion for decertification. While the court agrees that this information was available and probably should have been provided to the court at that time, the court also recognizes that the unusual procedural posture of this case likely caused confusion among the parties as to what evidence the court would consider. In its previous filing, GAF presented the motion as a reconsideration of the state court ruling, in which case the court would have only considered the evidence that had been presented to the state court. However, because the court effectively made a redetermination of the class certification issue anew in light of the removal of the action to federal court and the applicability of the more stringent Federal Rule 23, it would have been proper for Plaintiffs to present its additional evidence. Because the court is currently reviewing Plaintiffs' alternative request for certification of a more definite class, the court finds it appropriate to consider this additional evidence which was not available at the time of the state court certification order.

[5] GAF complains that the identifying marks are not exclusive to the Mobile, Alabama plant and further that individualized roof inspections would still be required to conclusively determine whether a prospective class member had the subject shingles on their property. The court is satisfied that any factual inquiry is based on merely objective criteria that could be handled through the claims administration process and would not require "mini-trials" that would inhibit class treatment.

manageability issues because it "not only includes persons who are not injured, but also persons with an injury that may not be remotely similar to the injury at issue in this case, i.e., premature cracking." Plaintiffs attempt to address the court's concern by limiting the proposed class definition to only those prospective class members with shingles "which have cracked, split, or torn or are likely to crack, split, or tear." This narrower definition eliminates the court's concern that the decertified class possibly included persons with injuries dissimilar to Plaintiffs. However, it ignores the court's apprehensions in including uninjured persons in the class.

As noted in the previous opinion, the fact that a class definition may include uninjured persons, in and of itself, does not necessarily render a class definition overly broad. *See Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 676 (7th Cir. 2009). By including class members with shingles which are "likely to crack, split, or tear," Plaintiffs expressly attempt to include in the class persons without a legally cognizable injury. The court's concern here is that the proposed definition still includes persons with products that have not manifested any defect. The court is not convinced that the class should be so broadly defined. *See Cox House Moving, Inc. v. Ford Motor Co.*, 2006 WL 3230757, at *5 (D.S.C. 2006) ("The question arises . . . whether a breach of warranty claim can ever be stated with respect to a product that in service performs precisely as it was represented it would, although others presumably identical to it have failed."). However, this issue is easily remedied by excising the offending phrase from the definition.

Accordingly, the court finds that Plaintiffs proposed class definition, with slight modification, is sufficiently definite to meet the requirements of Rule 23(a). However, Plaintiffs' newly proposed class must also meet the requirements of Rule 23(b)(3).

**B.      Rule 23(b)(3): Predominance and Superiority**

In general, Rule 23(b)(3) permits certification when a class suit, even if not clearly called for, is nonetheless convenient and desirable. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615

(1997). The predominance and superiority requirements simply ensure that courts achieve economies of time, effort, and expense without sacrificing procedural fairness. *Id.* Under Rule 23(b)(3),

> The predominance requirement is similar to but more stringent than the commonality requirement of Rule 23(a). Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The superiority requirement ensures that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Among the factors a district court should consider in deciding whether a class action meets these two requirements are:
>
> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal citations and quotation marks omitted).

### 1. Predominance

The parties do not genuinely dispute that the first three factors weigh in favor of finding predominance and certifying the class. With respect to the fourth factor, GAF strongly contends that the case will be unmanageable due to the numerous individualized inquiries required that will prevent the common issues from predominating. GAF is primarily concerned that individualized fact-finding will be necessary to establish injury, causation, notice of breach of implied warranty, and GAF's various affirmative defenses.[6] The court will address each of these arguments in turn.

GAF first argues that Plaintiffs' injuries could not be established by common evidence because the original class definition included uninjured people, i.e. those whose roofs had yet to

---

[6] The court makes its findings on this issue based on the parties' extensive arguments concerning predominance and superiority in their previous filings in this case.

crack, split, or tear. Under South Carolina law, purchasers of an allegedly defective product have no legally cognizable claim unless and until the defect manifests itself. *Wilson v. Style Crest Prods., Inc.*, 367 S.C. 653, 657-58, 627 S.E.2d 733, 736-37 (2006) (purchasers of an allegedly defective mobile home anchor system could not recover on warranty or tort claims without a showing "that the product delivered was not, in fact, what was promised."). The court agrees with GAF that no plaintiff has a cause of action for a breach of warranty unless their shingles have already "cracked, split, or torn," thereby manifesting the defect. However, the new class definition has specified the injury that must occur before a potential shingle-purchaser is included in the class, so this argument is inapposite now.

GAF also argues that causation could not be established by common evidence because there were other things that could have caused the shingles to fail such as improper installation or handling. While it is true that GAF may have individualized affirmative defenses against specific plaintiffs, the common issues regarding causation still predominate. Plaintiffs seek to establish causation on a large scale – that GAF knowingly sold shingles that contained an inherent manufacturing defect that will inevitably cause the shingles to crack, split, or tear. Plaintiffs submit that GAF has admitted its knowledge of the defect in internal documentation. If each prospective class member's case was tried separately, each would have to present duplicative evidence and expert testimony regarding the allegedly inherent defect in the shingles. It is a more efficient use of court and litigant resources to allow class treatment of these common issues despite the need for limited individualized inquiries regarding affirmative defenses. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426-27 (4th Cir. 2003) (finding that "redundancy of effort, including duplicative discovery, testimony by the same witnesses in potentially hundreds of actions, and relitigation of many similar, and even identical, legal issues" weighed in favor of class certification).

GAF's third argument against predominance is that the notice requirement for the breach of implied warranty claim could not be established by common evidence. In claims for breach of warranty, South Carolina requires that a buyer notify the seller "within a reasonable time after he discovers or should have discovered [the] breach." S.C. Code Ann. § 36-2-607(3)(a) (2012). However, the comments to South Carolina Code § 36-2-607 include the following application note:

> "A reasonable time" for notification from a retail consumer is to be . . . extended [beyond commercial standards of reasonable notification time], for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy. The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched.

S.C. Code Ann. § 36-2-607 cmt. n.4. The comments to § 36-2-607 also provide:

> Under this Article various beneficiaries are given rights for injuries sustained by them because of the seller's breach of warranty. Such a beneficiary does not fall within the reason of the present section in regard to discovery of defects and the giving of notice within a reasonable time after acceptance, since he has nothing to do with acceptance. However, the reason of this section does extend to requiring the beneficiary to notify the seller that an injury has occurred. What is said above, with regard to the extended time for reasonable notification from the lay consumer after the injury is also applicable here; but even a beneficiary can be properly held to use good faith in notifying, once he has had time to become aware of the legal situation.

S.C. Code Ann. § 36-2-607 cmt. n.5.

In many of the cases where the notice requirement prevents class certification, the manufacturer of the allegedly defective product is unaware that there is a problem with the product until it receives the notice from the buyers. *Cf. Stearns*, 2009 WL 4723366, at *5 (manufacturer redesigned product in response to customer complaints). Here, however, Plaintiffs contend that GAF was well aware of the defective state of their shingles, which is demonstrated by GAF's formation of a "Mobile cracking team" that began studying the cracking problem in December 2002, three years after the allegedly defective shingles began to be

11

manufactured. Additionally, as many of the potential class members did not purchase the shingles directly from GAF, their notice obligations may be relaxed so as not to prevent class certification. *See Thomas v. La.-Pac. Corp.*, 246 F.R.D. 505, 512 (D.S.C. 2007) (certifying class treatment of property owners injured by use of defective Trimboard despite class members' failure to directly notify the manufacturer of the alleged defect).

Because Plaintiffs' broad purpose in bringing this suit is to demonstrate that GAF was on notice that there was a problem with the shingles and continued manufacturing and selling them anyway, resolution of this issue will help advance the litigation as a whole, and the common issues still predominate over the individualized inquiries. *Cf. Thomas v. La.-Pac. Corp.*, 246 F.R.D. at 505; *Brunson v. La.-Pac. Corp*, 266 F.R.D. 112, 119 (D.S.C. 2007) (certifying a class asserting breach of express warranty claims when "proof of a defect will further advance the breach of warranty claims of the absent class members, as Plaintiffs' theory is that [the house siding product] is defective and completely unsuitable as an exterior trim product contrary to Defendants' warranties."); *Gunnells*, 248 F.3d at 426 ("[C]lass certification in this case seems likely to reduce litigation costs through the consolidation of recurring common issues. Such recurring common issues make up the heart of Plaintiffs' case against [the defendant] . . . .") (internal citation and quotation marks omitted). This is not to say that GAF was definitively on notice of the defect and that the causes of action asserted by Plaintiffs are valid. "Plaintiffs may or may not ultimately be able to prove their causes of action, but the facts they attempt to prove will be largely uniform for all class members." *Brunson*, 266 F.R.D. at 119. Therefore, this issue will not frustrate the predominance requirement.

GAF finally argues that their affirmative defenses, specifically those under the economic loss rule and the statute of limitations, will render the case unmanageable because the individual inquiries will predominate the common issues. South Carolina's economic loss rule bars

recovery in tort for alleged product defects unless the product has injured a person or property. *Sapp v. Ford Motor Co.*, 386 S.C. 143, 147, 687 S.E.2d 47, 49 (2009) ("Under the [economic loss] rule, there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself . . . ; but when personal injury or other property damage occurs, a tort remedy [such as negligence] may be appropriate."). Accordingly, some potential plaintiffs may fit into the class definition because their shingles have "cracked, split, or torn," but they may still be barred from recovery in tort. For example, if a potential plaintiff has cracked shingles, but his roof has not leaked and he has suffered no other home damage as a result of the allegedly defective shingles, he may not recover under the tort cause of action because "the damage suffered by the plaintiff is only to the product itself" at that point. *Id.*

Further, South Carolina applies the discovery rule to determine when a cause of action accrues. *See Christensen v. Mikell*, 324 S.C. 70, 73, 476 S.E.2d 692, 694 (1996); *Thorn*, 445 F.3d at 320. GAF therefore argues that assessing which class members' claims are time-barred will require individual inquiries to determine when each person should or could have known of the alleged defect. The statute of limitations for breach of implied warranty is three years. S.C. Code Ann. § 15-3-530(1) (2012). Because the time range specified by Plaintiffs is from 1999 to 2007, some potential plaintiffs' claims may have already accrued and expired before this lawsuit was filed.

While the court agrees that GAF's affirmative defenses will likely require some individualized determinations, such inquiries do not prevent class certification. *Cf. Thorn*, 445 F.3d at 320, 327-28 (stating that the district court used the statute of limitations defense as "a fact that contributed to its conclusion that common issues did not predominate under Rule 23(b)(3)," but recognizing the statute of limitations is not a complete bar to class certification in the Fourth

Circuit).[7] The paramount concern for the court is not merely the number of individual inquiries that may be required, but rather whether the nature of the individual inquiries involved is so complex as to outweigh the nature of the common issues sought to be resolved by class treatment. *See Gunnells*, 348 F.3d at 429 (holding that multiple individual inquiries into causation will not defeat class certification where common issues predominate); *see also In re American Honda Motor Co., Inc. Dealers Relations Litig.,* 979 F. Supp. 365, 366-67 (D. Md. 1997) (noting that predominance is a qualitative rather than a quantitative inquiry). Here, Plaintiffs allege that GAF knowingly manufactured, deceptively marketed, and intentionally sold defective shingles. Absent class certification, each potential plaintiff would be required to repetitively litigate these allegations involving common issues of law and facts using repetitive testimony from the same witnesses and experts and duplicative arguments from counsel, which may result in potentially incongruous rulings. It seems the most efficient and expedient way of handling the matter is to certify the redefined class for the common issues and allow individual

---

[7] GAF points out that the United States Court of Appeals for the Fourth Circuit has also stated "we have flatly held that 'when the defendants' affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous.'" *Gunnells*, 348 F.3d at 438 (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)). This statement by the Fourth Circuit has been taken out of context. Certainly, when the claim filed is not a broad allegation of the same action by the defendant causing harm to many individual plaintiffs, the defendant's actions towards each individual and that person's response tend to predominate, and class certification is not appropriate. *See, e.g.*, *Broussard*, 155 F.3d at 343-44 (determining that the class decertified was a hodgepodge of factually and legally different plaintiffs, and that therefore, the disparate nature of the claims precluded class treatment); *Thorn*, 445 F.3d at 323 (finding that the proposed class members were not so homogeneous that they all received notice of the defendant's illegal practice at the same time and were affected in the same manner). The instant case is factually distinguishable. Plaintiffs allege that a singular GAF action (the knowing manufacture and sale of a defective product) harmed all class members in the same manner (the shingles cracked and caused similar damage to their homes). This is an appropriate "common" determination for class certification. *See, e.g., Gunnells*, 348 F.3d at 424-25; *Brunson*, 266 F.R.D. at 119; *Thomas*, 246 F.R.D. at 516-17.

determinations of affirmative defenses and individual damages where necessary.[8] Accordingly, although the affirmative defenses may need to be handled individually, they will not bar class certification.

## 2. Superiority

The court finds that the superiority requirement of Rule 23(b)(3) is met here. Superiority requires that use of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The rule requires the court to find that the objectives of the class-action procedure really will be achieved in the particular case." *Stillmock v. Weis Markets, Inc.,* 385 F. App'x 267, 274 (4th Cir. 2010) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1779 (3d ed. 2005)). It appears that in the absence of class certification, very few claims would be brought against GAF,[9] making "the adjudication of [the] matter through a class action . . . superior to no adjudication of the matter at all." 5 James Wm. Moore, *Moore's Federal Practice* §23.46[1] (Daniel R. Coquillette et al. eds., 3d ed. 2010); *Gunnells*, 348 F.3d at 426. The policy behind class certification is to overcome the disincentive of filing small-recovery claims that would otherwise be cost prohibitive if brought by an individual. *Amchem*, 521 U.S. at 617. Here, certifying the class provides access to the courts to prospective plaintiffs that have

---

[8] Although neither party has raised individual damages as a bar to class certification, the court finds that this determination will not bar class certification in this instance. "Quantitatively, almost by definition there will always be more individual damages issues than common liability issues. Qualitatively, however, liability issues may far exceed in complexity the more mundane individual damages issues." *Gunnells*, 348 F.3d at 429 (quoting with approval *In re Honda Motor Co.*, 979 F. Supp. at 367); *see also Brunson*, 266 F.R.D. at 119 ("[I]ndividual damage determinations do not necessarily destroy the commonality, typicality, or predominance of putative class members' claims."); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001). Due to Plaintiffs' broad assertions of GAF's wrongdoing, the common liability issues here predominate over the individual damage determinations, which may be determined at the same time as the necessary affirmative defense hearings.

[9] The parties have not indicated to the court that there is other litigation pending in South Carolina on this matter.

determined their claims are uneconomical to bring as individual actions. *Gunnells*, 348 F.3d at 426. Additionally, class treatment would likely result in more consistent results in findings of law and fact common to the plaintiffs. *See Stillmock,* 385 F. App'x at 275.

As a final issue, GAF may actually find class certification provides a single proceeding in which to determine the merits of Plaintiffs' claims and, therefore, may protect it from repeated and potentially inconsistent adjudications. 5 James Wm. Moore, *Moore's Federal Practice* §23.02 (Daniel R. Coquillette et al. eds., 3d ed. 2010); *Gunnells*, 348 F.3d at 427; *Brunson*, 266 F.R.D. at 120. In discussing the merits of this argument, the United States Court of Appeals for the Fourth Circuit stated:

> This protection from inconsistent adjudications derives from the fact that the class action is binding on all class members. By contrast, proceeding with individual claims makes the defendant vulnerable to the asymmetry of collateral estoppel: If [the defendant] lost on a claim to an individual plaintiff, subsequent plaintiffs could use offensive collateral estoppel to prevent [the defendant] from litigating the issue. A victory by [the defendant] in an action by an individual plaintiff, however, would have no binding effect on future plaintiffs because the plaintiffs would not have been party to the original suit. Class certification thus promotes consistency of results, giving defendants the benefit of finality and repose.

*Gunnells*, 348 F.3d at 427 (internal citations omitted). Accordingly, the court finds the superiority requirement met in this instance.

## CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Alter or Amend Order and Opinion Decertifying Class or, in the Alternative, Motion to Redefine the Class [Dkt. No. 77] as provided herein. The court certifies the class and defines it as:

> all persons or entities who own any South Carolina property with GAF Timberline® shingles manufactured at GAF's Mobile, Alabama manufacturing facility between 1999 and 2007 which have cracked, split, or torn. The class is

not intended to include any structure owned by the Defendant or any of its subsidiaries or affiliates.[10]

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court

October 19, 2012
Greenville, South Carolina

---

[10] The court recognizes Plaintiffs' efforts to be responsive to the court's concern that the prior class definition did not include persons or entities who may have been injured by the allegedly defective shingles, but who may not own the affected property by including the term "or have an interest in" in the proposed class definition. However, upon consideration of Plaintiffs' proposal, the court finds that the inclusion of such a term makes the definition ambiguous. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, C.A. No. 3:00-2782-22, 2004 WL 5745993, at * 10 (D.S.C. Dec. 2, 2004) (finding that the use of the term "ownership interest" was too ambiguous and could potentially result in the identification of parties with competing claims to the same insurance policy). Additionally, upon review of the pleadings in this case, it appears that Plaintiffs seek to bring this action on behalf of those persons or entities who own property located in South Carolina and not South Carolina persons or entities with property located in other places. Accordingly, the class definition as certified by the court reflects this change.