# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Jack Brooks and Ellen Brooks, on behalf of themselves and all others similarly situated, | Civil Action No.: 8:11-cv-00983-JMC |
| Plaintiffs, | |
| v. | **ORDER AND OPINION** |
| GAF Materials Corporation, | |
| Defendant. | |

In this class action lawsuit, Plaintiffs Jack Brooks and Ellen Brooks (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege that Defendant GAF Materials Corporation ("GAF") manufactured and sold defective roofing shingles. (See ECF No. 1-1.) The court granted Plaintiffs' motion for class certification applicable to causes of action for negligence, breach of warranty, breach of implied warranties, and unjust enrichment. (ECF No. 90.)

This matter is now before the court by way of a motion by GAF to decertify the class represented by Plaintiffs pursuant to Fed. R. Civ. P. 23(c)(1)(C). (ECF No. 158.) For the reasons set forth below, the court **DENIES** GAF's motion to decertify the class represented by Plaintiffs.

## I.     RELEVANT BACKGROUND TO PENDING MOTION[1]

GAF manufactures roofing materials, including roofing shingles marketed under the

---

[1] A thorough recitation of the factual and procedural background of this matter is unnecessary given the parties' familiarity with the underlying background as detailed in their respective memoranda. (See ECF Nos. 158-1, 166.)

1

Timberline® brand name.  Plaintiffs filed a putative class action suit against GAF alleging, among other things, that GAF knowingly manufactured and sold defective shingles that cracked and caused damage to the roof of Plaintiffs' house.  (See, e.g., ECF No. 1-1.)  On October 19, 2012, the court entered an order (the "October Order") certifying a class defined as follows:

> All persons or entities who own any South Carolina property with GAF Timberline® shingles manufactured at GAF's Mobile, Alabama manufacturing facility between 1999 through 2007 which have cracked, split, or torn.  The class is not intended to include any structure owned by the Defendant or any of its subsidiaries or affiliates.

(ECF No. 90 at 16-17.)

After several additional rounds of briefing in which each party requested reconsideration on various rulings, GAF filed on March 19, 2014 the instant motion to decertify the class represented by Plaintiffs.  (ECF No. 158.)  Plaintiffs filed opposition to the motion to decertify on April 7, 2014, to which GAF filed a reply in support of decertification on April 15, 2014.  (ECF Nos. 166, 169.)

On April 17, 2014, the court held a hearing on GAF's pending motion.

## II.    LEGAL STANDARD AND ANALYSIS

A.    Motions to Decertify under Fed. R. Civ. P. 23(c)(1)(C)

Fed. R. Civ. P. 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Id.  In this regard, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."  Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Moreover, the court has an affirmative obligation to reverse an order certifying a class "if it becomes apparent, at any time during the pendency of the proceeding, that class treatment of the action is inappropriate."  Stott v. Haworth, 916 F.2d 134, 139 (4th Cir. 1990).

The standard is the same for class decertification as it is with class certification: a district

court must be satisfied that the requirements of Fed. R. Civ. P. 23(a) and (b) are met to allow plaintiffs to maintain the action on a representative basis. Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011). However, a court should not "disturb its prior certification findings absent some significant intervening event, or a showing of compelling reasons to reexamine the question." Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). Moreover, "[a] court should be wary of revoking a certification order completely at a late stage in the litigation process." Easterling v. Conn. Dep't of Corr., 278 F.R.D. 41, 42 (D. Conn. 2011).

B.    GAF's Arguments for Decertification

In its motion, GAF argues that the court should decertify the class represented by Plaintiffs on the basis of two recent judicial decisions and their effect on Fed. R. Civ. P. 23(b)(3)'s predominance analysis. Specifically, GAF asserts that the court should decertify the class in this action based on the rationale used by the United States Supreme Court in Comcast Corp. v. Behrend, ___ U.S. ___, 133 S. Ct. 1426, 1433 (2013), and the United States District Court for the Central District of Illinois in In re IKO Roofing Shingles Prod. Liab. Litig., No. 2:09-md-2104 (C.D. Ill. Jan. 28, 2014). (ECF No. 158-1 at 8-9.) In IKO, the court "denied class certification on the ground that plaintiffs had failed to make a prima facie showing that 'commonality of damages and causation preponderate throughout the class.'"[2] (Id. at 9 (citing ECF No. 159-1 at 11).) In reaching this decision, the IKO court cited to Comcast, wherein the Supreme Court held that courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis. Comcast, 133 S. Ct. at 1433 (finding that plaintiffs'

---

[2] The IKO plaintiffs sought certification of a class of "[a]ll persons who own or who have owned structures located in Illinois, Iowa, Massachusetts, Michigan, New Jersey, New York, Ohio, or Vermont, and who, from 1979 until present, have installed IKO organic mat shingles." (ECF No. 159-1 at 3.)

damages "model failed to measure damages from the particular antitrust injury on which petitioners' liability in this action is premised").[3]

In reliance on IKO and Comcast, GAF argues that information on Plaintiffs' house and the houses of other witnesses, which was gleaned from the substantial additional discovery[4] that was conducted after the court's October Order, shows that an individualized inquiry must be

---

[3] The named plaintiffs in Comcast (the "Comcast plaintiffs") filed an antitrust class action alleging that Comcast, a cable service provider, violated the Sherman Act by concentrating cable operations within a particular region. Comcast, 133 S. Ct. at 1430. The Comcast plaintiffs alleged four potential theories of liability. Id. The district court found that three of the four theories were not suited to classwide resolution. Id. at 1431. The district court granted certification finding that the remaining theory was capable of classwide proof, and concluded that damages on that single theory could be determined on a classwide basis. Id. To show damages, the Comcast plaintiffs relied on a damages expert who used a model that did not isolate damages resulting from any one of the four theories of antitrust impact. Id. The Third Circuit affirmed the district court's certification of the Comcast plaintiffs' class. Id. The United States Supreme Court granted certiorari to determine whether "certification was improper because respondents had failed to establish that damages could be measured on a classwide basis," and reversed. Id. at 1431 n. 4. The Court emphasized that class certification inquiries, particularly regarding Rule 23(b)(3)'s predominance requirement, require "rigorous analysis" that will often overlap with the merits of the underlying claims. Id. at 1432. The Court looked, therefore, to the methodology employed by the Comcast plaintiffs' damages expert. Id. at 1433. The Court concluded that, because the Comcast plaintiffs' damages model assumed the validity of all four of plaintiffs' theories of antitrust impact, including three theories unsuitable to class treatment, the damages model failed to tie damages to the lone remaining theory of liability. Id. at 1433–34. Thus, the Court reasoned that the Comcast plaintiffs had not established that damages were capable of measurement on a classwide basis, and without such a showing, the Comcast plaintiffs could not show that classwide issues of fact predominated over individual questions and satisfied Rule 23(b)(3). Id. at 1433.

[4] GAF summarized the parties' discovery as follows:

> Since the class was certified, the parties have conducted substantial additional discovery, including depositions of plaintiffs' key witnesses -- the class representatives, Jack and Ellen Brooks; their roofer and roofing expert, Thadd Mays; plaintiffs' expert on shingle testing, Jim Koontz; and homeowners who have been identified as trial witnesses for plaintiffs and/or submitted affidavits in this action. In addition, GAF's expert, Jeff Evans, conducted Rule 34 inspections of the homes of Mr. and Mrs. Brooks and several other purported class members whom plaintiffs intend to call at trial. See p. 10, infra. Mr. Evans and another GAF expert, Darrel Higgs, have also served expert reports.

(ECF No. 158-1 at 10 n.2.)

conducted as to each relevant structure. (ECF No. 158-1 at 10.) For example, "[P]laintiffs' expert Mays conducted a survey of the roofs on 70 homes within a 40 mile radius of Newberry, South Carolina (the "Survey") which shows that more than 25% of the homes have no cracks and another 34% have four or fewer cracks (of a total of 2,000 shingles on average per roof)." (Id. at 11.) Based on the Survey, GAF argues that Plaintiffs' own expert "not only disproves [P]laintiffs' assertion that every roof with GAF Timberline® shingles made in Mobile during the relevant period has cracked shingles, but demonstrates that (a) the determination of which property owners have cognizable damages or are even members of the class requires an individual assessment of each roof, and (b) the extent of cracking, if any, differs depending on many circumstances." (Id.) GAF further argues that the foregoing example is only one of numerous individualized inquiries (e.g., mitigation of damages) that "overwhelm any common issues in this case and compel decertification of the class." (Id. at 12.)

In addition to its arguments regarding the lack of commonality of damages, GAF contends that the court should decertify the class represented by Plaintiffs because they "are not adequate representatives to represent [] commonality of damages" since their injuries are different from those suffered by the class members. (Id. at 36-38.) In support of this contention, GAF points out that Plaintiffs failed to take advantage of an opportunity in the spring of 2006 to replace the shingles on their roof at no cost to them and now eight years later they still have not repaired or replaced their roof. (Id. at 37.) As a result, GAF argues that Plaintiffs failed to mitigate their damages requiring the court to deem them to be inadequate class representatives. (Id. at 38 (citing, e.g., O'Shea v. Littleton, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.")).)

Finally, GAF argues that if its motion to decertify is denied, any class period going forward should be shortened from 1999-2007 to 1999-2003 because "[t]here is no evidence of any cracking problem with Mobile Timberline® shingles manufactured after 2003." (Id. at 39, 42 (citing Comcast, 143 S. Ct. at 1432 (The requisite "rigorous analysis" of the prerequisites of Rule 23 "will frequently entail overlap with the merits of the plaintiff's underlying claim" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.")).)

C.     The Court's Review

As Plaintiffs suggest in their memorandum in opposition to the motion to decertify, the arguments raised by GAF for decertification were addressed in the October Order that set forth the basis for class certification. (See ECF No. 166 at 22.) Specifically, the court found unpersuasive GAF's argument that an individualized inquiry was necessary to determine causation:

> GAF also argues that causation could not be established by common evidence because there were other things that could have caused the shingles to fail such as improper installation or handling. While it is true that GAF may have individualized affirmative defenses against specific plaintiffs, the common issues regarding causation still predominate. Plaintiffs seek to establish causation on a large scale – that GAF knowingly sold shingles that contained an inherent manufacturing defect that will inevitably cause the shingles to crack, split, or tear. Plaintiffs submit that GAF has admitted its knowledge of the defect in internal documentation. If each prospective class member's case was tried separately, each would have to present duplicative evidence and expert testimony regarding the allegedly inherent defect in the shingles. It is a more efficient use of court and litigant resources to allow class treatment of these common issues despite the need for limited individualized inquiries regarding affirmative defenses. See Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 426-27 (4th Cir. 2003) (finding that "redundancy of effort, including duplicative discovery, testimony by the same witnesses in potentially hundreds of actions, and relitigation of many similar, and even identical, legal issues" weighed in favor of class certification).

(ECF No. 90 at 10.) The court further found unpersuasive GAF's argument that an individualized inquiry was necessary to determine the extent of damages:

6

> Although neither party has raised individual damages as a bar to class certification, the court finds that this determination will not bar class certification in this instance. "Quantitatively, almost by definition there will always be more individual damages issues than common liability issues. Qualitatively, however, liability issues may far exceed in complexity the more mundane individual damages issues." Gunnells, 348 F.3d at 429 (quoting with approval In re [American] Honda Motor Co.[, Inc. Dealers Relations Litig.], 979 F. Supp. [365,] at 367 [D. Md. 1997]); see also Brunson [v. La.-Pac. Corp.], 266 F.R.D. [112,] at 119 [D.S.C. 2007] ("[I]ndividual damage determinations do not necessarily destroy the commonality, typicality, or predominance of putative class members' claims."); Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 147 (4th Cir. 2001). Due to Plaintiffs' broad assertions of GAF's wrongdoing, the common liability issues here predominate over the individual damage determinations, which may be determined at the same time as the necessary affirmative defense hearings.

(ECF No. 90 at 15 n.8.) In light of the court's prior opinions, GAF argued in the instant motion that a more extensive factual record, IKO, and Comcast were reasons to decertify the class represented by Plaintiffs.

This court reviewed IKO and noticed that the court made several observations about products liability generally and shingles specifically that foreshadowed its ultimate conclusion. First, the IKO court affirmed that in its opinion "a warranty of a particular duration simply means that if the product fails within the warranty period, there may be recourse under the warranty." (ECF No. 159-1 at 5 n.6.) Second, the IKO court observed that "consumer belief does not create a representation[]" and "industry standards . . . say nothing about the performance of the shingles." (Id. at 10.) However, these conclusions were not the reason the IKO court ultimately found that the plaintiffs could not establish commonality of damages on a class-wide basis. The basis for the IKO court's finding that the plaintiffs could not establish commonality of damages is that their requested class definition[5] was far too broad resulting in too many questions of individual causation. (Id. at 5 ("The class definition requested by the

---

[5] "All persons who own or who have owned structures located in Illinois, Iowa, Massachusetts, Michigan, New Jersey, New York, Ohio, or Vermont and who, from 1979 until present, have installed IKO organic mat shingles." (ECF No. 159-1 at 3.)

7

plaintiffs is far too broad to support a commonality of damages for the designated class members.").)  The IKO court explained its rationale in the following summation:

> The plaintiffs' expert conceded that the roofs of many, if not all, class representatives had known problems with installation (flashings, underlayment, etc.) and/or ventilation of their roofs, or were subjected to extreme weather conditions.  Discovery also revealed that several class representatives purchased modular homes that were built and shingled at a factory and then transported by truck to the building site.  The high winds from a storm or high-speed transport could have some impact on the long-term performance of a shingle.  Some potential class members admitted they filed insurance claims after severe weather and received payment for wind damage from their insurers.
>
> Moreover, the testing performed by the plaintiffs' expert showed that no single defect was present in each of 165 shingles tested.  Even the testing of multiple shingles from a single roof did not yield uniform results.  The plaintiffs' expert tested eight specifications on each of the samples, with the shingle deemed to have failed the test if it did not meet all eight specifications.  Only two shingles met all eight specifications.  But eleven shingles passed seven of the eight specifications.  And four of the eight specifications had shingle passage rates of between 85% and 99%.

(Id. at 5-6.)

In considering the applicability of IKO to this case, the court finds that this case differs from IKO because the class definition is not nearly as broad and, thus, issues of individual causation are not as problematic.[6]  The most obvious difference is that Plaintiffs assert claims against GAF involving a single line of products manufactured at a single plant over a limited period of time.  In IKO, the plaintiffs sought certification on all organic shingles regardless of the place of manufacture or type dating back across multiple decades.

In addition to this case's differences from IKO, the court also finds that this case is unlike Comcast because Plaintiffs here have suggested a damages methodology that is consistent with their classwide theory of liability and is capable of measurement on a classwide basis.

---

[6] Plaintiffs argue the cases also differ because the IKO court was not faced with testimonial evidence from representatives of the manufacturer and seller that a shingle that cracks before thirty (30) years is defective and shingles are warrantied for thirty (30) years.  (Citing ECF No. 48 at 12-13; ECF No. 48-8 at 13-14; ECF No. 48-10 at 10.)

Specifically, Plaintiffs, on behalf of themselves and all others similarly situated, seek the cost of replacing the cracked, split, or torn shingles on their roof, which amounts to $245.00 per square of shingle that needs to be replaced.  (See ECF No. 155-20 at 2 (An average roof has thirty-two (32) squares of shingles and the cost to re-roof a house with thirty-two (32) squares of shingles is $7,840.00.).)  In addition, Plaintiffs seek consequential damages caused by cracked, split, or torn shingles, which their expert opines vary from $2,000.00 to $100,000.00 depending on factors such as the type of the home and extent of the damage.  (ECF No. 166-17 at 2.)  Pursuant to the foregoing methodology, it is conceivable that the only individualized factors that need to be determined at trial are the number of squares of shingles on each class member's house and whether the class member seeks consequential damages.[7]  Therefore, upon its review, the court finds that neither Comcast nor IKO is a "significant intervening event" or provides a "compelling reason" to disturb the October Order.  In this regard, the court is not persuaded that decertification is appropriate under the circumstances presented in this case.  Accordingly, GAF's motion to decertify must be denied.

In seeking removal of Plaintiffs as class representatives, GAF contends that Plaintiffs do not adequately represent the commonality of damages amongst the class members because they had an opportunity to (1) receive a "free roof" in May 2006 pursuant to the limited warranty

---

[7] Individualized calculations of consequential damages can be accomplished through an administrative proceeding.  See Fed. R. Civ. P. 53 (regarding the appointment of a special master for the purpose of addressing "post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district").  Courts have recognized and approved of conducting a trial on the issue of liability, and delegating computation of individual damages to a special master or magistrate judge post-trial. See, e.g., In re Visa Check/Master-Money Antitrust Litigation, 280 F.3d 124, 141 (2d Cir. 2001) ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different injuries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class").

applicable to the shingles they purchased and (2) be made "whole" in February 2007 by way of an offer of judgment.[8]  (See, e.g., ECF No. 158-1 at 36-39.)  The court does not find GAF's position persuasive for several reasons.  First, Plaintiffs' failure to accept a "free roof" pursuant to GAF's limited warranty does not inhibit commonality of damages wherein each of the class members could have mitigated their damages by participating in GAF's limited warranty program.  See generally, Brunson v. La.-Pac. Corp., 266 F.R.D. 112, 119 (D.S.C. 2010) ("[W]hile, the different versions of the warranty may provide different forms of relief to each end-user of Defendants' product, individual damage determinations do not necessarily destroy the commonality, typicality, or predominance of putative class members' claims.").

Second, Plaintiffs' refusal to accept an offer of judgment from GAF has little to no effect in the determination of whether Plaintiffs are appropriate class representatives.  The reason is that "an offer of judgment made to a named plaintiff prior to class certification 'disappears' once the class is certified."  Mey v. Monitronics, C/A No. 5:11CV90, 2012 WL 983766, at *4 (N.D. W. Va. Mar. 22, 2010) (citing McDowall v. Cogan, 216 F.R.D. 46, 50 (E.D.N.Y. 2003)).  The rule that an offer of judgment made only to the class representative is without force applies equally to offers of judgment made to a named plaintiff prior to or after class certification.  Id.  Based on the foregoing, the court finds that GAF has failed to provide an appropriate reason to alter the court's earlier opinion that Plaintiffs are adequate class representatives.  (See ECF No. 76 at 17 ("GAF again argues that Plaintiffs' claims are moot because of GAF's offer of judgment . . . the court finds that GAF's arguments that Plaintiffs are inadequate class representatives on

---

[8] In addition to its main contentions, GAF also suggests that Plaintiffs are inadequate class representatives because they are only litigating this matter for "vindication" and to not actually repair or replace their roof.  (ECF No. 158-1 at 38.)  The court reviewed the testimony cited by GAF and does not believe it provides any support for GAF's arguments regarding Plaintiffs' capacity to serve as class representatives.  (Citing ECF No. 158-5 at 65.)  In other words, GAF's statements regarding Plaintiffs' intentions in this litigation are merely its interpretation of the above-cited testimony.

the basis of mootness are also unmeritorious.").)

Finally, consistent with an earlier opinion, the court finds that GAF has not provided adequate justification to modify the relevant class period of 1999-2007 provided in the class definition. (Citing ECF No. 100 at 7; see also ECF No. 166 at 33 ("Class member Palka of Union, SC (shingles installed 2005); Bell of Charleston, SC (installed 2006); and, McKenzie of Estill, SC (shingles installed 2006) experienced cracks during the period 1999-2007.") (Citations omitted)).) There is sufficient evidence in the record that GAF's manufacturing processes resulted in the production of allegedly defective product after 2003, which included shingles displaying cracks that were installed on roofs during the years 2005 through 2007. (See, e.g., ECF Nos. 96-14, 155-2 at 2.)

### III.     CONCLUSION

For the foregoing reasons, the court **DENIES** Defendant GAF Materials Corporation's motion to decertify the class represented by Plaintiffs Jack Brooks and Ellen Brooks. (ECF No. 158.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

June 5, 2014
Columbia, South Carolina

11