**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | | |
|---|---|---|
| Jack Brooks and Ellen Brooks, on behalf of themselves and all others similarly situated, | ) ) ) ) | Civil Action No.: 8:11-cv-00983-JMC |
| Plaintiffs, | ) ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| GAF Materials Corporation, | ) ) | |
| Defendant. | ) ) | |

In this class action lawsuit, Jack Brooks and Ellen Brooks, on behalf of themselves and all others similarly situated, (collectively "Plaintiffs") allege that Defendant GAF Materials Corporation ("GAF") manufactured and sold defective roofing shingles. (See ECF No. 1–1.)

This matter is before the court pursuant to a motion in limine by GAF to exclude testimony at trial by Plaintiffs' expert Professor Teddy Monroe ("Professor Monroe"). (ECF No. 197.) As the basis for this motion, GAF argues that Professor Monroe's testimony regarding the statistical probability of a roof (containing either 700 or 2112 shingles) having at least one "defective" shingle when shingle failure rates are 1%, 3%, and 5% should not be allowed because it results from speculative hypotheticals created by Plaintiffs' counsel without evidence to establish that Timberline® shingles had any of these failure rates. (Id. at 6–8.) In this regard, GAF argues that Professor Monroe does not possess any knowledge of the underlying facts of the case and fails to understand the particular problem with the shingles or the relevant definition of "failure." (Id.) GAF further argues that Plaintiffs are unable to establish how Professor Monroe's "knowledge as a 'statistics expert,' or his testimony on the probability that a roof has one 'defective' shingle, will help resolve any facts at issue in this case." (Id. at 8.)

1

In their response to GAF's motion in limine, Plaintiffs state that Professor Monroe was not "asked to review any data on cracked shingles, nor has he read depositions or done an independent investigation in this case," but has instead based his opinions on statistical analysis of facts discovered in GAF's documents such as the affidavit of its Director of Quality Assurance Guy Stimson. (ECF No. 215 at 1.) Plaintiffs suggest that Professor Monroe will only testify about the statistical significance of the manufacturing figures and shingle failure rates set forth in GAF's documents, not the cause or particular problems related to the shingles. Plaintiffs further suggest that in light of Professor Monroe's indisputable qualifications and overwhelmingly accepted methodology, the only real challenge is to the weight of his testimony, not the admissibility. (Id. at 5–8.) In this regard, Plaintiffs argue that "[i]t is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are weak." (Id. at 8 (citing, e.g., S.C. Dep't of Health v. Hoover Universal, Inc., C/A Nos. 3:03–4118–JFA, 6:04–1219–JFA, 2005 WL 6407421, at *5 (D.S.C. Oct. 4, 2005) ("[T]he court finds that the relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility.")).)

In reply, GAF reiterates that Professor Monroe's testimony will not assist the jury in deciding the "real issue" of whether cracking Timberline® shingles caused leaks or other damage to Plaintiffs' homes. (ECF No. 230 at 9.) As a result, GAF asserts that Professor Monroe's testimony should be excluded because he relies on assumptions that are not based in fact and that are contradicted by defective shingle statistical evidence from Plaintiffs' expert Thadd Mays. (ECF No. 230 at 4–7.)

When determining the admissibility of expert testimony, the court acts as a gatekeeper and must assess whether the expert's testimony is both relevant and reliable. Kumho Tire Co. v.

Carmichael, 526 U.S. 137, 141 (1999). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Furthermore, a witness qualified as an expert "may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The party seeking to have an expert opinion admitted must establish its relevance and reliability by a preponderance of proof. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

Upon review, the court notes that GAF does not challenge Professor Monroe's qualifications or his methods. Instead, GAF contends that Professor Monroe's testimony is unreliable and irrelevant. In general, GAF's criticisms of Professor Monroe's opinions appear to bear more on the weight of the evidence than its admissibility. However, the court will not permit any expert to baldly assert statistics to justify opinions without providing a factual basis for that assertion. With that said, Fed. R. Evid. 702(b) is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence. Newman v. Hy-Way Heat Sys., Inc., 789 F.2d 269, 270 (4th Cir. 1986) ("It is fixed law that 'an expert can give his opinion on the basis of hypothetical facts, but those facts must be established by independent evidence properly introduced.'") (citation omitted); Shaw v. Strackhouse, 920 F.2d 1135, 1142 (3d Cir. 1990) ("To the extent that their opinions were predicated upon factual assumptions . . . those assumptions 'must find some support in the record.'"); Melton v. O.F. Shearer & Sons, Inc., 436 F.2d 22, 28 (6th Cir. 1970) ("It is a general rule that facts assumed by an expert which are not within his

personal knowledge must be supported by evidence from which a finding of the existence of such facts can be made."). Therefore, the court will not exclude Professor Monroe's testimony at this time to the extent he relies on facts that will be in evidence at the trial of this matter. Cf. Hawthorne Partners v. AT&T Techs., Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("[E]videntiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."). However, the court will limit Professor Monroe's testimony to what is appropriate for a statistics expert and he will not be allowed to testify regarding issues of causation. Based on the foregoing, the court **DENIES WITHOUT PREJUDICE** GAF's motion in limine to exclude testimony at trial by Plaintiffs' expert Professor Teddy Monroe.

    **IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 11, 2014
Columbia, South Carolina